# Exhibit B

DOCUMENT 2


ELECTRONICALLY FILED
4/25/2012 5:37 PM
CV-2012-900047.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. SUCCESSOR | * | |
| BY MERGER TO WACHOVIA BANK, N.A. | * | |
| F/K/A SOUTHTRUST BANK, N.A., | * | |
| | * | |
| Plaintiff, | * | CASE NO. |
| | * | |
| VS. | * | |
| | * | |
| JEANETTA SPRINGER | * | |
| JACOB SPRINGER, | * | |
| | * | |
| Defendants. | | |

### COMPLAINT

COMES NOW the Plaintiff in the above-styled cause and represents unto this Honorable Court as follows:

1.  Plaintiff, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., is qualified to do business in Alabama and doing business in Randolph County, Alabama.

2.  Defendants, Jeanetta Springer and Jacob Springer, are over the age of 19 years and are resident citizens of Randolph County, Alabama.

3.  Plaintiff avers that by virtue of foreclosure on October 19, 2011, of that certain Mortgage originally between Warren Minnifield, Emma L. Minnifield, and Jeanetta Minnifield Stevens and SouthTrust Bank, National Association, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. is the owner of the following-described real property located and situated in Randolph County, Alabama, to wit:

> Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of 400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 63 feet to the point of beginning.

Also known as **619 Lafayette Hwy, Roanoke, AL 36274**

**However in the event of a discrepancy between the legal description and street address, the legal description shall control.**

A copy of the Foreclosure Deed is attached hereto, incorporated by reference and designated as Exhibit "A".

4.   Defendants, Jeanetta Springer and Jacob Springer, currently occupy the aforesaid real property made the basis of this action.

WHEREFORE, PREMISES CONSIDERED Plaintiff demands possession of the aforesaid real property, together with money damages for the wrongful retention of said real property.

/s/ Greggory M. Deitsch
Greggory M. Deitsch (DEI001)
Attorney for Plaintiff
2311 Highland Avenue South
P.O. Box 55727
Birmingham, Alabama 35255
205.930.5225
Fax:  205.930.5101
E-Mail:  gdeitsch@sirote.com

OF COUNSEL:
SIROTE & PERMUTT, P.C.

PLAINTIFF'S ADDRESS:
c/o Sirote & Permutt, P.C.

DEFENDANT'S ADDRESS:
**Jeanetta Springer**
**Jacob Springer**
**619 Lafayette Hwy**
**Roanoke, AL  36274**

DOCUMENT 2

Probate office stated it is
recorded in Bk 355, Pg 516

SEND TAX NOTICE TO:
America's Servicing Company
3476 Stateview Blvd
Fort Mill, SC 29715

STATE OF ALABAMA      )

RANDOLPH COUNTY       )

<u>FORECLOSURE DEED</u>

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, heretofore, on, to-wit: the 10th day of August, 1998, Warren Minnifield and wife, Emma L. Minnifield and Jeanetta Minnifield Stevens, executed that certain mortgage on real property hereinafter described to SouthTrust Bank, National Association, which said mortgage was recorded in the Office of the Judge of Probate of Randolph County, Alabama, in Mortgage Book 367, Page 67, and ✳

WHEREAS, in and by said mortgage, the Mortgagee was authorized and empowered in case of default in the payment of the indebtedness secured thereby, according to the terms thereof, to sell said property before the Courthouse door in the City of Wedowee, Randolph County, Alabama, after giving notice of the time, place, and terms of said sale in some newspaper published in said County by publication once a week for three (3) consecutive weeks prior to said sale at public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority contained in same, the Mortgagee or any person conducting said sale for the Mortgagee was authorized to execute title to the purchaser at said sale; and it was further provided in and by said mortgage that the Mortgagee may bid at the sale and purchase said property if the highest bidder thereof; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. did declare all of the indebtedness secured by said mortgage, subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage by publication in the



DEED   359   917

Randolph Leader, a newspaper of general circulation published in Randolph County, Alabama, in its issues of May 18, 2011, May 25, 2011, and June 1, 2011; and

WHEREAS, on October 19, 2011, the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly conducted, and Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. did offer for sale and sell at public outcry in front of the Courthouse door in Wedowee, Randolph County, Alabama, the property hereinafter described; and

WHEREAS, Aaron Warner was the auctioneer who conducted said foreclosure sale and was the person conducting the sale for the said Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.; and

WHEREAS, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. was the highest bidder and best bidder in the amount of Forty-Three Thousand Two Hundred Seventy-Seven And 00/100 Dollars ($43,277.00) on the indebtedness secured by said mortgage, the said Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., by and through Aaron Warner as auctioneer conducting said sale for said Mortgagee, does hereby grant, bargain, sell  and convey unto Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. all of its right, title, and interest in and to the following described property situated in Randolph County, Alabama, to-wit:

> Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of 400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 63 feet to the point of beginning.

TO HAVE AND TO HOLD the above described property unto Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. its successors/heirs and





DEED    355    518

assigns, forever; subject, however, to the statutory rights of redemption from said foreclosure sale on the part of those entitled to redeem as provided by the laws in the State of Alabama; and also subject to all recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes, assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

IN WITNESS WHEREOF, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., has caused this instrument to be executed by and through Aaron Warner, as auctioneer conducting said sale for said Mortgagee, and said Aaron Warner, as said auctioneer, has hereto set his/her hand and seal on this ____20____ day of ____October____, 2011.

Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.

By: Aaron Warner, Auctioneer
Its: Auctioneer

By: _____
Aaron Warner, Auctioneer

STATE OF ALABAMA      )

JEFFERSON COUNTY      )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Aaron Warner, acting in its capacity as auctioneer for Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he, as such auctioneer and with full authority, executed the same voluntarily on the day the same bears date for and as the act of said Mortgagee acting in its capacity as auctioneer for said Mortgagee.

Given under my hand and official seal on this ____20____ day of ____October____, 2011

_____
Notary Public
My Commission Expires: _____

This instrument prepared by:
Ginny Rutledge
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama 35255-5727

MY COMMISSION EXPIRES SEPTEMBER 27, 2014






ELECTRONICALLY FILED
7/29/2012 7:32 PM
CV-2012-900047.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

**IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA**

| | | |
|---|---|---|
| **WELL FARGO BANK, N. A.** | ) | |
| **SUCCESSOR BY MERGER TO** | ) | |
| **WACHOVIA BANK, N. A. F/K/A** | ) | **CIVIL ACTION NO.: 12-900047** |
| **SOUTHTRUST BANK, N. A.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **JEANETTA SPRINGER** | ) | |
| **JACOB SPRINGER,** | ) | |
| | ) | |
| **Defendants.** | | |

## <u>ANSWER</u>

**COME NOW** the Defendants **JEANETTA SPRINGER and JACOB SPRINGER** *(hereinafter "Springers" or "Defendants")* and file this, their Answer to Plaintiff's ejectment Complaint as follows:

1.　Upon information and belief, Defendants admit that certain mergers, acquisitions, transfer of assets and liabilities and/or other name changes occurred involving the entities included within the name of the Plaintiff as styled for this action as alleged within Paragraph One of the Complaint.

2.　Defendants admit the allegations in Paragraph Two of Plaintiff's Complaint.

3.　Defendants deny each and every allegation in Paragraph Three of Plaintiff's Complaint except the street address and demand strict proof thereof.

4.　Defendants admit the allegations in Paragraph Four of Plaintiff's Complaint.

Defendants deny that Plaintiff is entitled to any of the relief it seeks through the unnumbered Paragraph positioned immediately after Paragraph Four within the Complaint.

## AFFIRMATIVE DEFENSES

5.    This Court lacks subject matter jurisdiction.

6.    This Court lacks personal jurisdiction over the Defendants.

7.    Venue is improper.

8.    Defendants allege insufficiency of process.

9.    Defendants allege insufficiency of the service of process

10.    Plaintiff has failed to state any claim upon which relief can be granted.

11.    Plaintiff was contributory negligent and thereby caused any damages it claims to have suffered and therefore is totally barred from any recovery, including the specific relief it seeks.

12.    There exists no valid contract(s) between these Parties related to the property at issue which give any rights of recovery to Plaintiff from Defendants.

13.    In the event any valid contract between Plaintiff and Defendants is alleged to have existed at any time; Plaintiff modified, abrogated, breached, terminated and/or otherwise novated said contract(s) with Defendants thereby releasing, excusing and/or relieving these Defendants from any performance thereon which could possibly have caused damage to Plaintiff or entitle Plaintiff to the relief it seeks from the Springers.

14.    Plaintiff failed to mitigate its damages.

15. Plaintiff failed to offset its damages.

16. Plaintiff has failed to act in good faith and fair dealing with the Defendants.

17. Plaintiff has failed to add one or more indispensable Parties in this action and the underlying foreclosure.

18. In the event that any loan agreement is proven to relate to the subject property and to these Defendants, the Defendants rely upon and reserve any and all defenses available to them under the Truth in Lending Act; The Equal Credit Opportunity Act; The Fair Credit Reporting act; The Real Estate Settlement Practices Act; Civil RICO; through The Federal Deposit Insurance Corporation; and/or any other federal or state rules, regulations, guidelines and/or other industry, state or federal Best Practices and standard of care.

19. Plaintiff lacks clean hands in the various transactions that led to the subject foreclosure and, thus, is not entitled to recover from the Defendants.

20. Defendants plead the defense of estoppel.

21. Defendants plead the defense of Failure of Consideration.

22. Defendants plead the defense of Waiver.

23. Defendants plead the defense of Statute of Limitations.

24. Defendants plead the defense of laches.

25. Defendants assert the foreclosure notices and sale were defective and the sale is therefore due to be set aside.

26.     Defendants plead that the loan and property made the subject of the underlying foreclosure and of this ejectment action is inaccurate; improper; fraudulent; illegal; void; voidable; and unenforceable.

27.     Defendants plead that Plaintiff improperly misapplied and misappropriated loan payments engineering the alleged default and resulting in a wrongful foreclosure.

28.     Defendants allege that the foreclosure sale upon which the Complaint is based was wrongful and is due to be rescinded or otherwise set aside.  Upon the proper rescission of the foreclosure sale, Plaintiff's ejectment Complaint should be dismissed.

29.     Defendants deny that at the time of the foreclosure sale there was a legitimate and/or accurately stated default.

30.     Plaintiff and/or its agents failed to consummate the non-judicial foreclosure sale by and through the rightful and real party in interest.  Therefore, the foreclosure sale is due to be set aside.

28.     Defendants allege that the acceleration of the subject debt was improper and in violation of the parties' contract, if any contract existed at all.

29.     Defendants allege that Plaintiff and/or its agents lacked standing to consummate the underlying foreclosure sale upon which this action is based.  As a non-judicial foreclosure sale, Plaintiff and/or its agent was not required to demonstrate to court or jury its ownership rights in the mortgage and note or its right to receive the proceeds of the Note.  Defendants deny that Plaintiff is currently the rightful owner of one or more of these rights and demands strict proof thereof at this time.

30.     Defendants allege that Plaintiff and Plaintiff's agent lacked any possessory, beneficial, or ownership interest in the subject note, which had as its security the mortgage subject to the underlying foreclosure sale.  As such, Plaintiff's agent was an improper party and without legal authority to conduct the alleged sale of the subject property and said sale was void, voidable, illegal, and is due to be set aside.

31.     Defendants allege that Plaintiff and its agents and/or assigns, assignors, assignees, employees, contractors, and brokers lacked clean hands throughout the

origination, servicing, loss mitigation, and foreclosure of the subject loan and, as such, is not entitled to the relief sought.

32.     Plaintiff and/or its agents caused any alleged default by its own negligent, wanton, deceptive, errors and/or predatory conduct such that the underlying foreclosure sale is due to be set aside and rescinded.

33.     Defendants plead that Plaintiff seeks to be unjustly enriched.

34.     Defendants allege that they are Third-Party Beneficiaries of certain contracts that were breached by the Plaintiff and one or more of its agents and/or assigns, assignors, assignees, employees, servicers, contractors and/or brokers.  As a result of their breach, Plaintiff is not entitled to the relief it seeks.

35.     Defendants allege that they were fraudulently induced to enter the alleged contracts; to give excess and/or inaccurate consideration for which Plaintiff has willfully failed to credit to the subject account.  As a result of its wrongful conduct, Plaintiff is not entitled to the relief it seeks.

36.     Defendants made significant efforts with Plaintiff to resolve or substantially narrow the issues involved in this complex action prior to the filing of this pleading. Therefore, Defendants respectfully reserve the right to amend and/or supplement these defenses; file a subsequent counterclaim(s) and/or file a 3rd- Party Complaint. Defendants further request and reserve the right to present evidence of their efforts at early resolution or narrowing of the issues at the appropriate time should an objection to any such pleading be made to this Honorable Court on the discretionary grounds of whether such a counterclaim or other pleading should be considered permissive or compulsory.

**Done this the 29th day of July, 2012.**

Respectfully Submitted,

*/s/ Robert E. Kirby, Jr.*
Robert E. Kirby, Jr. (KIR013)

**OF COUNSEL:**
The Kirby Law Firm
615 1st St. N
Alabaster, AL 35007
205-386-2005
205-358-3550  Fax
bkirby@bkirbylaw.com
erin@bkirbylaw.com
alicia@bkirbylaw.com

## DEFENDANTS DEMAND A TRIAL BY STRUCK JURY

*/s/ Robert E. Kirby, Jr.*
Robert E. Kirby, Jr. (KIR013)

## CERTIFICATE OF SERVICE

I hereby certify that on this the 29th day of July, 2012, I have served a true and correct copy of the foregoing by Alafile.com to all parties of record.

Gregory M. Deitsch
Josh Hornady
SIROTE & PERMUTT
2311 Highland Ave South
Birmingham, Alabama 35255
*(Counsel for Plaintiff)*



ELECTRONICALLY FILED
6/10/2013 11:03 AM
56-CV-2012-900047.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

**WELLS FARGO BANK, N.A.**    *
**SUCCESSOR BY MERGER TO**    *
**WACHOVIA BANK, N.A. F/K/A**    *
**SOUTHTRUST BANK, N.A.,**    *
     *   **CASE NO. CV-2012-900047**
     **Plaintiff,**    *
     *
**VS.**    *
     *
**JEANETTA SPRINGER**    *
**JACOB SPRINGER,**    *
     *
     **Defendants.**    *

## MOTION FOR SUMMARY JUDGMENT

Plaintiff, Wells Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A. F/K/A Southtrust Bank, N.A., (hereinafter "Wells Fargo") respectfully moves this Court, pursuant to Rule 56 of the Alabama Rules of Civil Procedure, to enter Summary Judgment in the Plaintiff's favor for the relief demanded in its Complaint, on the grounds that there is no genuine issue as to any material fact and that the Plaintiff is entitled to a judgment as a matter of law.

This Motion is based upon the Complaint filed by the Plaintiff herein, Defendant's Answer, and the Affidavit of Amanda Maxwell, an authorized representative of Wells Fargo Bank, N.A. along with attached exhibits[1]. For the foregoing reasons, Plaintiff is entitled to summary judgment in its favor

## SUMMARY OF UNDISPUTED FACTS

1. On August 10, 1998, Warren Minnifield, entered into and executed that certain Note, in favor of SouthTrust Bank, NA (hereinafter "SouthTrust"). A true and correct copy of the Note is attached as "Exhibit A."

---

[1] These documents have previously been produced to Defendant through discovery in this case.

1

2.     On August 10, 1998, Warren Minnifield, and Wife, Emma L. Minnifield and Jeanetta Minnifield Stevens, entered into and executed that certain Mortgage, securing the Note, in favor of SouthTrust, and its successors and assigns, in the amount of $89,786.70. A true and correct copy of the recorded Mortgage is attached as "Exhibit B."

3.     On July 12, 2006, Wachovia Bank NA, F/K/A SouthTrust Bank, NA, sent borrowers, via the address provided for in the Mortgage, a notice of intent to foreclosure. Such notices provided borrowers a full itemization of the total payment due to reinstate and cure their default. A true and correct copy of the Notice is attached as "Exhibit C."

4.     On April 12, 2010, Wells Fargo Bank, NA, successor by merger to Wachovia Bank, NA F/K/A SouthTrust Bank, NA, sent borrowers, by certified and regular mail, via the address provided for in the Mortgage, a notice of right to cure default. Such notices provided borrowers a full itemization of the total payment due to cure their default. A true and correct copy of the Notice is attached as "Exhibit D."

5.     On July 26, 2010, Wells Fargo Bank, NA sent borrower via the address provided for in the Mortgage, a notice of right to cure default. Such notices provided borrowers a full itemization of the total payment due to cure their default and a date certain to cure the default. A true and correct copy of the Notice is attached as "Exhibit E."

6.     After borrowers failed to cure the default, on October 19, 2010, the borrowers were sent a Notice of Acceleration. A true and correct copy of the October 19, 2010, Notice of Acceleration is attached as "Exhibit F."

7.     On or about October 23, 2010, or immediately thereafter, foreclosure was placed on hold to investigate and properly respond to the inquires and issues raised in T.

Jeanetta Minnifield Stevens letter to Ginny Rutledge at the law firm of Sirote & Permutt, P.C.

8.     The foreclosure on borrowers' property at address 619 Lafayette Hwy, Roanoke, Alabama 36274, was on hold until May 4, 2011 when an investigation and letter with a response was provided to T. Jeanetta Minnifield Stevens. A true and correct copy of the May 4, 2011 correspondence is attached as "Exhibit G."

9.     After borrowers failed to cure the default, on May 10, 2011, the borrowers were sent a second Notice of Acceleration. A true and correct copy of the May 10, 2011, Notice of Acceleration is attached as "Exhibit H."

10.     On September 21, 2011, borrower was notified through counsel that the foreclosure sale scheduled for September 21, 2011 was being postponed until October 19, 2011. A true and correct copy of the September 21, 2011, postponement notice is attached as "Exhibit I."

11.     A notice of foreclosure was published on May 18, May 25, and June 1, 2011 in The Randolph Leader, a newspaper of general circulation, printed and published in Randolph County, Alabama.  A copy of the Publication Affidavit is attached as "Exhibit J."

12.     Due to borrower's default on their Mortgage, the Mortgage was foreclosed through a valid foreclosure sale on October 19, 2011.  A true and correct copy of the October 19, 2011 Foreclosure Deed is attached as "Exhibit K."

13.     By virtue of foreclosure on October 19, 2011, of that certain Mortgage originally between Warren Minnifield, Emma L. Minnifield, and Jeanetta Minnifield Stevens and SouthTrust Bank, National Association, Wells Fargo Bank, N.A. successor

3

by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. is the owner of the following-described real property located and situated in Randolph County, Alabama, to wit:

> Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of 400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 63 feet to the point of beginning.

> Also known as **619 Lafayette Hwy, Roanoke, AL 36274**

**However in the event of a discrepancy between the legal description and street address, the legal description shall control.**

14.     On October 20, 2011, a demand for possession of the property was sent to borrowers at the property address set forth in the Mortgage.  A true and correct copy of the October 20, 2011, demand for possession letter is attached as "Exhibit L."

15.     Defendants, Jeanetta Springer and Jacob Springer, currently occupy the aforesaid real property made the basis of this action.

16.     Neither Jeanetta Springer nor Jacob Springer, the only Defendants in this action, are on or have executed the Promissory Note on the property at issue in this ejectment action. Jacob Springer is neither an obligor under the Promissory Note or a Mortgagor on the Mortgage at issue.

## <u>STANDARD OF REVIEW</u>

Summary judgment is proper under *Ala. R. Civ. P.* 56(c) "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If the movant makes a *prima facie* showing that no genuine issue of material fact exists, then the burden shifts to the non-movant to rebut that *prima facie* showing by presenting substantial evidence of a genuine issue of material fact. *See General Motors*, 769 So. 2d at 908-09; *see also Burks v. Pickwick Hotel*, 607 So.2d 187 (Ala. 1992).

The burden then shifts to Defendants to present *"**substantial evidence**"* of a genuine issue of material fact. Defendants cannot satisfy this burden by making conclusory, unsupported arguments. *See Ala. R. Civ. P.* 56(c). As proven herein, summary judgment is proper as Wells Fargo has demonstrated it is entitled to summary judgment as a matter of law in its favor and against Defendants.

## ARGUMENT AND AUTHORITIES

### I.     Wells Fargo Is Entitled To Judgment As A Matter of Law Because It Has Established A Superior Claim To Possession Of The Property.

Wells Fargo is entitled to bring the current action in ejectment against the Defendants because the facts above, the affidavit of Amanda Maxwell, and exhibits attached thereto, as well as the undisputed Foreclosure Deed, clearly substantiates that Wells Fargo possesses superior legal title to the property and that the Defendants are wrongfully occupying the same. *See Ala. Code § 6-6-280 (1975); Jones v. Regions Bank*, 25 So. 3d 427, 440 (Ala. 2009); *Muller v. Seeds*, 919 So. 2d 1174, 1177 (Ala. 2005); *Mid-State Homes, Inc. v. Brown*, 355 So. 2d 332, 333 (Ala. 1978); *Atlas Subsidiaries of Fla., Inc. v. Kornegay*, 264 So. 2d 158, 161 (Ala. 1972). The Alabama Supreme Court, in *Kornegay* noted as follows:

"[i]n a statutory action in the nature of ejectment a plaintiff may recover by showing legal title to the premises sued for at the time of the commencement of the suit and the right to immediate possession."

*Kornegay*, 264 So. 2d at 161.

By virtue of the foreclosure deed (Exh. K), this proves Ocwen Loan Servicing, successor in interest to GMAC Mortgage, LLC, possesses superior legal title to the property and is entitled to immediate possession. *See Muller*, 919 So. 2d at 1177 ("Muller purchased the property at the foreclosure sale; thus legal title . . . vested in him, and he was *entitled to take immediate possession*.") (Ala. Code § 35-10-12 (1975)) (emphasis added); *see also Palmer v. Resolution Trust Corp.*, 613 So. 2d 373, 375 (Ala. 1993) ("However, the RTC, as holder of the foreclosure deed, has full legal title, subject only to the right of redemption, . . . and has a *right to immediate possession* of the property.") (citations omitted and emphasis added); *Ward v. Chambless*, 189 So. 890, 893 (Ala. 1939) ("Ordinarily when a mortgage is foreclosed on real estate, the purchaser at the foreclosure sale acquires the full legal and equitable title to the mortgaged premises, subject only to the statutory right of redemption. . . .").

A copy of the Foreclosure Deed has been submitted into evidence by Wells Fargo on numerous occasions without any dispute from Defendants, now the burden shifts to the Defendant to offer **substantial evidence** of an affirmative defense to the ejectment case. *See Steele v. Federal Nat'l Mortg. Ass'n*, No. 1091441, 2010 WL 4910829 at *4 (Ala. Dec. 3, 2010); *Berry v. Deutsche Bank Nat'l Trust Co.*, No. 2080840, 2010 WL 3377712 at *7-8 (Ala. Civ. App. Aug. 27, 2010); Ala. Code § 12-21-12(a). Defendants cannot meet their burden.

**II.    Defendants Cannot Overcome The Fact That Wells Fargo Properly Exercised the Power of Sale**

Defendants cannot challenge through presenting any substantial evidence to the contrary that Wells Fargo Bank, N.A. had the power and authority to conduct the underlying foreclosure on this property. As the evidence shows, on August 10, 1998, Warren Minnifield, entered into and executed that certain Note, in favor of SouthTrust Bank, N.A. It is well known that Wachovia Bank, N.A. acquired Southtrust Bank, N.A. in or about January 2005. On or about March 20, 2010, Wachovia Bank, N.A., formerly known as Southtrust Bank, N.A., was acquired by Wells Fargo Bank, N.A. Wells Fargo did not accelerate on the Note or Mortgage until October 19, 2010 and then again on May 10, 2011 (Exhibits F & G), nor did it publish the foreclosure sale until May 18, May 25, and June 1, 2011 (Exhibit J) and did not foreclose until October 19, 2011 (Exhibit K).

As the evidence shows, Wells Fargo had been entitled to the money secured before it ever initiated foreclosure proceedings through a Notice of Acceleration or Publication of Sale. *See* Maxwell Aff. at Exhibits F, G, and J. According to the Alabama Court of Civil Appeals in *Sturdivant v. BAC Home Loans Servicing, LP*, [Ms. 2100245, Dec. 16, 2011] 2011 WL 6275697, __ So.3d__, (Ala. Civ. App. 2011) and *Patterson v. GMAC Mortgage, LLC*, [Ms. 2100490, Jan. 20, 2012], ___ So.3d ___, 2012 WL 165067 (Ala. Civ. App. 2012), an entity that has been assigned the subject mortgage is an appropriate entity to commence foreclosure proceedings, and a foreclosure conducted by such a foreclosing entity is valid. *Sturdivant* at *9; *Patterson* at *2. As such, because Wells Fargo had the authority to foreclose, any possible defense from Defendants, through counsel, that Wells Fargo did not have the right to foreclose on the subject

7

property or that the foreclosure sale was void or that Wells Fargo did not have the right to initiate this ejectment action under Ala. Code. 1975 §6-6-280 is to be rejected and cannot be supported by any substantial evidence.

### III. Wells Fargo is entitled to judgment as a matter of law because it is the holder of the Note.

Wells Fargo is the holder of the Note and has been since acquiring Wachovia Bank, N.A. formerly known as Southtrust Bank, N.A. *See* Exh. A. It is black letter law that the *holder* of a negotiable instrument is entitled to enforce the terms of the instrument. In Alabama, a "negotiable instrument" is defined as follows:

> an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:
>
> (1) Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;
>
> (2) Is payable on demand or at a definite time; and
>
> (3) Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money, but the promise or order may contain (i) an undertaking or power to give, maintain, or protect collateral to secure payment, (ii) an authorization or power to the holder to confess judgment or realize on or dispose of collateral, or (iii) a waiver of the benefit of any law intended for the advantage or protection of an obligor.

Ala. Code § 7-3-104 (1975). It is clear that the Note is a negotiable instrument as defined under Alabama law. The Note in this case is an unconditional promise by Warren Minnifield to pay a total of $193,701.11 to Southtrust Bank, N.A., its successors and assigns, with the total amount of the Note due on August 10, 2013. *See* Exh. A. Therefore, a person in possession of the Note is entitled to enforce its provisions. *See* Ala. Code § 7-3-301 (the holder of an instrument is entitled to enforce the instrument); § 7-1-201(21)(A) (defining "holder" of a specially endorsed instrument as a person in

8

possession of an instrument that is payable to an identified person in possession); § 7-3-205 (an instrument specially endorsed is payable to the identified person).

Because Wells Fargo is the holder of the Note, then the Note is payable to Wells Fargo and Wells Fargo may enforce the provisions of the Note. *See id.* § 7-3-301. Wells Fargo, as the holder of the Note, is entitled to "the money thus secured" by the Mortgage, and, consequently, Wells Fargo was entitled to foreclose the Mortgage in accordance with Alabama law. *See id.*; § 35-10-12. Here, it is undisputed and will remain undisputed that Wells Fargo Bank, N.A. is a successor to Wachovia Bank, N.A. formerly known as Southtrust Bank, N.A. It will also remain undisputed that Wells Fargo came into possession of the Note long before initiating foreclosure against the Defendants.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Wells Fargo Bank, N.A., respectfully requests that this Court enter an Order granting summary judgment as follows:

A.    That judgment is entered in favor of the Plaintiff and against the Defendants;

B.    That immediate possession of the real property set forth above and as set forth in Plaintiff's Complaint be hereby awarded to Wells Fargo Bank, N.A. and that any lawful sheriff of the County of Randolph, Alabama be ordered to restore possession of the real property to Plaintiff;

C.    That due to the failure of the Defendants to deliver possession after being given ten (10) days written notice by Plaintiff, Defendants have forfeited any right of redemption pursuant to Ala. Code § 6-5-251 (1975); and

D.    That costs be hereby taxed against Defendants.

Respectfully submitted,

**/s/ Jacob A. Kiser**
Greggory M. Deitsch (DEI001)
Jacob A. Kiser (KIS004)
Attorneys for Plaintiff,

**OF COUNSEL:**
SIROTE & PERMUTT, P.C.
2311 Highland Avenue South
Post Office Box 55727
Birmingham, AL 35255-5727
Telephone: (205) 930-5100
Facsimile: (205) 930-5101
gdeitsch@sirote.com
jhornady@sirote.com
jkiser@sirote.com

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2013, I electronically filed the foregoing with the Clerk of the Court using the Alafile system which will send notification of such filing to the following:

Robert E. Kirby, Jr.
Erin L. Kline
The Kirby Law Firm
615 1st Street North
Alabaster, AL  35007
205-267-1724

**/s/ Jacob A. Kiser**
OF COUNSEL

10



ELECTRONICALLY FILED
6/10/2013 11:03 AM
56-CV-2012-900047.00
CIRCUIT COURT OF
RANDOLPH COUNTY, ALABAMA
CHRIS MAY, CLERK

DOCUMENT 47

## IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

WELLS FARGO BANK, N.A.   *
SUCCESSOR BY MERGER TO   *
WACHOVIA BANK, N.A. F/K/A   *
SOUTHTRUST BANK, N.A.,   *
           *   **CASE NO. CV-2012-900047**
   **Plaintiff,**     *
           *
**VS.**          *
           *
**JEANETTA SPRINGER**    *
**JACOB SPRINGER,**     *
           *
   **Defendants.**    *

---

## AFFIDAVIT

---

STATE OF _California_ )
         )
COUNTY OF _San Bernardino_ )

Before me, the undersigned authority in said County of said State, personally appeared _Amanda Maxwell_ an authorized representative of Wells Fargo Bank, NA, successor by merger to Wachovia Bank, NA F/K/A SouthTrust Bank, NA (hereinafter "Wells Fargo"), owner and servicer of the loan and mortgage at issue in the above-styled cause, who after being duly sworn deposes and says under oath as follows:

1.   My name is _Amanda Maxwell_ I am an adult over the age of nineteen (19) years and I have personal knowledge of the matters set forth herein.

2.   I am fully authorized to make this Affidavit on behalf of Wells Fargo.

3.   In my present position, I have direct access to business records of Wells Fargo regarding the account which forms the basis of this action. I have reviewed said relevant business

records, and consistent with my review of the business records, I have knowledge of the facts set forth in this Affidavit.

4.       These business records were made in the ordinary course of the business and it was the regular course of said business to make such records. Said records relative to this action, were made at the time of the transaction, occurrence or event referred to therein or were made within a reasonable time thereafter.

5.       I understand this affidavit is being submitted in support of Wells Fargo's Motion for Summary Judgment.

6.       On August 10, 1998, Warren Minnifield, entered into and executed that certain Note, in favor of SouthTrust Bank, NA (hereinafter "SouthTrust"). A true and correct copy of the Note is attached as "Exhibit A."

7.       On August 10, 1998, Warren Minnifield, and Wife, Emma L. Minnifield and Jeanetta Minnifield Stevens, entered into and executed that certain Mortgage, securing the Note, in favor of SouthTrust, and its successors and assigns, in the amount of $89,786.70. A true and correct copy of the recorded Mortgage is attached as "Exhibit B."

8.       On July 12, 2006, Wachovia Bank NA, F/K/A SouthTrust Bank, NA, sent borrowers, via the address provided for in the Mortgage, a notice of intent to foreclosure. Such notices provided borrowers a full itemization of the total payment due to reinstate and cure their default. A true and correct copy of the Notice is attached as "Exhibit C."

9.       On April 12, 2010, Wells Fargo Bank, NA, successor by merger to Wachovia Bank, NA F/K/A SouthTrust Bank, NA, sent borrowers, by certified and regular mail, via the address provided for in the Mortgage, a notice of right to cure default. Such notices provided

2

borrowers a full itemization of the total payment due to cure their default. A true and correct copy of the Notice is attached as "Exhibit D."

10. On July 26, 2010, Wells Fargo Bank, NA sent borrower via the address provided for in the Mortgage, a notice of right to cure default. Such notices provided borrowers a full itemization of the total payment due to cure their default and a date certain to cure the default. A true and correct copy of the Notice is attached as "Exhibit E."

11. After borrowers failed to cure the default, on October 19, 2010, the borrowers were sent a Notice of Acceleration. A true and correct copy of the October 19, 2010, Notice of Acceleration is attached as "Exhibit F."

12. On or about October 23, 2010, or immediately thereafter, foreclosure was placed on hold to investigate and properly respond to the inquires and issues raised in T. Jeanetta Minnifield Stevens letter to Ginny Rutledge at the law firm of Sirote & Permutt, P.C.

13. The foreclosure on borrowers' property at address 619 Lafayette Hwy, Roanoke, Alabama 36274, was on hold until May 4, 2011 when an investigation and letter with a response was provided to T. Jeanetta Minnifield Stevens. A true and correct copy of the May 4, 2011 correspondence is attached as "Exhibit G."

14. After borrowers failed to cure the default, on May 10, 2011, the borrowers were sent a second Notice of Acceleration. A true and correct copy of the May 10, 2011, Notice of Acceleration is attached as "Exhibit H."

15. On September 21, 2011, borrower was notified through counsel that the foreclosure sale scheduled for September 21, 2011 was being postponed until October 19, 2011. A true and correct copy of the September 21, 2011, postponement notice is attached as "Exhibit I."

3

16.     A notice of foreclosure was published on May 18, May 25, and June 1, 2011 in The Randolph Leader, a newspaper of general circulation, printed and published in Randolph County, Alabama. A copy of the Publication Affidavit is attached as "Exhibit J."

17.     Due to borrower's default on their Mortgage, the Mortgage was foreclosed through a valid foreclosure sale on October 19, 2011. A true and correct copy of the October 19, 2011 Foreclosure Deed is attached as "Exhibit K."

18.     By virtue of foreclosure on October 19, 2011, of that certain Mortgage originally between Warren Minnifield, Emma L. Minnifield, and Jeanetta Minnifield Stevens and SouthTrust Bank, National Association, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. is the owner of the following-described real property located and situated in Randolph County, Alabama, to wit:

> Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of 400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 63 feet to the point of beginning.

> Also known as **619 Lafayette Hwy, Roanoke, AL 36274**

**However in the event of a discrepancy between the legal description and street address, the legal description shall control.**

19.     On October 20, 2011, a demand for possession of the property was sent to borrowers at the property address set forth in the Mortgage. A true and correct copy of the October 20, 2011, demand for possession letter is attached as "Exhibit L."

20.     Defendants, Jeanetta Springer and Jacob Springer, currently occupy the aforesaid real property made the basis of this action.

4

21.     Further Affiant saith not.

AFFIANT

By: _____ Amanda Maxwell          06/05/2013

Its: _Vice President Loan Documentation_

An Authorized Representative of Wells Fargo Bank, N.A.,
successor by merger to Wachovia Bank, N.A. f/k/a
SouthTrust Bank, N.A.

STATE OF _____          *
                                    *
COUNTY OF _____         *

        Before me, a Notary Public in and for said County, in said State, personally appeared
_____, _____ of Wells
Fargo Bank, N.A., successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.,
who being sworn, does depose and say: That he/she has personal knowledge of the facts set forth
in the foregoing Affidavit, and that the same are true and correct to the best of his/her knowledge
and belief.

        Subscribed and sworn to before me on this the _____ day of _____,
2013, by said Affiant.

_____                        See attached
Notary Public                                    RM
My Commission Expires: _____

DOCUMENT 47

5

DOCUMENT 47

**California**

State of California       )

County of San Bernardino    )

On_____June 5th, 2013__ before me, (       Rosie Medrano, Notary Public     ),

personally appeared _____Amanda Maxwell_____,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

     WITNESS my hand and official seal.

Signature _____                       (Seal)

     Rosie Medrano

0408361251
619 LAFAYETTE HWY
ROANOKE, AL 36274

ROSIE MEDRANO
Commission # 1930383
Notary Public - California
San Bernardino County
My Comm. Expires Mar 26, 2015

# EXHIBIT A

DOCUMENT 47

DOCUMENT 47

# NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT

| Installment - Pre-Computed | | Installment - Simple | X | | Single Payment |
|---|---|---|---|---|---|

SouthTrust Bank, National Association

P.O. Box 83837

Birmingham, AL 35283-0837

Birmingham, Alabama, AUGUST 10, 1998

WARREN MINNIFIELD
Borrower's Name

619 LAFAYETTE WAY
Street Address of Residence and Mailing Address

ROANOKE     RANDOLPH     AL   36274
City          County        State    Zip

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all payments as scheduled. |
|---|---|---|---|
| 8.63 % | $ 104,804.41 | $ 88,896.70 | $ 193,701.11 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 179 | $695.00 | MONTHLY beginning 09/10/98 |
| 1 | $69,296.11 | Final payment due 08/10/13 |

**Insurance**
Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign below and agree to pay the additional cost.

| Type | Premium | | |
|---|---|---|---|
| Credit Life-one insured | $ _____ Term: _____ months | I want credit life insurance. | Signature 1 |
| Credit Life-two insureds | $ _____ Term: _____ months | I want credit life insurance. | Signature 2 |
| Credit Disability | $ _____ Term: _____ months | I want credit disability insurance. | Signature |
| Credit Life and Disability | $ _____ Term: _____ months | I want credit life and disability insurance. | Signature |

You may obtain property insurance from anyone you want that is acceptable to SouthTrust Bank. If you get the insurance from SouthTrust Bank you will pay $ ___n/a___ for _____ months' coverage.

**Demand Features:** (Check if applicable)
☐ This obligation is payable on demand and all disclosures are based on an assumed maturity of one year.   ☐ This obligation has a demand feature.

**Security:** You are giving a security interest in:
☐ The goods or property being purchased.   ☒ Other Property (Brief Description): REAL ESTATE _____

Your deposit accounts and other rights to payment of money from SouthTrust Bank, other than Individual Retirement Accounts, also secure this loan. Collateral securing other loans with SouthTrust Bank may also secure this loan.   Filing Fee: $ ___151.20___

**Late Charge:** (Check if Applicable)
☒ If payment is late ___10___ days or more, you will be charged ___5___ % of the amount which is late, but not less than $ ___.50___ or more than $ ___100.00___.

**Prepayment:** If you pay off early, you:
☐ may   ☒ will not   have to pay a penalty.
☐ may   ☐ will not   be entitled to a refund of part of the finance charge.

**Assumption:** (Check if applicable) Someone buying your house
☐ may, subject to conditions, assume the remainder of the mortgage on the original terms.
☐ cannot assume the remainder of the mortgage on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

0102700605

**Itemization of the Amount Financed of** ........$ ___88,896.70___

$ ___50,849.53___ Amount given directly to you

$ ___37,150.47___ Amount paid on your account

Amount paid to others on your behalf:

$ _____ to insurance company for credit life insurance

$ _____ to insurance company for credit disability insurance

$ _____ to insurance company for property insurance

**Amount paid to others on your behalf (cont'd)**

$ ___151.20___ filing fees and taxes

$ _____ certificate of title fee

$ _____ to appraisers

$ _____ to credit reporting agencies

$ ___300.00___ to appraisers

$ ___439.00___ to ATTORNEY FEES-OLIVER KITCHENS

$ ___6.50___ to Initial Flood Certification Fee

$ ___890.00___ Prepaid Finance Charge

SA 31452 SouthTrust Corporation (Rev. 1/92)                           Page 1 of 4      _____ Initials

Minnifield 0029

1. **Meaning of Terms; Parties.** As used in this, Security Agreement and Disclosure Statement, except the context clearly requires a different meaning, the words **you** and **your** mean the Borrower, and t . . re more than one Borrower, they mean each of the a and also all of them; **we**, **our** and **us** refer to SouthTrust Bank, National Association and also to any subsequent holder of this Note; and this Note means this Note, Security Agreement and Disclosure Statement.

2. **Payment Schedule.** The subparagraph (A, B, or C) marked below applies to this Note:

☐ **A.** You promise to pay to us or our order the sum of _____ Dollars

($_____ ) in _____ payments of $_____ each and 1 final payment of $_____ . The first payment is due on _____ , and another such payment is due on the same day of each _____ thereafter until _____ at which time the final payment and all other sums then owed under this Note will be due. If any scheduled payment is late _____ days or more, you agree to pay a Late Charge of _____ % of the amount of the payment which is late, but not less than $ _____ or more than $ _____ .

☒ **B.** You promise to pay to us or our order the principal sum of ____EIGHTY-NINE THOUSAND SEVEN HUNDRED EIGHTY-SIX AND 70/100____ Dollars
($ __89,786.70__ ) together with interest on the unpaid balance of said sum at the rate of __8.50__ % per annum until maturity. You agree to pay said sum, the interest thereon, and credit life insurance premiums which are not a part of the Amount Financed, if any, in __179 monthly__ payments of $ __695.00__ each and 1 final payment of the unpaid balance of the principal sum, all accrued but unpaid interest thereon, and all other sums, if any, then owed under this Note. The first payment is due on __SEPTEMBER 10, 1998__ , and another payment is due on the same day of each _____ month _____ thereafter until __AUGUST 10, 2013__ at which time the final payment will be due. If a Late Charge is shown to be applicable to this Note in the Late Charge section of the Disclosure Statement above, and if any scheduled payment is late ___15___ days or more, you agree to pay a Late Charge of ___5___ % of the amount of the payment which is late, but not less than $ __30__ or more than $ __100.00__ . We will apply your payments first to accrued interest, then to credit life insurance premiums which are not a part of the Amount Financed, if any; and then to other sums owed under this Note in such order as we elect or as is required by law. Interest continues to accrue on the unpaid balance of the principal sum until we actually receive your payment.

☐ **C.** _____ , you promise to pay to us or our order the principal sum of _____ _____ Dollars ($ _____ ) together with interest on said sum at the rate of _____ % per annum until maturity. Accrued interest on the principal sum shall be paid at maturity and as follows: _____

If the Amount Financed shown in the Disclosure Statement above is $ _____ or more, and if payment of the principal sum is late _____ days or more, you agree to pay a Late Charge of _____ of the principal amount which is late, but not less than $ _____ or more than $ _____ .

3. **Interest Surcharge; Loan Fee; Interest Accrual; Interest After Maturity; Late Charge Assessment.** An interest surcharge of $ _____ n/a _____

☐ has been included in the amount of this Note and paid from the loan proceeds. ☐ was paid by cash or check at closing. If subparagraph B or C of paragraph 2 is checked, interest begins to accrue on the principal sum on the date of this Note unless a different accrual date is shown here _____ and shall accrue after maturity on the entire unpaid sum due under this Note (principal and, to the extent permitted by law, unpaid interest at final maturity of this Note) at the rate provided above for interest to maturity, or the maximum rate allowed by law, whichever is less. If subparagraph A of paragraph 2 is checked, you agree to pay interest on the unpaid balance of this Note after scheduled maturity of the final payment at the per annum rate of 2% in excess of the average of the prime rates of the three largest banks in New York City as of the close of business on the first business day before the date of this Note, or the maximum rate allowed by law, whichever is less. We will not levy or collect a Late Charge on any payment when the only delinquency is attributable to Late Charges assessed on earlier installments if the payment is otherwise a full payment for the applicable period and is paid on or before the tenth day after its due date.

4. **Security Interest.** If any property is described under the heading "Description of Property" below, the following provisions of this paragraph and all of the provisions of paragraphs 15 through 20 on the following pages also apply to this transaction. As security for the payment and performance of all of your obligations under this Note, including payment of all sums set forth above, costs of collection after default, and all sums hereafter advanced or paid and all obligations incurred by us under any provision of this Note, you hereby assign and transfer to, and grant to us a security interest in, the property described below, all accessories and optional equipment now or within 20 days hereafter installed in or affixed to that property, and all accessories at any time hereafter installed in or affixed to that property. (All of the property, accessories, and accessories described above and below are sometimes referred to in this Note as the "Collateral"):

| Description of Property | New or Used | Year | Make | Model | Vehicle License No. | Serial No. or VIN | Primary Use of Collateral |
|---|---|---|---|---|---|---|---|
| REAL ESTATE IN RANDOLPH COUNTY CONSISTING OF HOUSE AND 1.5 ACRES AS BETTER DESCRIBED IN MORTGAGE TO SOUTHTRUST BANK, N.A. DATED 08-10-98. | | | | | | | ☒ Personal, Family or Household |
| | | | | | | | ☐ Business |
| | | | | | | | ☐ Agriculture |

together with all proceeds of the Collateral, including the proceeds of all insurance on the Collateral, and all rebates of unearned premiums on any insurance you may have on the Collateral at any time and on any insurance purchased under Paragraph 18 of this Note. You agree that our security interest in all personal property which is a part of the Collateral also secures any other obligation you now or hereafter have to us, including any loans we make to you in the future. The preceding sentence does not apply, however, to the extent that the Collateral consists of "household goods" as that term is defined in 12 C.F.R. Section 227.12(d).

**CO-OWNER'S SECURITY AGREEMENT**
I am the owner or co-owner of the Collateral described in paragraph 4, above. In consideration of the loan to the Borrower or the renewal of a previous loan to the Borrower evidenced by this Note, I hereby grant to the above-named bank a security interest in the Collateral in accordance with the terms of paragraph 4, above, and I agree to all of the terms and conditions of this Note, Security Agreement, and Disclosure Statement, except that I will not be obligated to make any payment of money or perform any obligation provided for in this Note. I agree that this Security Agreement will also apply to any extension or renewal of this Note without requirement that I sign a separate security agreement at the time the extension or renewal is made or consent to the extension or renewal.

X _____

X _____

**FOR BANK USE ONLY**
ACCT. NO. 1022737405
NOTE NO. _____        DUE DATE AUGUST 10, 2013

BY SIGNING BELOW YOU AGREE TO ALL OF THE TERMS AND CONDITIONS HEREIN AND ON THE FOLLOWING PAGES, ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETED COPY OF THIS NOTE ON THE DATE SHOWN ABOVE, AND ACKNOWLEDGE THAT THIS NOTE IS INTENDED TO BE A CONTRACT UNDER SEAL.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

X _____ [L.S.]
Borrower's Signature
WARREN MINNIFIELD

X _____ [L.S.]
Borrower's Signature (If signing as Cosigner, see Notice to Cosigner on Page 4)

X _____ [L.S.]
Payment Guaranteed (See Guaranty Agreement and Notice to Cosigner on Page 4)

**NOTICE: SEE PAGES 3 AND 4 FOR ADDITIONAL TERMS.**

SA 51452 SouthTrust Corporation (Rev. 1/92)                    Page 2 of 4 _____ Initials

Minnifield 0030

DOCUMENT 47

# EXHIBIT B

DOCUMENT 47

REAL ESTATE MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

| Mortgagors (last name first): | Mortgagee: |
|---|---|
| MINNIFIELD, WARREN | SouthTrust Bank, National Association |
| MINNIFIELD, EMMA L. | |
| Stevens, Jeanetta Minnifield | |
| 619 LAFAYETTE HWY | P.O. Box 83837 |
| Mailing Address | Mailing Address |
| ROANOKE, AL 36274 | Birmingham, AL 35283-0837 |
| City          State          Zip | City          State          Zip |

*(handwritten:)* 14.50 / 3.00 / 13.70 / 150.20

| THE STATE OF ALABAMA | This instrument was prepared by:
SOUTHTRUST BANK, N.A., |
| | P. O. BOX 1265 |
| RANDOLPH          County | ROANOKE, AL 36274 |

KNOW ALL MEN BY THESE PRESENTS: That whereas

WARREN MINNIFIELD, AND WIFE, EMMA L. MINNIFIELD  and Jeanetta Minnifield Stevens

have _____ become justly indebted to _____ SouthTrust Bank, National Association _____

with offices in _____ Birmingham _____, Alabama, (together with its successors and assigns,

hereinafter called "Mortgagee" in the sum of _____ EIGHTY-NINE THOUSAND SEVEN HUNDRED EIGHTY-SIX AND 70/100 _____

_____ Dollars ($ 89,786.70 _____ )

together with interest thereon, as evidenced by a promissory note or notes of even date herewith.

[Complete the following if term of note(s) is more than 20 years] The final scheduled maturity date of such note(s) is _____

_____.

NOW, THEREFORE, in consideration of the indebtedness described above and other valuable consideration to the undersigned, the receipt and sufficiency of which are hereby acknowledged, and in order to secure the payment and performance of the indebtedness described above, any extensions, renewals, modifications and increases thereof and substitutions therefor and all interest thereon, all sums advanced by Mortgagee pursuant to the terms of this mortgage, and all other indebtedness (including future loans and advances) now or hereafter owed to Mortgagee by any of the above-named or by any of the undersigned, whether such indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or unmatured, joint or several, and otherwise secured or not (all of the foregoing being sometimes referred to collectively in this mortgage as the "secured indebtedness") and to secure compliance with all the covenants and stipulations hereinafter contained, the undersigned

WARREN MINNIFIELD, AND WIFE, EMMA L. MINNIFIELD  and Jeanetta Minnifield Stevens

(whether one or more, hereinafter called "Mortgagors") do hereby grant, bargain, sell, convey, assign, grant a security interest in, transfer and warrant unto

Mortgagee the following described real property situated in _____ RANDOLPH _____ County, State of Alabama, viz:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION

together with all present and future leases and subleases thereof and of any part thereof, all rents, profits, royalties, and other income and revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in anywise appertaining thereto, including any after-acquired title and easements and all rights, title and interest now or hereafter owed by Mortgagors in and to all buildings and improvements, storm and screen windows and doors, gas, steam, electric, solar and other heating, lighting, ventilating, air-conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinklers, smoke, fire and intrusion detection devices, trees, shrubs and flowers, and other equipment and fixtures now or hereafter attached or appertaining to said premises, all of which shall be deemed to be real property and conveyed by this mortgage (all of the foregoing real property, equipment, and fixtures being sometimes hereinafter called "mortgaged property");

And together with all building materials, household appliances, equipment, fixtures and fittings of every kind or character now owned or hereafter acquired by Mortgagors, or any of them, located, whether permanently or temporarily, on the mortgaged property or on any other real property, which are or shall be purchased by Mortgagors, or any of them, for the purpose, or with the intention, of making improvements on the mortgaged property or to the premises located on said property. The personal property herein transferred includes, without limitation, all lumber, bricks, building stones, building blocks, sand, cement, steel, roofing materials, paint, doors, windows, storm doors, storm windows, glass, nails, wires and wiring, hardware, plumbing and plumbing fixtures, heating, ventilating and air conditioning equipment and appliances, electrical and gas equipment and appliances, pipes and piping, ornamental and decorative fixtures, trees, shrubs and flowers, and in general all building materials, equipment, appliances and plants of every kind and character used or useful in connection with improvements to real property, provided, that to the extent the personal property described above consists of "household goods", as that term is defined in 12 C.F.R. Section 227.12 (d), Mortgagee's security interest in those household goods is limited to a purchase money security interest; and provided further, that if the mortgaged property includes the principal dwelling of any Mortgagor who is an individual, and if the securing by this mortgage of any particular other or future indebtedness would give rise to a right of rescission under 15 U.S.C. Section 1635 or the regulations promulgated thereunder, such other or future indebtedness will be secured by this mortgage only if all required notices of the right of rescission were timely and properly given.

SA24922 3/92                              *(signatures)*                    Page 1 of ___ Initials ___

For the purpose of further securing the payment of all of the secured indebtedness Mortgagors represent, warrant, covenant and agree with Mortgagee, its successors and assigns, as follows:

1. That they are lawfully seized in fee and possessed of the mortgaged property except as otherwise stated herein, they have a good right to convey the same as aforesaid, they will warrant and forever defend the title of Mortgagee to the mortgaged premises against the lawful claims of all persons whomsoever, and the mortgaged property is free and clear of all encumbrances, easements and restrictions not herein specifically mentioned.

2. That they will pay when due all taxes, assessments, and other liens or mortgages taking priority over this mortgage. If Mortgagors' interest in the mortgaged property or any part thereof is other than a freehold estate, Mortgagors agree to pay all rents and perform all covenants due to be paid and performed under the lease or other agreement whereby such interest is created exactly when due, to maintain such lease or agreement in full force and effect in accordance with its terms, and not to attempt to amend or terminate the lease or agreement without Mortgagee's prior written consent. If the mortgaged property or any part thereof is a sale is a condominium or a planned unit development, Mortgagors shall pay and perform all of Mortgagors' obligations under the declaration or covenants creating or covering the condominium or planned unit development, the bylaws and regulations of the condominium or planned unit development, and all constituent documents.

3. That they will keep the buildings and other improvements now or hereafter located on the mortgaged property and all building materials, appliances, equipment, fixtures and fittings now or hereafter located on the mortgaged property and other personal property described above continuously insured against loss or damage, including but by fire (including so-called extended coverage), vandalism and such other hazards (including flood and water damage) as Mortgagee may specify from time to time, and including builder's risk coverage if this is a construction mortgage, with loss, if any, payable to Mortgagee under a standard mortgagee's clause providing at least 30 days notice to Mortgagee before cancellation or lapse of such insurance, and will deposit with Mortgagee policies of such insurance or, at Mortgagee's election, certificates thereof, and will pay the premiums therefor as the same become due. Mortgagors may provide such insurance through an existing policy or a policy or policies independently obtained and paid for by Mortgagors. Mortgagee may, for reasonable cause, refuse to accept any policy of insurance offered or obtained by Mortgagors. Mortgagors shall give immediate notice in writing to Mortgagee of any loss or damage to the mortgaged property from any cause whatever. If Mortgagors fail to keep said property insured as above specified, Mortgagee may insure said property for its insurable value or the unpaid balance of the secured indebtedness against loss by fire, wind and other hazards for the benefit of Mortgagors and Mortgagee or for the benefit of Mortgagee alone, at Mortgagee's election. The proceeds of all insurance on the mortgaged property and the other personal property described above shall be paid by the insurer to Mortgagee, which is hereby granted full power to settle and compromise claims under all policies, to endorse in the name of Mortgagors any check or draft representing the proceeds of any such insurance, and to demand, receive and give receipt for all sums becoming due thereunder. Insurance proceeds collected by or paid to Mortgagee may be credited on the indebtedness secured by this mortgage, less costs of collection, or may be used in repairing or reconstructing the improvements on the mortgaged property, at Mortgagee's election. No crediting of insurance proceeds to the secured indebtedness and no application of insurance proceeds to repairing or reconstructing improvements on the mortgaged property shall extend or postpone the due date of any scheduled payments of the secured indebtedness or reduce the amount of such payments. In the event of a dispute with any insurer regarding coverage, the amount of any loss, or the like, Mortgagee may bring an action or join in any action against the insurer, at Mortgagee's election. If Mortgagee elects not to bring an action or to join in any action and Mortgagors elect to pursue any claim or action against the insurer, Mortgagors agree to do so solely at their expense, and Mortgagors waive any right to require Mortgagee to join in the claim or action or to charge Mortgagee with any part of the expenses of the claim or action even if Mortgagee benefits from it.

4. That commencing upon written request by Mortgagee and continuing until the secured indebtedness is paid in full, Mortgagors will pay to Mortgagee concurrently with, and on the due dates of, payments on the secured indebtedness a sum equal to the ground rents, if any, next due on the mortgaged property, plus the premiums that will become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus water rents, fire district charges, taxes and assessments next due on the mortgaged property (all as estimated by Mortgagee), less any sums already paid to Mortgagee therefor, divided by the number of months or other payment periods to elapse before one month or payment period prior to the date when such ground rents, premiums, water rents, fire district charges, taxes and assessments will become due, such sums to be held by Mortgagee to pay said ground rents, premiums, water rents, fire district charges, taxes and assessments. All sums mentioned in the preceding sentence and the sums payable on the secured indebtedness shall be added together and the aggregate amount thereof shall be paid by Mortgagors each month or other payment period in a single payment to be applied by Mortgagee to the following items in the order set forth: (a) ground rents, taxes, water rents, fire district charges, assessments, fire and other hazard insurance premiums; (b) interest on the secured indebtedness; and (c) the balance, if any, shall be applied toward the payment of the principal sum of the secured indebtedness. Any excess funds accumulated under this paragraph after payment of the items herein mentioned shall be credited in calculating the monthly or other periodic payments of the same nature required hereunder in the subsequent year; but if the actual amount of any such item shall exceed the estimate therefor, Mortgagors shall forthwith pay the deficiency upon demand. If the mortgaged property is sold under foreclosure or is otherwise acquired by Mortgagee after default, any remaining balance of the accumulations under this paragraph shall be credited to the principal of the secured indebtedness as of the date of the foreclosure sale or as of the date the property is otherwise acquired.

5. That they will take good care of the mortgaged property and the personal property described above and will not commit or permit any waste thereon or thereof, and they will keep the same repaired and at all times will maintain the same in as good condition as it now is, reasonable wear and tear alone excepted. If mortgagors fail to make repairs to the mortgaged property, Mortgagee may make such repairs at Mortgagor's expense. Mortgagee, its agents and employees, may enter the mortgaged property at all reasonable times for the purpose of inspecting or repairing such improvements.

6. That upon failure of Mortgagors to perform any covenant herein made, Mortgagee shall have the right and power, at its election, to perform such act on behalf of Mortgagors, but Mortgagee shall have no duty to perform such act or to give notice of its intention so to perform, whether or not it has performed or given notice of its intention not to perform on one or more previous occasions. All amounts expended by Mortgagee for insurance or for the payment of taxes or assessments or to discharge liens or mortgages on the mortgaged property or other obligations of Mortgagors or to make repairs to the mortgaged property or any improvements thereon shall become a debt due Mortgagee, shall be payable at once without demand upon or notice to any person, shall bear interest at the rate of interest payable on the principal sum of the note described above, or if no such rate be specified, at the highest rate not prohibited by law then in effect, and such debt and the interest thereon shall be secured by this mortgage. Upon failure of Mortgagors to reimburse Mortgagee for all amounts so expended, at the election of Mortgagee and with or without notice to any person, Mortgagee may declare the entire secured indebtedness to be due and payable and may foreclose this mortgage as hereinafter provided or as provided by law.

7. That no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured by this mortgage shall be deemed a waiver of the right to exercise such option or to declare such forfeiture either as to past, present or future defaults on the part of Mortgagors, and that the procurement of insurance or payment of taxes or other liens or assessments or performance of other obligations of Mortgagors by Mortgagee shall not constitute or be deemed to be a waiver of the right to accelerate the maturity of the secured indebtedness by reason of the failure of Mortgagors to procure such insurance or to pay such taxes, liens, assessments or perform such other obligations, it being agreed by Mortgagors that no terms or conditions contained in this mortgage can be waived, altered or changed except by a writing signed by Mortgagee.

8. That those Mortgagors who are obligated to pay the secured indebtedness will and truly pay and discharge such indebtedness as it shall become due and payable, including the note or notes described above, and any extension, renewals or increases thereof, and any other notes or obligations of such Mortgagors to Mortgagee, whether now or hereafter incurred, provided that, notwithstanding any provision of this mortgage to the contrary, those Mortgagors who are not obligors on any of the secured indebtedness but who have joined in the conveyance, grant, representations and warranties herein made by Mortgagors, but are not personally obligated to pay any sum of money or perform any affirmative act under this mortgage.

9. That whether or not default has been made in the payment of any of the secured indebtedness or in the performance of any of the terms or conditions of this mortgage, Mortgagee may give notice of the assignment of rents, royalties, income and profits herein made and may proceed to collect the rents, royalties, income and profits from the mortgaged property, either with or without the appointment of a receiver, or Mortgagee's election (to which appointment Mortgagors hereby consent). Prior to any such notification by Mortgagee, Mortgagee shall have a limited license, terminable at will by Mortgagee, to collect such rents and other payments and to apply the same in whole or in part to the payment of the secured indebtedness as and when due. Any rents, royalties, income and profits collected by Mortgagee prior to foreclosure of this mortgage, less the costs of collecting the same, including any real estate or property management commissions and attorney's fees incurred, shall be credited first to advances made by Mortgagee pursuant to the terms of this mortgage and the interest thereon, then to interest due on the secured indebtedness, and the remainder, if any, shall be held as cash collateral for the secured indebtedness or applied toward the payment of the principal sum of the secured indebtedness, at Mortgagee's election.

10. That, unless Mortgagee's written consent has been obtained in advance, (a) they will not cause or allow possession of the mortgaged property to be in any other person or entity, by the exclusion of Mortgagors, (b) they will not cut, remove, sell or commit to sell any standing timber from the mortgaged property, and (c) they will not sell, assign, transfer, convey, lease, or sublet all or any part of the mortgaged property or any oil, gas or mineral rights or other interest therein, excluding only (i) the creation of a lien or encumbrance expressly subordinate to this mortgage, (ii) the creation of a purchase money security interest for household appliances, or (iii) a transfer by devise, descent or by operation of law upon the death of a joint tenant. Mortgagee may condition its consent to any such transfer of possession of, or an interest in, the mortgaged property on the obligor's or transferee's agreeing to pay a greater rate of interest on all or any part of the secured indebtedness or to adjust the payment schedule of all or any part of the secured indebtedness, and upon Mortgagee's approval of the creditworthiness of the transferee and the transferee's payment to Mortgagee of a reasonable transfer or assumption fee.

11. That, except as otherwise expressly disclosed by Mortgagors to Mortgagee in writing on the date of this mortgage, no Hazardous Substance (as defined below) has been spilled, released, discharged or disposed of on or under the mortgaged property by Mortgagors or, to the best of Mortgagors' knowledge, by any third party or any predecessor in interest or title to Mortgagors; no underground storage tanks, whether in use or not in use, are located in, on or under any part of the mortgaged property; Mortgagors and the mortgaged property are in compliance with all applicable local, state and federal environmental laws and regulations, and Mortgagors will at all times cause the mortgaged property to continue to be in compliance therewith; no notice has been received by Mortgagors from any governmental authority or any individual or entity claiming violation of any environmental protection law or regulation, or demanding compliance with any environmental protection law or regulation, or demanding payment, indemnity, or contribution for any environmental damage or injury to natural resources, relating in any way to the mortgaged property, and Mortgagors will notify Mortgagee promptly in writing if any such notice is hereafter received by Mortgagors; and any Hazardous Substance used or produced in Mortgagors' business will be used, produced, stored, and disposed of in strict compliance with all applicable environmental laws and regulations. Mortgagors will notify Mortgagee immediately if any Hazardous Substance is spilled, released or discovered on or under the mortgaged property, and Mortgagors will take such remedial action as may be necessary to be performed on the mortgaged property in order to remedy such spilled, released or discovered Hazardous Substance and to obtain a certificate of compliance from the appropriate governmental authorities. Upon Mortgagee's request, Mortgagors will promptly obtain, at Mortgagors' expense, and deliver to Mortgagee an environmental inspection report or update of a previous report, in form acceptable to Mortgagee, prepared by a competent and reputable environmental engineer reasonably satisfactory to Mortgagee. As used herein, the term "Hazardous Substance" includes, without limitation, any asbestos, urea formaldehyde foam insulation, explosive, radioactive material, hazardous material, hazardous waste, hazardous or toxic substance, or related or unrelated substance or material which is defined, regulated, controlled, limited or prohibited in or by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) (42 U.S.C. Sections 9601 et. seq.), the Hazardous Materials Transportation Act (49 U.S.C. Sections 1801 et. seq.), the Resource Conservation and Recovery Act (RCRA) (42 U.S.C. Sections 6901 et. seq.), the Clean Water Act (33 U.S.C. Sections 1251 et. seq.), the Clean Air Act (42 U.S.C. Sections 7401 et. seq.), the Toxic Substances Control Act (15 U.S.C. Sections 2601 et. seq.), as any of the foregoing is now or hereafter amended, or in any other federal, state or local environmental law, ordinance, rule or regulation now or hereafter in effect.

12. That Mortgagors will indemnify and hold Mortgagee harmless from and against any and all loss, cost, damage, claim, liability and expense (including attorneys' fees and litigation expenses) incurred by Mortgagee on account of breach by Mortgagors of any representation, warranty or covenant set forth in paragraph 11 above, or Mortgagors' failure to perform any covenant or obligation under paragraph 11, or Mortgagors' or the mortgaged property's failure to comply fully with all environmental laws and regulations, or any other matter related to environmental conditions on, under or affecting the mortgaged property. This paragraph 12 shall survive payment of the secured indebtedness, termination of the other provisions hereof, and exercise by Mortgagee of the power of sale herein contained.

13. That if the "Construction Mortgage" box is marked on Page 1, this mortgage is a construction mortgage which secured an obligation incurred for the acquisition costs of the mortgaged property and/or the construction of an improvement on such property, and Mortgagors will perform and comply with the terms of any construction loan agreement made with Mortgagee with regard to such improvement.

14. That all of the covenants and agreements of Mortgagors herein contained shall extend to and bind their respective heirs, executors, administrators, successors and assigns, and that such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of their successors and assigns. As used in this mortgage, the term "Mortgagors" also means "Mortgagors, or any of them." The covenants and agreements of Mortgagors herein shall be joint and several. The provisions of this mortgage and of the note or notes secured hereby are severable, and the invalidity or unenforceability of any provision of this mortgage or of any such note or notes shall not affect the validity and enforceability of the other provisions of this mortgage or of such note or notes. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee under any other agreement, at law, and in equity, and such rights and remedies may be exercised concurrently or consecutively. Time is of the essence with respect to every covenant contained in this mortgage. This mortgage also constitutes a financing statement, and a carbon or photostatic copy of this mortgage may be filed as a financing statement in any public office.

SA24922 5/92                Page 2 of 3    Initials

Minnifield 0025
Minnifield 0025

DOCUMENT 47

UPON CONDITION, HOWEVER, that if Mortgagors shall well and truly pay and discharge all the secured indebtedness (including, without limitation, all extensions, renewals and increases of the original indebtedness and all future advances) as the same shall become due and payable and shall do all things up and perform all acts and covenants by them herein agreed to be done or performed in strict accordance with the tenor and effect thereof, and if there is no outstanding commitment or agreement by Mortgagee to make advances, incur obligations or otherwise give value under any agreement, including, without limitation, agreements providing for future advances, open-end, revolving or other lines of credit, or letters of credit, then and in that event only this conveyance and the security interest herein granted shall be and become null and void [text continues, dense and largely illegible] ...

[ ] **Construction mortgage.** If this box is marked, this mortgage is a construction mortgage.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her signature and seal or has caused this instrument to be executed (and its seal to be affixed hereto) by its officer(s) or partner(s) thereunto duly authorized, this _____10TH_____ day of ___AUGUST_____, 1998 .

_____ (L.S.)
Warren Minnifield

_____ (L.S.)
EMMA L. MINNIFIELD

_____ (L.S.)
Jeanetta Minnifield Stevens

_____ (L.S.)

ATTEST_____        _____

Its_____        By_____
    (Corporate Seal)

                                            Its_____

(If recording privilege tax is not being paid at time of recording on the maximum sum which might be drawn under the secured indebtedness, complete the following pursuant to Ala. Code Section 40-22-2(2)b.)

I certify the amount of indebtedness presently incurred is $ ___89,786.70___ .

_____
Authorized agent for Mortgagee

S/12 4922 5/92                                                          Page 3 of 4 ____ Initials

DOCUMENT 47

Minnifield 0026
Minnifield 0026

THE STATE OF ALABAMA,                                    INDIVIDUAL ACKNOWLEDGMENT

RANDOLPH _____ COUNTY

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Warren Minnifield and

wife, Emma L. Minnifield and Jeanetta Minnifield Stevens _____ whose name

___are___ signed to the foregoing conveyance and who ___are___ known to me, acknowledged before me on this day that, being

informed of the contents of the conveyance, __t he _y_ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _____10th_____ day of _____August_____, __1998__.

(Notarial Seal)                                    _Brenda Bellew_
                                                    My Commission expires: 10-04-2000     Notary Public

THE STATE OF ALABAMA,                                    INDIVIDUAL ACKNOWLEDGMENT

_____ COUNTY

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _____

_____ whose name

_____ signed to the foregoing conveyance and who _____ known to me, acknowledged before me on this day that, being

informed of the contents of the conveyance, ____ he ____ executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this _____ day of _____, _____.

(Notarial Seal)                                    _____
                                                                            Notary Public

THE STATE OF ALABAMA,                                    CORPORATE ACKNOWLEDGMENT

_____ COUNTY

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _____

_____ whose name as _____ President

of the _____, a corporation, is signed to the foregoing

conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, ___ he, as

such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and official seal this _____ day of _____, _____.

(Notarial Seal)                                    _____
                                                                            Notary Public

THE STATE OF ALABAMA,                                    PARTNERSHIP ACKNOWLEDGMENT

_____ COUNTY

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _____

_____ whose name as general partner of _____, a

(general) (limited) partnership, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that,

being informed of the contents of the conveyance, ____ he, as such general partner and with full authority, executed the same voluntarily for

and as the act of said partnership.

Given under my hand and official seal this _____ day of _____, _____.

(Notarial Seal)                                    _____
                                                                            Notary Public

STATE OF ALABAMA

AFTER RECORDING PLEASE RETURN TO   RANDOLPH COUNTY      REAL ESTATE MORTGAGE,
                                   I hereby certify
SouthTrust Bank, N.A.              $ 134.90              SECURITY AGREEMENT AND
P. O. Box 1265                     has been paid on it : with FINANCING STATEMENT
Roanoke, AL 36274                  Instrument as required by law.

                                   Mack Diamond
                                   Judge of Probate

THE STATE OF ALABAMA,

_Randolph_ _____ COUNTY, Office of the Judge of Probate.

I hereby certify that the within mortgage was filed in this office for record on the ___August___ _____ day

of ___31___, ___1998___ at ___11:30___ o'clock ___A___ M., and duly recorded in

_Mortgage_ Volume ___367___, at page ___07-11___, and examined.

     14.50
     3.00                                          _Mack Diamond_
SA24922 5/92                                        Judge of Probate
                                                    Page 4 of 4

Minnifield 0027

DOCUMENT 47

EXHIBIT "A"

Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30' E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01' W along the southerly side of South Street a distance of 455.6 feet to point of on the easterly right-of-way line of Old Highway 431; thence S 11 degrees 33' W along said right-of-way line a distance of 400 feet to a point; thence N 87 degrees 30' E a distance of 68 feet to a point; thence N 2 degrees 30' W a distance of 16.5 feet to a point; thence N 87 degrees 30' E a distance of 360 feet to the section line between Sections 1 and 2 a distance of 63 feet to the point of beginning. Together with all improvements located thereon.

Warren Minnifield

Emma L. Minnifield

Jeanetta Minnifield Stevens

Minnifield 0028
Minnifield 0028

DOCUMENT 47

# EXHIBIT C

DOCUMENT 47



**WACHOVIA**

Wachovia Bank N.A.
FL 0503
Collection Shared Services
PO Box 52117
Jacksonville, FL 32201-2117
Tel 866-509-7093

July 12, 2006

Emma L Minnifield
619 Lafayette Hwy
Roanoke, AL 36274

### NOTICE OF INTENTION TO FORECLOSE

RE: 054901022816605

Dear Wachovia Customer:

As you are aware, Wachovia Bank N.A. holds a recorded mortgage on 619 Lafayette Hwy Roanoke, AL 36274, in the amount of $89,786.70.

Your mortgage payments are past due which puts you in default of your loan agreement. As of 07/12/2006 you owe the following:

| | |
|---|---|
| Past due payments: | $2,780.00 |
| Current Late Charges: | $34.75 |
| Accumulated late charges: | $306.00 |
| Other charges: | $105.00 |
| | -------------- |
| Total due to reinstate and cure default: | $3,225.75 |

You may cure your default by paying the aforesaid amount by bank check, money order, or other certified funds so that it is received at the following address on or before 08/11/2006:

Wachovia Bank N.A.
Consumer Credit Department
P.O. Box 13327
Roanoke, VA 24040

If your account is not brought current by 08/11/2006, then we may start foreclosure proceedings, which will cause you to lose your property.

Even if a foreclosure is started, you may reinstate your account until a judgement in foreclosure is entered. However, if a foreclosure is started, in addition to curing all missed payments, late charges, and other necessary items, you will be required to pay for attorney's fees and costs.

Among other things, the purpose of this letter is to make one final attempt to possibly avoid acceleration or foreclosure and reach an agreement with you to satisfy your delinquent mortgage loan account. There are alternatives to foreclosure and its severe consequences. These alternatives can include a short payoff, a reinstatement or restructure of your loan. Wachovia Bank N.A. is willing to consider your individual circumstances and be flexible as possible in attempting to make one of these alternatives available to you. However, you or your attorney must contact this office to discuss your situation if foreclosure is to be avoided.

This letter is not to be considered a definite offer to accept one of the above alternatives to foreclosure. Likewise, this letter is not a waiver of the acceleration of your mortgage or a waiver of any of the bank's rights or remedies under the loan documents.

The failure to cure or resolve the default on or before the date specified in this notice shall result in the acceleration of the sums secured by the Mortgage, foreclosure by judicial proceedings and sale of the property. There shall be no further notice prior to acceleration. You shall have the right to assert in the foreclosure proceedings the non-existence of a default or any other defense that you may have to acceleration and foreclosure. In such action, Wachovia Bank N.A. shall be entitled to collect all expenses incurred in pursuing the remedies provided for herein, including, but not limited to, reasonable attorney's fees and costs, all at your additional expense and without further notice.

The debt described in this letter will be assumed to be valid by Wachovia Bank N.A.'s law firm, unless the debtor within thirty (30) days after the receipt of this notice disputes, in writing, the validity of the debt or some portion thereof. If the debtor notifies Wachovia Bank N.A. in writing within thirty (30) days of the receipt of this notice that the debt or any portion thereof is disputed, Wachovia Bank N.A. will obtain a verification of the debt and a copy of the verification will be mailed to the debtor.

There may be possible availability of financial assistance for curing a default from programs operated by the State or Federal Government or non-profit organizations. You may wish to call the number below to ascertain whether you qualify for assistance.

This is an attempt to collect a debt. Any information obtained in that regard shall be used for that purpose.

If you disagree with the assertion that a default has occurred or with the correctness of the calculation of the amount required to cure the default, you may contact Retail Credit Collections at 1(866)509-7093.

Sincerely,

Retail Credit Collections
866-509-7093
(866)509-7093

DOCUMENT 47

Minnifield 0196

# EXHIBIT D

DOCUMENT 47

04/12/2010 **VIA CERTIFIED AND REGULAR MAIL**

630,338,882,910
Estate of Warren Minnifield
619 Lafayette Hwy
Roanoke, Al 36276

## NOTICE OF RIGHT TO CURE DEFAULT

RE: Account Number: **********6605
Property Address: 619 Lafayette Hwy, Roanoke, Al 36276

Dear Customer(s):

As you are aware, Wells Fargo Bank, N.A.("Lender") holds a recorded lien on the real property listed above, in the amount of $89,786.70.

Your loan payments are past due, which puts you in default of your loan agreement. As of 04/12/2010 you owe the following:

| | |
|---|---|
| Principal and Interest | $3,021.51 |
| Current Late Charges | $34.75 |
| **TOTAL DUE** | **$3,056.26** |

You may cure your default by paying the aforesaid amount by bank check, money order, or other certified funds so that it is received at the following address on or before 05/12/2010: **Wells Fargo Bank, N.A., Retail Credit Collections, MAC Z3057-013, P.O. Box 52117, Jacksonville, FL 32201-2117.**

If your account is not brought current by 05/12/2010, then we may accelerate or start foreclosure proceedings.

Among other things, the purpose of this letter is to make one final attempt to possibly avoid acceleration or foreclosure and reach an agreement with you to satisfy your delinquent loan account. There are alternatives to foreclosure and its severe consequences. The Lender is willing to consider your individual circumstances and be flexible as possible in attempting to make alternatives available to you. However, you or your attorney must contact this office to discuss your situation if foreclosure or other legal remedies are to be avoided. This letter is not to be considered a definite offer to accept an alternative to foreclosure or other legal remedies. Likewise, this letter is not a waiver of the acceleration of your mortgage or a waiver of any of the bank's rights or remedies under the loan documents.

Failure to bring your account current may result in our election to exercise our right to accelerate your account and foreclose on your property. Upon acceleration, your total obligation will be

DOCUMENT 47

Minnifield 0206

Wells Fargo Bank, N.A.
Retail Credit Collections
MAC Z3057-013
P.O. Box 52117
Jacksonville, FL 32201-2117

04/12/2010          **VIA CERTIFIED AND REGULAR MAIL**

Page 2

Immediately due and payable without further notice or demand. In foreclosure proceedings, we are entitled to collect your total arrearage in addition to any expenses of foreclosure, including but not limited to reasonable foreclosure fees and costs. You have the right to assert in court the non-existence of a default or any other defense to acceleration and foreclosure.

After acceleration of the debt, but prior to foreclosure, you may have the right to reinstate the loan, depending on the terms of the loan documents. We encourage you to review the provisions of the loan documents. Please be aware that, after acceleration of the debt, there may be expenses and fees and costs incurred by us to enforce our lien in addition to the overdue amount. Any payment to reinstate the loan after acceleration must therefore include an amount sufficient to cover such expenses and fees incurred. Payments received that are less than the amount required to reinstate the loan will be returned, and will not stop any foreclosure proceedings that have begun. Prior to submitting payment, you may wish to call us to verify the exact amount due.

There may be possible availability of financial assistance for curing a default from programs operated by the State or Federal Government or non-profit organizations. You may wish to call the number below to ascertain whether you qualify for assistance.

In addition, if you have recently filed a petition under the Bankruptcy Code, this notice has been sent to you because the Lender has not been notified of your bankruptcy case. If the foregoing applies to you, it is very IMPORTANT that you or your bankruptcy attorney contact us immediately and provide us with the following information: date and jurisdiction of your filing, your case number and the number of the chapter you have filed.

**Please note:**

   • If you are eligible for protection under the Servicemembers Civil Relief Act, or similar state statute, please contact us immediately.
   • We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report.

If you disagree with the assertion that a default has occurred or with the correctness of the calculation of the amount required to cure the default, you may contact Retail Credit Collections at 1 (800) 829-2474.

Sincerely,

Retail Credit Collections
1 (800) 829-2474

The laws of some states require us to inform you that this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

579534 (Rev 02)

Notice Of Right To Cure Default
032010-284944-490017-772284

**Minnifield 0207**

# EXHIBIT E

DOCUMENT 47



**WELLS FARGO**

Wells Fargo Servicing Center
Home Equity Payment Processing
MAC B6955-01B
PO BOX 31557
Billings, MT 59107-1557

## NOTICE OF RIGHT TO CURE DEFAULT (REAL ESTATE)

Date of Notice: July 26, 2010                    Creditor: Wells Fargo, Bank, N.A.

To:     ESTATE OF WARREN MINNIFIELD            Re: Account Number: 6806800525286XXXX
        619 LAFAYETTE HWY
        ROANOKE, AL 36274

You are now in default on this credit obligation. You have the right to correct this default until 08/25/2010. If you do so, you may continue with the contract as though you did not default. Your default consists of your failure to make the following payment(s):

| | |
|---|---|
| Scheduled payment(s) in the total amount of | $2085.00 |
| Plus accumulated late charges of | $1006.01 |
| Plus other charge/fee of | $ 0.00 |
| Plus insurance charges of | $1031.79 |
| Over-limit charge of | $ 0.00 |
| TOTAL | $4122.80 |

**Correction of Default:** **Before 08/25/2010, you must pay the default amount of $4122.80. If you do not correct your default by this date, we may accelerate your credit obligation and exercise rights and remedies against you including initiating a foreclosure action or procedure to sell the real estate that secures your credit obligation. You will have the right to reinstate your credit obligation after acceleration and the right in any foreclosure action to assert the non-existence of a default or any other defense you may have to acceleration and sale.**

In addition, you may be liable for additional monthly payments that come due and any late charges after the date of this Notice.

Any payment of less than the full amount due may be applied to your credit obligation or returned to you. However, if we apply any payment of less than the full amount due to your credit obligation, or if we negotiate with you in an attempt to cure the default, this shall not establish a course of dealing or constitute our waiver of acceleration unless agreed to by us in writing. Further, any future negotiations attempting to reinstate your credit obligation shall also not establish a course of dealing or constitute our waiver of acceleration unless agreed to by us in writing.

Please remit the default amount of $4122.80 to the address shown above. If you have any questions, please call our loan specialists at 1-866-401-7737 Monday through Thursday 8:00 a.m. to 8:00 p.m., Friday 8:00 a.m. to 4:30 p.m. Central Standard Time. For TDD assistance, call 1-866-289-2069. To speak with the Home Equity Solutions team, please call 1-866-587-4012 Monday through Friday 5:00 a.m. to 8:00 p.m., Saturday 5:00 a.m. to 2:00 p.m., and Sunday 10:00 a.m. to 7:00 p.m. Pacific Standard Time.

**The laws of the following states require us to expressly state the following disclosures:**
**COLORADO RESIDENTS:** You may call the Colorado Foreclosure hotline for assistance: 1-877-601-Hope.

**KANSAS RESIDENTS:** You may also be obligated to pay reasonable costs of collection, including, but not limited to, court costs, attorneys fees, and collection agency fees, except that such costs of collection: (1) may not include costs that were incurred by a salaried employee of the creditor or its assignee; (2) may not include the recovery of both attorney fees and collection agency fees; and (3) shall not be in excess of 15% of the unpaid debt after default.

**MISSOURI RESIDENTS:** If you voluntarily surrender possession of the above-described property, you could still owe additional money after the money received from the sale of the property is deducted from the total amount owed.

**SOUTH CAROLINA RESIDENTS:** The rights and remedies we may exercise against you may also include, in many instances, to hold you personally responsible for any difference between the amount the real estate brings in a sale and the balance due Wells Fargo on the credit obligation in questions.

Home Equity Collections Servicing

The laws of some states require us to inform you that this communication is an attempt to collect a debt and any information obtained will be used for that purpose.

HQRTCV2.doc

Minnifield 0094

# EXHIBIT F

DOCUMENT 47

GINNY RUTLEDGE
ATTORNEY AT LAW
(205) 930-5200

S I R O T E
——— & ———
P E R M U T T
A PROFESSIONAL CORPORATION



October 19, 2010

CERTIFIED MAIL RETURN RECEIPT REQUESTED
7009 1680 0000 9522 4012

Warren Minnifield
Emma L. Minnifield
Jeanetta Minnifield Stevens
619 Lafayette Hwy
Roanoke, AL 36274

RE:     NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE -
        619 LAFAYETTE HWY ROANOKE, AL 36274

YOU ARE HEREBY NOTIFIED that you are in default of the terms of the Promissory Note and
Mortgage dated the 10th day of August, 1998, to SouthTrust Bank, National Association. By virtue of
default in the terms of said Note and Mortgage, Wells Fargo Bank, N.A. successor by merger to
Wachovia Bank; N.A. f/k/a SouthTrust Bank, N.A. hereby accelerates the entire remaining
unpaid balance of the debt, including attorney's fees, accrued interest, and other lawful charges, and the
amount due and payable as of the date of this letter is **$81,651.53**. This payoff amount may change on a
daily basis. If you wish to pay off your mortgage, please call our office at the number above to obtain the
updated figure.

We will assume this debt to be valid unless it is disputed within thirty days after you receive this letter. If
you do dispute this debt or any portion thereof, we will obtain and mail you a verification of the debt or a
copy of any judgment if you send us a written request within this thirty-day period. Also, upon written
request within this thirty-day period, we will provide you with the name and address of the original
creditor, if different from the current creditor. This letter is an attempt to collect a debt, and any
information obtained will be used for that purpose.

FOR:  Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank,
N.A.

BY:   _____
      Ginny Rutledge
      FOR THE FIRM

GCR/wb

cc:   America's Servicing Company/Loan #0999440498

LAW OFFICES AND MEDIATION CENTERS
2311 HIGHLAND AVENUE SOUTH     BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727     BIRMINGHAM, ALABAMA 35255-5727
URL | http://www.sirote.com

B i r m i n g h a m     |     H u n t s v i l l e     |     M o b i l e

# EXHIBIT G

DOCUMENT 47

GINNY C. RUTLEDGE
ATTORNEY AT LAW
grutledge@sirote.com

S I R O T E
——— & ———
P E R M U T T
A PROFESSIONAL CORPORATION

May 4, 2011

**VIA FEDERAL EXPRESS**

T. Jeanetta Minnifield Stevens
619 LaFayette Hwy.
Roanoke, Alabama 36274

Re: The Estate of Warren Minnifield
Property Address: 619 Lafayette Hwy, Roanoke, Alabama 36274
Our Client: Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a
SouthTrust Bank, N.A. ("Wells Fargo")
Loan Number: 09994██████

Dear Ms. Stevens:

This letter is in response to your letter received in our office October 25, 2010. Enclosed are the following
items for your review:

1. Copy of the subject Mortgage.
2. Copy of the Promissory Note.
3. Copy of the Payment History from August 1998 to March 24, 2011. If you have proof of
payments not reflected on the attached payment history, please provide such proof and
we will forward to Wells Fargo for review.

In your letter of October 25, 2010, you request the creditor information and an explanation of charges and
payments from 2002. The original creditor was SouthTrust Bank, National Association. The current
creditor is Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank,
N.A. Their mailing address is Post Office Box 2248, Jacksonville, FL 32203-2248.

The attached payment history provides a detailed accounting of this account since the loan originated.
Please note that if the account is delinquent, any payments made would be applied to interest before being
applied to the principal owed. Your account is currently showing due for the November 2010 payment.

The total amount to reinstate the above-referenced account, good through May 6, 2011, is $7,867.92. The
reinstatement quote is broken down as follows:

| | | |
|---|---|---|
| Past Due Payments | $ | 4,170.00 |
| Accrued Late Charges | $ | 1,006.01 |
| Appraisal Fees | $ | 154.00 |
| Property Preservation Expenses | $ | 42.00 |
| Insurance Advances | $ | 1,787.91 |

DOCSBHM\1763641\6\

LAW OFFICES AND MEDIATION CENTERS
2311 HIGHLAND AVENUE SOUTH   BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727   BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE | 205.930.5100   FAX | 205.930.5101   URL | http://www.sirote.com

B i r m i n g h a m   |   H u n t s v i l l e   |   M o b i l e

| Foreclosure Fees and Costs | $ | 708.00 |
| Total | $ | 7,867.92 |

The total amount to pay off the above-referenced account, good through May 6, 2011, is $80,281.35. The payoff quote is broken down as follows:

| Principal Balance | $ | 76,583.43 |
| Accumulated Late Charges | $ | 1,006.01 |
| Appraisal Fees | $ | 154.00 |
| Property Preservation Expenses | $ | 42.00 |
| Insurance Advances | $ | 1,787.91 |
| Foreclosure Fees and Costs | $ | 708.00 |
| Total | $ | 80,281.35 |

Our firm is only authorized to accept full reinstatement of full payoff funds. If you intend to reinstate or pay off this account, certified funds should be made payable to Sirote & Permutt, P.C. If you are unable to fully reinstate or fully pay off this account, please contact Megan Ratcliff of Wells Fargo's foreclosure department directly at (904) 489-9818 to see what loan workout options may be available to you. If you are approved for a loan workout, we will be instructed to close our file.

If my office can be of further assistance in this matter, please do not hesitate to contact our office at 205-930-5200.

This communication is from a debt collector.

Sincerely,

Ginny C. Rutledge
FOR THE FIRM

GCR/hn
Enclosures

DOCSBH\M\176364I\6\

**GINNY C. RUTLEDGE**
ATTORNEY AT LAW
(205) 930-5161
grutledge@sirote.com

# S I R O T E
## — & —
# P E R M U T T
A PROFESSIONAL CORPORATION

October 28, 2010

<u>VIA CERTIFIED MAIL AND U.S. MAIL</u>

Ms. T. Jeanetta Minnifield Stevens
619 LaFayette Highway
Roanoke, AL 36274

Re:    The Estate of Warren Minnifield
       Property Address: 619 LaFayette Highway, Roanoke, Alabama 36274
       Our Client: Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a
       SouthTrust Bank, N.A.
       Loan No. 09994█████

Dear Ms. Stevens:

This letter is to confirm receipt of your letter received in our office October 25, 2010, regarding
the above-referenced property. We have forwarded your letter to Wells Fargo for their review.
We have also ceased all foreclosure proceedings in order to provide a response to your letter.
Once Wells Fargo has provided the verification information requested, we will respond to your
letter. Please continue working with Wells Fargo's Loss Mitigation Department at (800) 662-
5014 to see what options may be available to you. If you have any questions, please do not
hesitate to contact our office at (205) 930-5375.

This communication is from a debt collector.

Sincerely,

Ginny C. Rutledge
FOR THE FIRM

GCR/ta

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE | 205.930.5100    FAX | 205.930.5101    URL | http://www.sirote.com

Birmingham | Huntsville | Mobile

Minnifield 0015

**GINNY C. RUTLEDGE**
ATTORNEY AT LAW
*grutledge@sirote.com*

SIROTE
——— & ———
PERMUTT
A PROFESSIONAL CORPORATION

February 10, 2011

**VIA CERTIFIED MAIL AND U.S. MAIL**

T. Jeanetta Minnifield Stevens
619 LaFayette Hwy.
Roanoke, Alabama 36274

Re:     The Estate of Warren Minnifield
        Property Address:  619 Lafayette Hwy, Roanoke, Alabama 36274
        Our Client: Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a
        SouthTrust Bank, N.A. ("Wells Fargo")
        Loan Number:  09994█████

Dear Ms. Stevens:

This letter is in follow up to my letter dated October 28, 2010, regarding the above referenced matter.

Our foreclosure file continues to remain on hold in our office. Wells Fargo is still investigating the issues raised in your October 23, 2010, letter. We should have a response to you in the near future.

If you have any questions in the meantime, please contact our office at (205) 930-5756.

This communication is from a debt collector.

Sincerely,

Ginny C. Rutledge
FOR THE FIRM

GCR/ta

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE | 205.930.5100    FAX | 205.930.5101    URL | http://www.sirote.com
B i r m i n g h a m    |    H u n t s v i l l e    |    M o b i l e

**GINNY C. RUTLEDGE**
ATTORNEY AT LAW
grutledge@sirote.com



March 8, 2011

<u>VIA CERTIFIED MAIL AND U.S. MAIL</u>

T. Jeanetta Minnifield Stevens
619 LaFayette Hwy.
Roanoke, Alabama 36274

Re:    The Estate of Warren Minnifield
       Property Address: 619 Lafayette Hwy, Roanoke, Alabama 36274
       Our Client: Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a
       SouthTrust Bank, N.A. ("Wells Fargo")
       Loan Number: 09994█

Dear Ms. Stevens:

This letter is in follow up to my letters dated October 28, 2010, and February 10, 2011, regarding the above referenced matter.

Our foreclosure file continues to remain on hold in our office. Wells Fargo is still investigating the issues raised in your October 23, 2010, letter. We should have a response to you in the near future.

If you have any questions in the meantime, please contact our office at (205) 930-5756.

This communication is from a debt collector.

Sincerely,

Ginny C. Rutledge
FOR THE FIRM

GCR/ta

DOCSBHM\1763641\3\

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE | 205.930.5100    FAX | 205.930.5101    URL | http://www.sirote.com
B i r m i n g h a m  |  H u n t s v i l l e  |  M o b i l e

Minnifield 0019

DOCUMENT 47

**GINNY C. RUTLEDGE**
ATTORNEY AT LAW
*grutledge@sirote.com*



SIROTE
—— & ——
PERMUTT
A PROFESSIONAL CORPORATION

April 7, 2011

**VIA CERTIFIED MAIL AND U.S. MAIL**

T. Jeanetta Minnifield Stevens
619 LaFayette Hwy.
Roanoke, Alabama 36274

Re:     The Estate of Warren Minnifield
        Property Address:  619 Lafayette Hwy, Roanoke, Alabama 36274
        Our Client:  Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a
        SouthTrust Bank, N.A. ("Wells Fargo")
        Loan Number:  09994-████████

Dear Ms. Stevens:

This letter is in follow up to my letters dated October 28, 2010, February 10, 2011, and March 8,
2011, regarding the above referenced matter.

Our foreclosure file continues to remain on hold in our office.  Wells Fargo is still investigating
the issues raised in your October 23, 2010, letter.  We should have a response to you in the near
future.

If you have any questions in the meantime, please contact our office at (205) 930-5756.

This communication is from a debt collector.

Sincerely,

Ginny C. Rutledge
FOR THE FIRM

GCR/ta

DOCSBHM\176364\\4\

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH     BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727     BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE | 205.930.5100     FAX | 205.930.5101     URL | *http://www.sirote.com*

Birmingham  |  Huntsville  |  Mobile

Minnifield 0021

# EXHIBIT H

DOCUMENT 47

GINNY RUTLEDGE
ATTORNEY AT LAW
(205) 930-5200

S I R O T E
——— & ———
P E R M U T T
A PROFESSIONAL CORPORATION

May 10, 2011

CERTIFIED MAIL, RETURN RECEIPT REQUESTED
7009 3410 0001 6626 3862 | 7009 3410 0001 6626 3893

Estate of Warren Minnifield
Emma L. Minnifield
Jeanetta Minnifield Stevens
319 Lafayette Hwy
Roanoke, AL 36274

619 Lafayette Hwy
Roanoke, AL 36274

RE:    NOTICE OF ACCELERATION OF PROMISSORY NOTE AND MORTGAGE -
       619 LAFAYETTE HWY ROANOKE, AL 36274

YOU ARE HEREBY NOTIFIED that you are in default of the terms of the Promissory Note and
Mortgage dated the 10th day of August, 1998, to SouthTrust Bank, National Association. By
virtue of default in the terms of said Note and Mortgage, Wells Fargo Bank, N.A. successor by
merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. hereby accelerates to maturity the
entire remaining unpaid balance of the debt, including attorney's fees, accrued interest, and other
lawful charges, and the amount due and payable as of the date of this letter is $ 80,146.71. This
payoff amount may change on a daily basis. If you wish to pay off your mortgage, please call
our office at the number above to obtain the updated figure.

We are at this time commencing foreclosure under the terms of the Mortgage, and enclosed is a
copy of the foreclosure notice to be published in the Randolph Leader. Please note that the
foreclosure sale is scheduled for June 15, 2011. If you wish to avoid losing the subject property,
you must contact us immediately; otherwise, the foreclosure sale will take place as set forth in
the publication notice, and we will take legal action to obtain possession of the subject property.
For any information regarding this matter, please call (205) 930-5200.

Minnifield 0089

Page 2
Estate of Warren Minnifield
Emma L. Minnifield
Jeanetta Minnifield Stevens

We will assume this debt to be valid unless it is disputed within thirty days after you receive this letter. If you do dispute this debt or any portion thereof, we will obtain and mail you a verification of the debt or a copy of any judgment if you send us a written request within this thirty-day period. Also, upon written request within this thirty-day period, we will provide you with the name and address of the original creditor, if different from the current creditor. This letter is an attempt to collect a debt, and any information obtained will be used for that purpose.

FOR: Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.

BY: _____

Ginny Rutledge
FOR THE FIRM

GCR/wb

cc:     America's Servicing Company/Loan #0999440498

DOCUMENT 47

# EXHIBIT I

DOCUMENT 47



S I R O T E
——— & ———
P E R M U T T
A PROFESSIONAL CORPORATION

September 21, 2011

Robert E. Kirby, Jr., Esq.
THE KIRBY LAW FIRM
4000 Eagle Point Corporate Drive
Birmingham, AL 35242

RE:     Foreclosure on Property Located at 619 Lafayette Hwy, Roanoke, AL 36274
        Your Client:  Warren Minnifield and wife, Emma L. Minnifield and Jeanetta Minnifield Stevens

This letter is to advise you that Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A.
f/k/a SouthTrust Bank, N.A., has instructed us to postpone the foreclosure sale scheduled for September
21, 2011, until October 19, 2011, at the same place and under the same terms as set out in the original
mortgage foreclosure notice. **Please be aware that this letter is not being sent to your client.** For any
information regarding this matter, please call (205) 930-5200.

This communication is from a debt collector.

Yours very truly,

Wallace Inman
Foreclosure Specialist

WI/wi

cc:     America's Servicing Company/Loan #0999440498

*LAW OFFICES AND MEDIATION CENTERS*

2311 HIGHLAND AVENUE SOUTH    BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727    BIRMINGHAM, ALABAMA 35255-5727
TELEPHONE  |  205 930 5100        FAX  |  205 930 5101        URL  |  *http://www.sirote.com*

B i r m i n g h a m    |    H u n t s v i l l e    |    M o b i l e




Minnifield 0148

# EXHIBIT J

DOCUMENT 47

Affidavit of Publication of Legal Notice

State of Alabama
Randolph County

Before me, a notary public in and for the county and state above listed, personally appeared John W. Stevenson, who, by me duly sworn, deposes and says that:

"My name is John W. Stevenson. I am the Publisher of The Randolph Leader. The Newspaper is printed in the English language, has a general circulation and its principal editorial office in the county above listed and has been mailed under a publication class mailing privilege of the United States Postal Service from the post office where it is published at least 51 weeks a year.

The Newspaper published the attached legal notice in the issues of:

May 18, 25, June 1, 2011

A copy of each issue of the paper containing the notice was mailed to the person or official placing the legal notice. (If the post office address of the person to whom the notice is directed can be ascertained, a copy should be mailed by the person or official placing the advertisement to the person to whom the notice was directed.)

The sum charged for these publications was $ 259.00 . The sum charged by the Newspaper for said publication does not exceed the actual lowest classified rate paid by commercial customers for an advertisement of similar size and frequency in the same newspaper(s) in which the public notice appeared.

There are no agreements between the Newspaper and the officer or attorney charged with the duty of placing the attached legal advertising notices whereby any advantage, gain or profit accrued to said officer or attorney.

Vanessa Burnside
AFFIANT

Sworn and subscribed this  3  day of  May  , 20 13 .

Danielle Zooker
NOTARY PUBLIC

My Commission expires: Jan. 16, 2017 .

DOCUMENT 47

## MORTGAGE FORECLOSURE SALE

Default having been made in the payment of the indebtedness secured by that certain mortgage executed by Warren Minnifield and wife, Emma L. Minnifield and Jeanetta Minnifield Stevens, to SouthTrust Bank, National Association, on the 10th day of August, 1998, said mortgage recorded in the Office of the Judge of Probate of Randolph County, Alabama, in Mortgage Book 367, Page 67; the undersigned Wells Fargo Bank, N.A successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., as Mortgagee/Transferee, under and by virtue of the power of sale contained in said mortgage, will sell at public outcry to the highest bidder for cash, in front of the main entrance of the Courthouse at Wedowee, Randolph County, Alabama, on June 15, 2011, during the legal hours of sale, all of its right, title, and interest in and to the following described real estate, situated in Randolph County, Alabama, to-wit:

Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of 400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 83 feet to the point of beginning.

Property Street Address: 619 Lafayette Hwy, Roanoke, AL 36274

THIS PROPERTY WILL BE SOLD ON AN "AS IS, WHERE IS" BASIS, SUBJECT TO ANY E A S E M E N T S , ENCUMBRANCES, AND EXCEPTIONS REFLECTED IN THE MORTGAGE AND THOSE CONTAINED IN THE RECORDS OF THE OFFICE OF THE JUDGE OF PROBATE OF THE COUNTY WHERE THE ABOVE-DESCRIBED PROPERTY IS SITUATED. THIS PROPERTY WILL BE SOLD WITHOUT WARRANTY OR RECOURSE, EXPRESSED OR IMPLIED AS TO TITLE, USE AND/OR ENJOYMENT AND WILL BE SOLD SUBJECT TO THE RIGHT OF REDEMPTION OF ALL PARTIES ENTITLED THERETO.

This sale is made for the purpose of paying the indebtedness secured by said mortgage, as well as the expenses of foreclosure.

The Mortgagee/Transferee reserves the right to bid for and purchase the real estate and to credit its purchase price against the expenses of sale and the indebtedness secured by the real estate.

This sale is subject to postponement or cancellation.

Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., Mortgagee/ Transferee
Ginny Rutledge
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, AL 35255-5727
Attorney for Mortgagee/ Transferee
www.sirote.com/foreclosures_189575
(20-22)

# EXHIBIT K

DOCUMENT 47

SEND TAX NOTICE TO:
America's Servicing Company
3476 Stateview Blvd
Fort Mill, SC 29715

STATE OF ALABAMA )

RANDOLPH COUNTY )

## FORECLOSURE DEED

KNOW ALL MEN BY THESE PRESENTS, that

WHEREAS, heretofore, on, to-wit: the 10th day of August, 1998, Warren Minnifield and wife, Emma L. Minnifield and Jeanetta Minnifield Stevens, executed that certain mortgage on real property hereinafter described to SouthTrust Bank, National Association, which said mortgage was recorded in the Office of the Judge of Probate of Randolph County, Alabama, in Mortgage Book 367, Page 67, and

WHEREAS, in and by said mortgage, the Mortgagee was authorized and empowered in case of default in the payment of the indebtedness secured thereby, according to the terms thereof, to sell said property before the Courthouse door in the City of Wedowee, Randolph County, Alabama, after giving notice of the time, place, and terms of said sale in some newspaper published in said County by publication once a week for three (3) consecutive weeks prior to said sale at public outcry for cash, to the highest bidder, and said mortgage provided that in case of sale under the power and authority contained in same, the Mortgagee or any person conducting said sale for the Mortgagee was authorized to execute title to the purchaser at said sale; and it was further provided in and by said mortgage that the Mortgagee may bid at the sale and purchase said property if the highest bidder thereof; and

WHEREAS, default was made in the payment of the indebtedness secured by said mortgage, and the said Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. did declare all of the indebtedness secured by said mortgage, subject to foreclosure as therein provided and did give due and proper notice of the foreclosure of said mortgage by publication in the

  

Minnifield 0007

Randolph Leader, a newspaper of general circulation published in Randolph County, Alabama, in its issues of May 18, 2011, May 25, 2011, and June 1, 2011; and

WHEREAS, on October 19, 2011, the day on which the foreclosure was due to be held under the terms of said notice, between the legal hours of sale, said foreclosure was duly conducted, and Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. did offer for sale and sell at public outcry in front of the Courthouse door in Wedowee, Randolph County, Alabama, the property hereinafter described; and

WHEREAS, Aaron Warner was the auctioneer who conducted said foreclosure sale and was the person conducting the sale for the said Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.; and

WHEREAS, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. was the highest bidder and best bidder in the amount of Forty-Three Thousand Two Hundred Seventy-Seven And 00/100 Dollars ($43,277.00) on the indebtedness secured by said mortgage, the said Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., by and through Aaron Warner as auctioneer conducting said sale for said Mortgagee, does hereby grant, bargain, sell and convey unto Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. all of its right, title, and interest in and to the following described property situated in Randolph County, Alabama, to-wit:

> Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of 400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 63 feet to the point of beginning.

TO HAVE AND TO HOLD the above described property unto Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. its successors/heirs and

  

Minnifield 0008

assigns, forever; subject, however, to the statutory rights of redemption from said foreclosure sale on the part of those entitled to redeem as provided by the laws in the State of Alabama; and also subject to all recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes, assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

IN WITNESS WHEREOF, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., has caused this instrument to be executed by and through Aaron Warner, as auctioneer conducting said sale for said Mortgagee, and said Aaron Warner, as said auctioneer, has hereto set his/her hand and seal on this _____ 7ᵔ _____ day of _____ October _____, 2011.

Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.

By: Aaron Warner, Auctioneer
Its: Auctioneer

By: _____
Aaron Warner, Auctioneer

STATE OF ALABAMA )

JEFFERSON COUNTY )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Aaron Warner, acting in its capacity as auctioneer for Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he, as such auctioneer and with full authority, executed the same voluntarily on the day the same bears date for and as the act of said Mortgagee acting in its capacity as auctioneer for said Mortgagee.

Given under my hand and official seal on this _____ day of _____, 2011

_____
Notary Public
My Commission Expires: _____

This instrument prepared by:
Ginny Rutledge
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama 35255-5727

MY COMMISSION EXPIRES SEPTEMBER 27, 2014

   

DOCUMENT 47

assigns, forever; subject, however, to the statutory rights of redemption from said foreclosure sale on the part of those entitled to redeem as provided by the laws in the State of Alabama; and also subject to all recorded mortgages, encumbrances, recorded or unrecorded easements, liens, taxes, assessments, rights-of-way, and other matters of record in the aforesaid Probate Office.

IN WITNESS WHEREOF, Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., has caused this instrument to be executed by and through Aaron Warner, as auctioneer conducting said sale for said Mortgagee, and said Aaron Warner, as said auctioneer, has hereto set his/her hand and seal on this _____20_____ day of _____October_____, 2011.

<div style="margin-left:40%">

Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.

By: Aaron Warner, Auctioneer
Its: Auctioneer

By: _____
     Aaron Warner, Auctioneer

</div>

STATE OF ALABAMA     )

JEFFERSON COUNTY     )

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Aaron Warner, acting in its capacity as auctioneer for Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A., is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this date, that being informed of the contents of the conveyance, he, as such auctioneer and with full authority, executed the same voluntarily on the day the same bears date for and as the act of said Mortgagee acting in its capacity as auctioneer for said Mortgagee.

Given under my hand and official seal on this _____20_____ day of _____October_____, 2011

Notary Public
My Commission Expires: _____

MY COMMISSION EXPIRES SEPTEMBER 27, 2014

This instrument prepared by:
Ginny Rutledge
SIROTE & PERMUTT, P.C.
P. O. Box 55727
Birmingham, Alabama 35255-5727

  

DOCUMENT 47

DEED    355    711
Recorded In Above Book and Page
11/17/2011 09:58:12 AM
George Diamond
Probate Judge
Randolph County, Alabama

Recording Fee        18.00
TOTAL                18.00

**STATE OF ALABAMA** )

**RANDOLPH COUNTY** )

Grantor:    **Warren Minnifield and wife, Emma L. Minnifield and Jeanetta Minnifield Stevens**

Grantee:    **Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.**

## SCRIVENER'S AFFIDAVIT

I, Ginny C. Rutledge, being duly sworn, depose and state the following:

1.  I am the attorney who prepared that certain Foreclosure Deed dated October 20 2011, and recorded in Book 355, Page 516, in the Office of the Judge of Probate of Randolph County, Alabama, which evidences the transfer from WARREN MINNIFIELD AND WIFE, EMMA L. MINNIFIELD AND JEANETTA MINNIFIELD STEVENS (Grantors) to WELLS FARGO BANK, N.A. SUCCESSOR BY MERGER TO WACHOVIA BANK, N.A. F/K/A SOUTHTRUST BANK, N.A. (Grantee) of the following described real estate situated in Randolph County, Alabama, to-wit:

    Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30 minutes E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the Southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01 minutes W along the Southerly side of South Street a distance of 455.6 feet to point of on the Easterly right of way line of Old Highway 431; thence S 11 degrees 33 minutes W along said right of way line a distance of 400 feet to a point; thence N 87 degrees 30 minutes E a distance of
    *should be 68*    400 feet to a point; thence N 2 degrees 30 minutes W a distance of 16.5 feet to a point; thence N 87 degrees 30 minutes E a distance of 360 feet to the section line between Sections 1 and 2; thence North a distance of 63 feet to the point of beginning.

2.  Said Foreclosure Deed contains a typographical error in that the mortgage recording information was incorrectly identified as "Mortgage Book 367, Page 67" in lieu of "Mortgage Book 367, Page 07" which is the correct recording information.

3.  The purpose of this Affidavit is to correct the mortgage recording information to read as follows, to wit: **"Mortgage Book 367, Page 07."**

DOCUMENT 47

Minnifield 0122

Executed this 15th day of November, 2011.

_____
Ginny C. Rutledge

**STATE OF ALABAMA**    )

**JEFFERSON COUNTY**    )

## NOTARY ACKNOWLEDGMENT

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Ginny C. Rutledge, whose name as Attorney at Law, is signed to the foregoing Affidavit, and who is known to me, acknowledged before me on this date, that being informed of the contents of the affidavit, she, as such Attorney at Law and with full authority, executed the same voluntarily on the day the same bears date.

Given under my hand and seal this 15th day of November, 2011.

_____
Notary Public

My Commission Expires:  **My Commission Expires on January 17, 2012**

This Instrument Prepared By:
Ginny C. Rutledge, Esq.
Sirote & Permutt, P.C.
2311 Highland Avenue South
Birmingham, AL 35205

Sirote File No. 189575

DOCSBHM\1801782\2\

2

DOCUMENT 47

# EXHIBIT L

DOCUMENT 47



S I R O T E
——— & ———
P E R M U T T
A PROFESSIONAL CORPORATION

October 20, 2011

**VIA CERTIFIED MAIL 7010 2780 0002 0855 1075 / 1082
RETURN RECEIPT REQUESTED
AND U.S. MAIL**

Estate of Warren Minnifield
Emma L. Minnifield
Jeanetta Minnifield Stevens
319 Lafayette Hwy
Roanoke, AL 36274

619 Lafayette Hwy
Roanoke, AL 36274

DOCUMENT 47

## DEMAND FOR POSSESSION

    YOU ARE HEREBY NOTIFIED that, on October 19, 2011, the mortgage loan, secured by real estate located at 619 Lafayette Hwy, Roanoke, AL 36274, was duly foreclosed in accordance with the Power of Sale contained therein. Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. is now the owner of the property. Your attention is respectfully directed to Section 6-5-251, Code of Alabama (1975), which reads as follows:

Delivery of Possession to Purchaser on Demand.

    (a)    The possession of the land must be delivered to the purchaser or purchaser's transferees by the debtor or mortgagor, if in their possession or in the possession of anyone holding under them by privity of title, within ten (10) days after written demand for the possession has been made by, or on behalf of, the purchaser or purchaser's transferees.

    (b)    If the land is in the possession of a tenant, written notice must be given to the debtor or mortgagor, and the debtor or mortgagor must direct the tenant to deliver possession or recognize the purchaser as his or her landlord in the event the lease antedates the mortgage, judgment or levy. If the debtor or mortgagor cannot be found, notice to the tenant is sufficient and he must deliver possession within ten (10) days.

    (c)    Failure of the debtor or mortgagor or anyone holding possession under him or her to comply with the provisions of this section forfeits the right of redemption of the debtor or one holding possession under the debtor.

    In accordance with, and pursuant to, the statute set forth above, written demand is hereby made upon you to deliver possession of the above-described property to Wells Fargo Bank, N.A. successor by

*LAW OFFICES AND MEDIATION CENTERS*
2311 HIGHLAND AVENUE SOUTH   BIRMINGHAM, ALABAMA 35205
POST OFFICE BOX 55727   BIRMINGHAM, ALABAMA 35255-5727
URL  |  *http://www.sirote.com*

 

Minnifield 0153

merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A. within ten (10) days. Unless possession is delivered within ten (10) days as set forth herein, the debtor(s)' right of redemption will be forfeited.

This communication is from a debt collector. If you have any questions in regard to this matter, please feel free to contact our office at (205) 930-5200.

DATED THIS 20TH DAY OF OCTOBER, 2011.

FOR:        Wells Fargo Bank, N.A. successor by merger to Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.

BY:

Wallace Inman
Foreclosure Specialist

wi/wi

cc:    America's Servicing Company/Loan #0999440498

DOCUMENT 47

Minnifield 0154

# IN THE CIRCUIT COURT OF RANDOLPH COUNTY, ALABAMA

WELLS FARGO BANK, N.A.     )
SUCCESSOR BY MERGER TO    )
WACHOVIA BANK, N.A F/K/A     )
SOUTHTRUST BANK, N.A.,      )
                               )
*PLAINTIFF,*              )
                               )
Vs.                       )    CASE NO. CV-2012-900047
                               )
JEANETTA SPRINGER, ET.AL.   )
JACOB C. SPRINGER, PRO SE   )
                               )
*DEFENDANTS*          )
                               )

**Filed in Office**

MAY 23 2014

CHRIS MAY
Clerk of Circuit Court

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT FOR DEFENDANT(S)

DEFENDANTS Jeanetta Springer, Pro Se and Jacob C. Springer, Pro Se, acting

on our own behalves, in accordance with Rule 15 (d) of the Alabama Rules of Civil

Procedure, herewith submit the attached supplement to DEFENDANT'S

MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY

JUDGMENT AND DEFENDANTS' CROSS-MOTION AND MEMORANDUM IN

SUPPORT OF SUMMARY JUDGMENT FOR DEFENDANT(S) submitted to this court

on April 17, 2014 (hereafter "CROSS-MOTION"). DEFENDANTS reaffirm and re-

allege all defenses and allegations set forth in their original CROSS MOTION and

supplement the aforementioned as follows:

# TABLE OF CONTENTS

*PAGE*

TABLE OF AUTHORITIES ........................................................ 3

STATUTES, RULES AND REGULATIONS ................................ 4

TABLE OF EXHIBITS .............................................................. 5

PRELIMINARY STATEMENT................................................... 7

SUPPLEMENT TO "STATEMENT OF FACTS"
RE: CROSS MOTION PAGE 30 ............................................... 9

ANALYSIS OF PAYMENT HISTORY ...................................... 9

    Introduction ........................................................................ 9

    Analysis by year of all payments from 2002 – 2011 .............. 11

    Summary Of UN-applied or MIS-applied Payments .............. 20

    Defendant's Thoughts Concerning Their Payment History....... 22

OTHER ISSUES RESPECTIVE OF ACCOUNT BEING TREATED AS
"DECEASED PROPERTY" ....................................................... 24

"BID RIGGING" AND "PRICE FIXING" ................................. 25

THE BRADLEY PROPERTY ................................................... 29

OTHER EFFORTS TO COME TO TERMS WITH A
LOOMING $69,000.00 BALLOON PAYMENT ........................... 31

ADDITIONAL EVIDENCE OF EFFORTS TO DISCUSS, MODIFY
AND OTHERWISE MANAGE THE LOAN................................... 32

PLAINTIFF VIOLATED IT'S OWN POLICY WITH RESPECT TO
ACCELERATION AND DEFAULT ............................................ 36

CONTINUED INFLICTION OF EMOTOINAL DISTRESS ............. 37

MITIGATING CIRCUMSTANCES ............................................ 39

ASIDES .................................................................................. 43

FINAL THOUGHTS ................................................................ 44

CONCLUSION ....................................................................... 46

CERTIFICATE OF SERVICE ................................................... 48

## **TABLE OF AUTHORITIES**

### *Cases*

*United States of America v Wells Fargo Bank, NA (2012) US District Ct for the
District Of Columbia*                                                                                    ***Page(s)***
*http://www.justice.gov/iso/opa/resources/9512012712113719995136.pdf*

### *References*

**Baron and Budd Files Lawsuit Against Wells Fargo and Chase Over
Excessive Mortgage Default Fees**
*http://www.bloomberg.com/apps/news?pid=newsarchive&sid=abTVvrJX96ZU*

*Federal Housing Finance Agency Office Of the Inspector General
An Overview Of The Home Foreclosure Process*

## STATUTES, RULES AND REGULATIONS

*Page(s)*

### FEDERAL STATUTES

*The Home Affordable Modification Program (HAMP)*    34
*The Home Affordable Refinance Program (HARP)*
*18 U.S. Code Chapter 96 – RACKETEER INFLUENCED AND CORRUPT*
*ORGANIZATIONS*
*12 U.S.C. §2505(e)(2) – Servicing of mortgage loans and administration of*
*escrow accounts*
*The Equal Credit Opportunity Act "Regulation B"*
*The Sherman Antitrust Act 15 U.S.C. §§ 1–7*

### STATE STATUTES

*Alabama Rules of Civil Procedure, Rule 15(d)* – Amended and supplemental
pleadings
*Code of Alabama 1975* <u>*Section 5-19-16*</u>  *Refusal by court to enforce unconscionable*
*agreement.*
*Code of Alabama 175* <u>*Section 6-9-146*</u>
*Code of Alabama 1975* <u>*Section 6-9-147*</u>  *- Setting aside of sales by courts.*

# TABLE OF EXHIBITS

| Exhibit # | LIST OF EXHIBIT(S) CONTINUED |
|---|---|
| | Defendants' hand-generated summary of payments from 2002, through 2011 prepared in Tabular Format (Pages 1-12) |
| **P** | P-1 Summary of Account Activity for year 2002 |
| | P-2 Summary of Account Activity for year 2003 |
| | P-3 Summary of Account Activity for year 2004 |
| | P-4 Summary of Account Activity for year 2005 |
| | P-5 Summary of Account Activity for year 2006 |
| | P-6 Summary of Account Activity for year 2007 |
| | P-7 Summary of Account Activity for year 2008 |
| | P-8 Summary of Account Activity for year 2009 |
| | P-9 Summary of Account Activity for year 2010 |
| | P-10 Narrative Summary of Information presented on P-9 |
| | P-11 Summary of Account Activity for year 2011 |
| | P-12 Summary of Information From Above Tables for years 2002-2011 |
| **Q** | Source #1 of Information summarized in Exhibit P Wells-Fargo Payment Records (Pages 1-14) |
| **R** | R-1 Source #2 of Information provided in Exhibit P Defendants Teller Receipts from Wells Fargo Roanoke Branch (Pages 1-19) Proof of Payments that occurred in 2010 |
| | R-2 Source #3 of Information provided in Exhibit P Defendants Teller Receipts from Wells Fargo Roanoke Branch (Pages 1-5) Proof of Payments that occurred in 2011 |
| **S** | Source #4 Of Information provided in Exhibit P Defendant's Teller Receipts for Larger Payments made via the Roanoke Branch (Pages 1-4) |
| **T** | Letter from Oliver Kitchens (Pages 1-7) |
| **U** | Photograph of the Home Jeanetta moved out of to take on family home |
| **V** | Photograph of Christian Memorial Baptist Church Property |
| **W** | Jeanetta and Jacob Springer's BBT Loan Application |
| **X** | 2010-10-23 Letter to Ginny Rutledge from Mrs. Jeanetta Springer (4 pages) |
| **Y** | 2011-9-21 Letter from Sirote Postponing Foreclosure (consisting of 1 page) |
| **Z** | 2012-1-17_Ginny Rutledge Scrivner's Affidavit |
| **1** | 2005-5-26 Satisfaction and Release of Mortgage (Bradley House) |
| **2** | 2010-5-17 Fax Cover Sheet requesting Loan Modification (Sent from Local Branch) |
| **3** | Other fax cover sheets, again documenting transmissions from local branch of PLAINTIFF'S BANK to various departments trying to take care of mortgage |
| | 3-A 2010-5-17 Documenting Visit # 1013700204 and documenting Fax to "Laura" requesting a loan modification |
| | 3-B Undated fax cover sheet documenting a fax to "Heather Johnson" in the Deceased Department of PLAINTIFF'S BANK |
| | 3-C 2009-12-1 Documenting 6 pages faxed from PLAINTIFF to Rhonda Walker |
| | 3-D 2011-10-22 Documenting a FX transmission from the local branch |
| | 3-E 2011-11-19 Documenting a FX transmission from the local branch |

| | |
|---|---|
| 3-F | 2009-12-01 Documenting a FX transmission from local branch Minnifield death certificate |
| 3-G | DUPLICATE OF Exhibit 3-A and Exhibit #2 |
| 4 | Wells Fargo Bank web page explaining their foreclosure process  (1 page) |
| 5 | 2011-10-18 HAMP Certification  (1 page) |
| 6 | Filings against the Minnifield Estate  (consists of 10 Pages) |
| 7 | 2012-7-12 U.S. Department Of Justice Press Release |
| 8 | 2012-9-21 U.S. Department Of Justice Consent Order |
| 9 | 2012-9-20 U.S. Department Of Justice Memorandum Opinion and Order |
| 10 | Summary of Payment Activity on Bradley House Account |
| 11 | 2010-5-20 Letter from Wells Fargo acknowledging check by phone payment in the amount of $695.00. |
| 12 | Proof of Un-applied and/or Mis-applied Payments (Pages 1-8) |
| | Defendants' hand-generated summary of payments on "The Bradley House" from 2002, through 2011 prepared in Tabular Format (Pages 1-11) |
| | 13-1    Summary of Payments for year 2002 |
| | 13-2    Summary of Payments for year 2003 |
| | 13-3    Summary of Payments for year 2004 |
| | 13-4    Summary of Payments for year 2005 |
| 13 | 13-5    Summary of Payments for year 2006 |
| | 13-6    Summary of Payments for year 2007 |
| | 13-7    Summary of Payments for year 2008 |
| | 13-8    Summary of Payments for year 2009 |
| | 13-9    Summary of Payments for year 2010 |
| | 13-10   Summary of Payments for year 2011 |
| | 13-11   Summary of Information From Above Tables for years 2002-2011 |
| 14 | 2014/5/14 Email from Jacob A. Kaiser (leave house in broom-swept condition) |
| 15 | Compilation of All raw data used to complete Exhibit 13 (Consisting of 28 Pages) Includes cancelled checks, teller eceipts, and memos evidencing payments made on the Bradley Property. |

# PRELIMINARY STATEMENT

This supplemental pleading is submitted for the following reasons:

(1) DEFENDANTS had only days prior to submitting their original Memorandum on April 17, 2014, retrieved their documents from their former attorney, and had not had any opportunity to fully review the files.

(2) Having had the opportunity to review the additional files from the attorney, DEFENDANTS believe they have at their disposal additional documents that the court should see, that further support issues raised in the Original Cross Motion with respect to the background information provided and defenses raised, including their loan payment history, and other information which will be presented and outlined in this supplement.

DEFENDANTS' have laid out The Table of Exhibits found on Page 6 of this Supplement, as a continuation of the table which appears in DEFENDANTS' original Cross Motion and Memorandum submitted April 17, 2014. Therefore, the exhibits O – Z consist of additional evidence that was not submitted in the earlier presentation.

In some cases, bits and pieces of these added items of evidence have served to trigger or elicit memories of additional details that may not have been as well developed in the earlier brief because DEFENDANTS did not have the actual documentation in front of them. Moreover, the addition of the actual payment records has enabled DEFENDANTS to prepare a more detailed presentation and discussion of DEFENDANTS' payment history, which DEFENDANTS view as a key piece of information that is material to DEFENDANTS' defense claims raised in their Cross Motion.

**Done this 23rd Day of May, 2014**

Respectfully Submitted,

*[signature]*

T. Jeanetta Minnifield Stevens Springer, PRO SE

334.863.2667

*[signature]*

Jacob C. Springer, PRO SE

334.863.2667

# SUPPLEMENT TO "STATEMENT OF FACTS"

# (CROSS MOTION Page 14 - 29)

## ANALYSIS OF PAYMENT HISTORY

### Introduction

What will follow in this part of the supplement is an analysis of the

DEFENDANT'S payment history with respect to the mortgage obligation underlying the

subject property.   In DEFENDANT'S CROSS-MOTION Submitted April 17, 2014,

DEFENDANTS made numerous references to the payment history, without having

access to the complete payment records – neither THEIR OWN nor PLAINTIFF'S

records.   Howbeit, on a visceral level, DEFENDANTS were very well aware of what

*they* had done and how *they* had performed with respect to payments made on this

obligation.   Now having these records enhances DEFENDANTS' ability to speak more

accurately, with more detail, and more credibly about the payment history.  On Page 23

(2nd Paragraph) of DEFENDANT'S CROSS MOTION, DEFENDANTS state the

following:

> "Despite her continuing bewilderment about the mortgage note,
> particularly the one on the subject property, she continued to make the
> monthly payment in the amount of $695.00. DEFENDANT Jeanetta
> Springer does not deny that there may have been periods when the
> payments were late, or multiple payments became due, but she declares
> with certainty that EACH AND EVERY TIME she managed to pay the
> amount demanded to bring her account current."

At this time, DEFENDANTS offer more specific and substantive evidence

to support this Statement:

Having had the opportunity to review the material retrieved from Attorney Robert Kirby, DEFENDANTS have hand-generated their own record of the account and payment history, presented chronologically in tabular format **(DEFENDANTS' EXHIBIT P)**. This exhibit consists of 12 pages. Each page (Except 9 and 10) represents a year of payments on the account with respect to the subject property, beginning with the year 2002, when DEFENDANTS JEANETTA SPRINGER assumed primary responsibility for the loan payments. The Information in this exhibit is generated on the basis of *a combination of* PLAINTIFF'S PAYMENT RECORD [**(DEFENDANTS' EXHIBIT Q)** which is in many instances illegible, as we indicated in DEFENDANTS CROSS-MOTION (Page 43) where the unreadable/illegible condition of the mortgage agreement (and payment records) that PLAINTIFF has offered to the court as evidence] and as DEFENDANTS will elaborate on in this part of our supplement) and which does not allow one to get a clear picture of what is actually happening with the account AND evidence generated by the SPRINGERS [**(DEFENDANTS' EXHIBITS R & S)** check-book registers, teller receipts, bank statements which show cleared checks, and any other information that evidences payments etc.)] At the end of each table, is a brief narrative summary of the information presented therein. This information is also summarized in the section that follows.

We believe that our table (1) is simpler and easier to read and interpret and (2) enables one (PARTICULARY OURSELVES) to get a better view of what is happening with this account in clear chronological progression, as well as providing details about how each entry is documented.

DEFENDANTS own accounting of their payment history will show that of all the years this obligation was paid on, there was only one (1) year when fewer than the required number of payments were made, and that year was 2005. And those payments were caught up in subsequent years. DEFENDANTS believe the court will agree with us, that after a thorough review of the payment history, and a review of payments that were either UNapplied or MISapplied, the obligation was not in arrears, as PLAINTIFF has claimed.

## 2002 (DEFENDANTS' EXHIBIT P- Page 1)

A careful examination of the loan payment history allows the story to practically tell itself. Early in 2002, the January and February payments were both timely paid, with March's payment being a few (3) days late. April's payment did not occur. We see an ailing (actually dying—at this point in time, within 4 months of his death) Dr. Warren Minnifield, probably on his death bed, probably too sick to attend to his financial affairs. So, he misses April's payment, but on May 1, makes the full payment, with a partial payment of $495.00 plus a partial payment of $200.00 (both made on the same day) for a total of $695.00 in May and incurs late fees in June, but manages to pay June before the end of month. By this time, he actually has less than one (1) month to live. He passes away July 28, 2002. So, by the time Dr. Minnifield passed away, the account appears to have been no more than one (1) month in arrears. After his death, regular payments are tendered in every month, and a late fee accrued each month (DEFENDANTS assume for the missing April payment). At this point in time, DEFENDANT is missing one (1) payment and that is the APRIL payment. But, then on November 20th, DEFENDANT SPRINGER pays $2,318.25, *an amount she couldn't have pulled out of her head.* Her

payment made November 20th amounted to three monthly payments in the amount of $695.00 *plus* an additional $233.25, which DEFENDANTS contend should have brought the account completely current. But, then, 9 days after that $2,318.15 payment is tendered, *PLAINTIFF debits the account $135.00* — **an unexplained fee**. The question is, "Why?" This amounts to the same kind of abusive Mortgage Default fees and charges that resulted in a February 10, 2012 lawsuit against PLAINTIF in the State of California *(Bias v Wells Fargo and J.P. Morgan Chase Bank, NA)*

The above-referenced litigation was reported in Bloomberg News, one of the most reputable business news outlets in the media market. This litigation was reportedly filed in February of 2012. Bloomberg reported that according to the suit: "Our investigation has revealed that as a result of these practices, banks often make more money from loans that are in default than loans that are current," said attorney Mark Pifko. "Loan agreements require that default-related services must be reasonable and appropriate. Banks are not allowed to mark-up the charges so they can make a profit, but that is exactly what they have done. In many cases, the banks are overcharging by as much as 300 percent."

It appears that this unexplained fee is what put DEFENDANT's account back into arrears, and triggered another late fee, assessed on December 20, 2002. At any rate, by the end of the year 2002, she had paid a total of $9,035.00 — 13 monthly payments — in terms of real money, she exceeded the amount of money that would have been due Plaintiff during the year, plus 198.50 in late fees. The year 2002 ended with DEFENDANT BEING COMPLETELY CURRENT on the account. Finally by

DEENDANT Jeanetta Springer's accounting, the payment that would have been due for January 2003, was made In December of 2002.

## 2003   (DEFENDANTS' EXHIBIT P- Page 2)

The payment history for 2003, clearly shows 11 timely payments made in the year 2003.   A total of $7,814.00 in monthly payments were tendered.    By the end of 2003, this account was current; no late fees or charges appear anywhere on the (Wells Fargo) payment report.  DEFENDANT also does not have an explanation as to why it was necessary for her to pay $ 864.00 in December of 2003.  Therefore, this huge $864.00 payment had to include some unwarranted fees or charges.   The next time late fees are assessed to this account occur in May of the following year.

## 2004   (DEFENDANTS' EXHIBIT P- Page 3)

DEFENDANTS' TABLE FOR 2004 reflects a total amount tendered in that year of $8,340.00 which translates into twelve (12) monthly payments in the amount of $695.00.  In May of that year, 2004, there was one (1) NSF return in the amount of $695.00.  However, the payment record clearly indicates that somewhere along the line, DEFENDANT Springer made up for that payment because, there are still 12 payments (not including the one (1) NSF returned payment).   The record shows that EVERY SINGLE MONTH after the May NSF return, DEFENDANTS incurred a $28.00 late fee. Eight (8) late fees were assessed in the amount of 224.00 despite the fact that ten (10) of the twelve (12) payments due were timely submitted payments.

## 2005   (DEFENDANTS' EXHIBIT P- Page 4)

THE DEFENDANT'S table reflects that in 2005, eleven (11) payments in the amount of $695.00 were tendered to PLAINTIFF. Late fees were accessed totaling 125.50.   The DEFENDANT'S table does reflect that in July of 2005, the payment was returned due to insufficient funds.   However, all payments were made for that year, IN THAT YEAR.   It is also noted here that in May of 2005, DEFENDANT made two (2) payments.   It is not even understand why it would have been necessary for DEFENDANT to tender two payments at this point, because by her accounting she should have been one (1) month ahead on the obligation.   And even if she missed the July payment due to NSF, she still should have been current on the account. DEFENDANT incurred late fees in the amount of $112.50.   And by the end of 2005, — if in arrears at all — it was only one (1) month.

## **2006   (DEFENDANTS' EXHIBIT P- Page 5)**

After a careful review of the records for the year 2006 DEFENDANTS HAVE CONCLUDED THAT there were 13 payments made in the year 2006: totaling $9,035.00… There were a total of 5 late charges assessed to this account in that year, totaling $173.75 which do not appear to be warranted.  While we note that there was a $695.00 payment tendered on March 16, 2006, and returned for non-sufficient funds on the same date, DEFENDANTS believe that the evidence shows that whatever arrearage occurred as a result of the NSF return, was made up in August and September of that year.  DEFENDANT Springer offers a teller receipt dated August 1, 2006, for two $695.00 payments totaling $1,390.00 **(DEFENDANTS' EXHIBIT S- Page 1)**. Additionally, DEFENDANT Springer offers her bank statement for that month

**(DEFENDANTS' EXHIBIT S- Page 2)**, showing Draft # 379 dated August 2, in the amount of $1,390.00, which would comprise two (2) additional payments. This payment does not show up anywhere on any of PLAINTIFF'S payment records that we can see.

Then, on September 12, another payment which is documented with a teller receipt in the amount of $1,400.00.

After September, there were four additional monthly payments made in the amount of $695.00. By the end of this year 2006, DEFENDANT had remitted a total of $9,035.00 plus 173.75 in late charges, for a total of $ 9,208.75

By all accounts, and at all times material, DEFENDANT JEANETTA SPRINGER believed that she was paying a month in advance on this obligation.

## 2007 (DEFENDANTS' EXHIBIT P- Page 6)

DEFENDANT made a total of thirteen (13) payments in this year totaling $9,035.00.

**Late Charges Assessed to this account:** 2/5/2007: $ 296.00; 10/20/2007: $34.75; 10/31/2007: $34.75; 11/20/2007 $34.75 FOR A TOTAL OF $ 400.25 in late charges. From all appearances, the year ended with the account ahead. PLAINTIFF'S Payment record reflects no payment made in September of 2007, however, DEFENDANT'S September bank Statement shows the $695.00 payment cleared from her bank account on September 3, 2007 **DEFENDANTS' EXHIBIT 12 Page 4** . There is evidence of two (2) payments in this year that somehow did not get credited to DEFENDANT'S account. This year (2007) DEFENDANTS ended this year completely current if not one possibly two (2) months in advance considering the fact that there is a

700.00 withdrawal shown on her bank statement, but no receipt that proves the August 13, payment. By the end of the year 2007, DEFENDANT had paid PLAINTIFF $9,435.25.

## 2008  (DEFENDANTS' EXHIBIT P- Page 7)

This entire year, DEFENDANT tendered twelve (12) timely payments in this year. Thus, there should not have been any late fees assessed since the year began with DEFENDANT being paid ahead. In spite of twelve timely payments, there was $312.75 charged in late fees during this year and adding insult to injury, the balance never decreased from $81,384.00 at the beginning of the year to $81,384.00 at the end of year. The last two months are missing. (This is based on W-F) Payment History. The 12 payments in the amount of $695.00 plus the $312.75 in unwarranted late fees, totals $8,652.75 in total payments to PLAINTIFF.

## 2009  (DEFENDANTS' EXHIBIT P- Page 8)

In the year 2009, DEFENDANTS made 14 monthly payments during this year in the amount of $695.00. There were two months, June and November during which multiple payments ($2,050.00 and $1,390.00 respectively) were tendered to PLAINTIFF. In addition to these 14 monthly payments, DEFENDANTS incurred $347.50 in late fee assessments in that year. DEFENDANTS' total cash outlay for this mortgage obligation in 2009 was $9,695.00. And when you include the late fees, it was $10,042.50!

## 2010  (DEFENDANTS' EXHIBIT P- Page 9)

In the year 2010, DEFENDANT made 12 timely payments, therefore, by all accounts, appears to be 0 months in arrears in that year. The (thought-to-be) arrearage

which was explained in DEFENDANT'S CROSS MOTION (Page 24, beginning at the 2nd Paragraph) how PLAINTIFF actually misled DEFENDANTS to default on their January 2010 payment. DEFENDANT JEANETTA SPRINGER has documented her conversation with one Heather Johnson: (Foreclosure Department) 1.866.623.8958 extension 49182, the person who told her to pay the $555.00 property tax, plus pay February's payment, and she would put the January 2010, payment on the end of the loan. This conversation is actually documented in the form of a handwritten note that appears on her bank statement. Although the note is almost faded, it is nevertheless there: "Heather called on January 5. Save the payment..." The $555.00 property tax payment is documented by DEFENDANT'S check-book register receipt in

**(DEFENDANTS' EXHIBIT R- Page 1)**. The February 2010 payment is

documented in **(DEFENDANTS' EXHIBIT R- Page 2)**. DEFENDANT

Springer asserts that Heather Johnson was the ONLY one of the Wells Fargo representatives who tried to help her. And it is ironic, that after the Springer's encounter with Ms. Johnson early 2010, she was never heard from again, and in subsequent telephone calls to PLAINTIFF requesting to speak with Ms. Johnson, DEFENDANTS were told that Heather Johnson was no longer available.

However, after closely examining DEFENDANT'S payment records, even without the January 2010 payment, DEFENDANT'S still remitted 12 timely payments during the year 2010.

It was also in May of this year, specifically May 17, 2010... Visit # 1013700204: 13 pages of Material DEFENDANT SPRINGER sent via fax to (1.866.222.5116) from the local branch SouthTrust Bank, AND Wachovia Bank, to

*Jacob C. & T. Jeanetta Minnifield Stevens Springer, Pro Se | 619 LaFayette Highway, Roanoke, AL 36274 | 334.863.2667*

LAURA in an effort to satisfy the obligation demanded by this transaction.

Finally, a careful review of payments made in this year, show the sporadic return of two payments, and the misapplication of several payments, but particularly the September payment tendered during this year, was applied to a totally foreign account and therefore was not properly credited to the subject account. So, DEFENDANTS WANT TO KNOW WHY WERE THESE PAYMENTS RETURNED.

### **2011  (DEFENDANTS' EXHIBIT P- Page 10)**

DEFENDANT made five (5) timely payments in 2011.   This was a total three thousand, four hundred seventy-five ($3,475.00) dollars.   It appears that PLAINTIFF refunded or reimbursed DEFENDANT for three (3) of these payments.  (PLEASE SEE **DEFENDANT'S EXHIBIT R-2 (Page 2-5)**.   However, PLAINTIFF retained these funds for the majority of the month.  DEFENDANT'S $695.00 payment tendered in January, was retained for 22 days. Subsequently, DEFENDANT tendered additional payments in February, March April, AND May.   However, no additional reimbursements were made until May 2, 2011, and May 31, 2011.   What this means is that PLAINTIFF retained and earned money on DEFENDANT'S money for 91 days while bound and determined to put DEFENDANTS out on the streets.

It is noted here that on April 4, 2011, DEFENDANTS received a $200.00 payment (in the form of a cashier's check) from PLAINTIFF, that we have never understood nor did PLAINTIFF ever explain to us.   The check marked **(DEFENDANTS' EXHIBIT R - Page 17)**, bears a reference number 98068005322660001, which does not appear to be related to any of DEFENDANTS' accounts including the subject transaction with respect to 619 LaFayette Highway,

Roanoke, Alabama, therefore, DEFENDANTS do not consider this payment to be related to the subject account, and demand to have PLAINTIFF explain what this payment represents.

Therefore, to summarize the payment activity that occurred during 2011, reimbursement was only made for three of the 4 payments tendered in 2011.

## Summary of Payment Records  (DEFENDANTS' EXHIBIT P-Page 11)

This part of the exhibit merely serves to summarize all records generated in this exhibit for all years represented herein, on one page; and other than serving as a summary, does not present any information that has not already been discussed above. However, it is of interest to note that DEFENDANTS have paid a total of $120,700.00 on the obligation. Which is far above ($30,700.00) above the principle amount of the loan, which DEFENDANTS have paid out in interest and un-deserved late charges on this account.

# DISCUSSION ON UN-APPLIED OR MIS-APPLIED PAYMENTS TO DEFENDANTS' ACCOUNT

DEFENDANTS have assembled an EXHIBIT entitled **DEFENDANTS'**

**EXHIBIT 12** which consists the proof of all UN-applied, or Mis-applied payments with

respect to their account, and summarize that information herein.

| LIST OF UNAPPLIED OR MIS-APPLIED PAYMENTS | | |
|---|---|---|
| **PAYMENT DATE** | **PAYMENT AMOUNT** | **HOW DOCUMENTED** |
| 3/16/2006 OR 8/13/2007 | $695.00 | Traveler's Express Money Order #54975062164 |
| 9/3/2007 | $ 695.00 | Defendant's Bank Record |
| 2/3/2010 | $ 695.00 | Teller Receipt/Check #1747 |
| 5/20/2010 | $ 695.00 | Check by Phone Payment acknowledge by Letter from Plaintiff |
| 9/3/2010 | $ 695.00 | Documented by Teller Receipt and Check #1830 Was Credited to the Wrong Account # 68037760930001 |
| 5/10/2011 | $ 695.00 | Document via Check #442 and Defendant's Bank Record. |
| **TOTAL UNAPPLIED PAYMENTS** | | **$4,170.00** |

In addition to the above payments that do not appear anywhere in PLAINTIFF'S

record of the account, DEFENDANTS also present the following list of payments (which

can be reviewed in **DEFENDANTS EXHIBIT P-9 and P-10** which document

additional monthly payments tendered beyond May 28, 2011, where PLAINTIFF'S

payment record ends. These payments are listed as follows:

| LIST OF UNAPPLIED OR MISSING PAYMENTS BEYOND MAY 28, 2010 | | |
|---|---|---|
| PAYMENT DATE | PAYMENT AMOUNT | HOW DOCUMENTED |
| 7/7/2010 | $ 695.00 | Check #1811 |
| 8/5/2010 | $ 695.00 | Teller Receipt/Ck#1811 |
| 9/3/2010 | $ 695.00 | Teller Receipt/Ck#1830 |
| 10/4/2010 | $ 695.00 | Teller Receipt/Ck#1847 |
| 11/8/2010 | $ 695.00 | Teller Receipt/Ck#1866 |
| 12/10/2010 | $ 695.00 | Teller Receipt/Ck#151 |
| 12/14/2010 | $ 695.00 | Bank Statement Showing cleared check for 695.00 |
| 1/6/2011 | $ 695.00 | Teller Receipt/Ck#1904 |
| 2/4/2011 | $ 695.00 | Teller Receipt/Ck#1928 |
| 3/3/2011 | $ 695.00 | Teller Receipt/Ck#1940 |
| 4/4/2011 | $ 695.00 | Teller Receipt/Ck#422 |
| 5/10/2011 | $ 695.00 | Check # 442 |
| TOTAL UNAPPLIED PAYMENTS | | 8,340.00 |

There are a total of $12,510.00 in un-applied payments. Once foreclosure proceedings were initiated, PLAINTIFF only returned $3,675.00 of DEFENDANTS' payments. Therefore PLAINTIFF retained $8,835.00 in payments that were not reimbursed after they allegedly initiated foreclosure proceedings. What this means is that PLAINTIFF used $8,835.00 of DEFENDANTS money to engage in all of its various money marketing activities, while DEFENDANTS were in the active foreclosure process. What it also means is that many of the late charges assessed to DEFENDANTS' Account were unwarranted.

## DEFENDANT'S Thoughts Concerning their Payment History

With respect to DEFENDANT Jeanetta Springer's payment history, DEFENDANTS would offer the following for the record: Jeanetta Springer has acknowledged several instances of late payments on this account, as well as multiple missed payments. Nevertheless in light of the fact that DEFENDANT was **NEVER** the primary borrower, and was ***not only*** shouldering the responsibility for her own personal obligations but also the obligations of her late father, many of which were enormous, DEFENDANT Jeanetta Springer believes unequivocally that she performed ***extraordinarily*** with respect to these payments.

However, as the primary payor on the account, it is her position that every time she paid any of the late fees assessed with this account, her standing was (or should have been) restored — **PERIOD**. There are numerous times, when DEFENDANTS have documented multiple payments tendered to PLAINTIFF. (i.e. **11/20/2002, 12/2/2003, 5/18/2005, 8/1/2006, 8/2/2006, 9/12/2006, 2/5/2007, 10/31/2007, 6/24/2009**). In each one of these instances, DEFENDANT Springer had to have made contact with PLAINTIFF or PLAINTIFF'S representative(s) to ascertain the amount of money required to bring the account completely current. And once she received that information she complied by paying the amount requested. DEFENDANTS believe that in each instance wherein this occurred, the account should have been restored to current status, and therefore, it was should no longer be applicable or necessary to have to go back into the history of the account to examine. If told the payment of X-amount of dollars would bring the account up to date, then it was and is rational for DEFENDANTS

to conclude that the account was from that point forward, current. How then, could PLAINTIFF even attempt to justify coming back later, or trying to "back-track" or hold DEFENDANT Springer responsible for something that occurred in the past? DEFENDANTS BELIEVE WITHOUT A DOUBT THAT IT IS **CRYSTAL CLEAR** from an examination of the payment history, that PLAINTIFF engineered, orchestrated, and set them up for default.

To conclude this portion of DEFENDANT'S SUPPLEMENT, merely takes us back to the statement made on Page 59 of the CROSS MOTION:

"However, we feel that one of the most damning pieces of evidence resides in an email from our former Attorney (**EXHIBIT K PAGE 4**), wherein he states the following:

> "**INTERESTING POINT:** On May 6, 2011, WF's FC attorney admitted that you were only due for payments from November 2010 to April 2011 in the total amount of $4,170.00. What this means to me is that your dispute letter of October 23, 2010 was exactly correct and that their efforts to collect past due payments as of October 2010 or earlier were mistaken. Of course they don't admit this, but the documents speak for themselves."

After thoroughly reviewing the payment history that we have outlined and presented here, we can only conclude that **PLAINTIFF DID IN FACT** receive those payments — including the ones they claimed were due for November 2010 to April of 2011.

# OTHER ISSUES REGARDING ACCOUNT BEING TREATED AS DECEASED PROPERTY

In DEFENDANTS Cross Motion (in the last paragraph of page 24, 25, and top of Page 26) have raised issues as to how the subject account was treated as "Deceased Property" in total disregard of DEFENDANT Jeanetta Springer's Joint and Survivorship Deed as well as her being a party to the contract itself by virtue of having had to sign it.

With respect to the matters raised in this part of DEFENDANTS' CROSS MOTION, DEFENDANTS offer into evidence **DEFENDANTS' EXHIBIT 6**, which consists of a set of ten (10) documents related to the Administration of the Minnifield Estate. DEFENDANTS merely submit these documents to illustrate their assertion that if "Deceased Property" was such a crucial issue in connection with this loan, PLAINTIFF had every right to submit a claim against **The Estate Of Warren Minnifield** during the period allowed by law. However, they did not do so. Thus, it is DEFENDANTS' position that PLAINTIFF is barred from collecting any accrued payments that may have been past-due up to and including July 28, 2002 (the date of Dr. Warren Minnifield's death). Thus, DEFENDANTS believe they are legally relieved of responsibility for any activity that occurred prior to this date.

# CONSPIRACY, "BID RIGGING" AND "PRICE FIXING"

## (Fraud Deceit and Collusion)

In the first (1st) paragraph on Page 28 of DEFENDANTS CROSS MOTION

we have discussed the actual foreclosure of the subject property. Additionally we have

also discussed in our Cross Motion our strong belief that this foreclosure and eviction

action is characterized by layers upon layers of fraud, deceit, and collusion. Quoting

from the CROSS-MOTION:

> "Finally, on October 11, 2011, PLAINTIFF did allegedly Foreclose
> DEFENDANT's property presumably on the Randolph County
> Courthouse Steps in Wedowee, Alabama. However, DEFENDANTS
> allege that they have no proof of what took place on the Randolph County
> Courthouse Steps on October 11, 2011, because they, too, went to the
> Courthouse early in the morning that their home was allegedly auctioned,
> and saw nothing happening and no one there on the Courthouse Steps in
> Wedowee, Alabama. Thus, DEFENDANTS DEMAND proof that an
> Auction was even conducted as required by law on October 11, 2011."

In connection with the above statements, DEFENDANTS herewith offer and

present for the court's consideration **DEFENDANTS' EXHIBIT Y** which consists of a

letter dated September 21, 2011, from Wallace Inman, Foreclosure Specialist presumably

with the Law Firm of Sirote and Permutt. Said letter is addressed and directed to

Attorney Robert E. Kirby, and evidences the postponement of the foreclosure action,

from September 21, 2011 to October 19, 2011. Near the end of the text of the letter is

the following statement **"Please be aware that this letter is not being sent to your

client."** which appears in bold print.

Defendants are particularly concerned with this document, because it evidences three critical breaches that DEFENDANTS feel are material, and evidence serious violations of the fiduciary trust involved in a borrower's relationship with their lender:

(1) CONSPIRACY

(2) BID-RIGGING

(3) PRICE-FIXING

Because DEFENDANTS are not Attorneys, and proceeding PRO SE on our own behalf, DEFENDANTS have also included the verbiage "Fraud, Deceit and Collusion" which may be a more appropriate or legally correct way, to characterize the issues they have raised herein.

DEFENDANTS WILL DISCUSS EACH ONE OF THESE BELOW:

(1) **CONSPIRACY**: It is DEFENDANT'S position that the letter evidences how — during the foreclosure process — PLAINTIFF induced DEFENDANTS' attorney to cooperate with them in withholding information about the foreclosure sale from DEFENDANTS. It is DEFENDANTS position that they had a right to know when their property was going to be auctioned, and by this letter, they were enlisting our attorney's help in withholding that information.

Another factor that comes into play in (1) above is the fact that PLAINTIFF'S letter indicates a sale date of October 19, 2011. However, according to documents in PLAINTIFF'S Motion for Summary Judgment, the sale actually occurred on October 11. Therefore, this was a false/misleading representation on the part of PLAINTIFF and/or their representative. In essence, DEFENDANTS do not know exactly when the sale actually occurred. The harm that was done herein is significant for many reasons.

DEFENDANT Jeanetta Springer has other siblings — two brothers, and a sister — who were certainly in a position and may have been interested in appearing at the auction to bid on this property in an effort to save the family home. However, even if their attorney had notified them of the information contained in this letter, conducting the sale on a date other than that indicated, totally excluded DEFENDANTS of any opportunity to do so.

In essence what PLAINTIFF did, was conspired to isolate DEFENDANTS from what might have been the last opportunity they may have had to save their home from foreclosure, at the auction.

### (2) **BID-RIGGING**:

DEFENDANTS have discussed in their CROSS MOTION several issues with respect to this "bogus" auction that allegedly occurred on October 11 or 19th, whichever applies. In DEFENDANTS' Cross Motion, we have discussed on pages 30-36, our concerns about the auction however, we further allege that the manner and methods used to underhandedly seize DEFENDANTS' property amounted to a seriously egregious form of "bid-rigging" in that it was already pre-determined who would conduct the auction; it was already pre-determined who would submit the winning bid, and it was already pre-determined that PLAINTIFF would end up with the property.

### (3) **PRICE-FIXING**:

On page 31 and 32 of DEFENDANTS' Cross Motion, they discussed briefly the several potential impacts of the overstated value of their home, the last of which was as follows: (Quoting from the Cross Motion, top of page 32):

"(3) It facilitated the alleged forecloser PLAINTIFF Wells Fargo, to show up at the Auction on October 11, 2011, and allegedly win DEFENDANT'S home with a credit bid of $48,000.00, without even

LOOKING at their home, when they knew there was a strong likelihood that the property would not appraise for anywhere near that amount but they wanted to be able to fix the value at that amount."

DEFEDANTS, further assert that the manner and methods by which their property was foreclosed constituted a clear case of "Price Fixing." If, the information quoted on Page 35 of DEFENDANTS' Cross Motion *[Federal Home Finance Agency Office of Inspector General AN OVERVIEW OF THE HOME FORECLOSURE PROCESS] (page 14¶3)* is true, PLAINTIFF (if they are the actual creditor) should have bid the amount owed on the mortgage. However, knowing that the property value was not anywhere near the amount owed on the loan, their motive had to be one of fixing the value at $48,000.00. The only other way DEFENDANTS explain their bidding that amount is that PLAINTIFF (taking into account the possible securitization of the note) was bidding the "true" balance owed on the obligation taking into account the multiple back-door payments they had already received on this obligation from unseen (or hidden) investors.

## The Bradley Property

On Page 20 – 22 and Page 49-51 of DEFENDANT'S CROSS MOTION, we discussed the Bradley account. We supplement that discussion by offering two pieces of evidence.

**DEFENDANTS' EXHIBIT 12** consists of the original Satisfaction and Release of Mortgage which indicates a loan pay-off of June 4, 2002 (the month preceding Warren Minnifield's death). This document was recorded in the Randolph County Probate Court on May 26, 2005.

**DEFENDANTS' EXHIBIT 13** consists of another set of tables which set forth the payment history on the Bradley property, which are beyond the date shown on the Satisfaction and Release of Mortgage. This summary of the payment history shows a total of roughly $ 23,000.00 of payments which is more than we estimated in the Original Cross Motion made on the Bradley House.

The account is identified as follows:

Original Account Number: **Account# 54901025624162**

Final Account number: **Account# 68005322660001**

Defendants are hereby stating for the record, that there may be evidence of additional payments that DEFENDANT Jeanetta Springer made on this account, however, since this is not the main account that is the focus of this particular argument, our purpose in enumerating these payments is not so much to produce a record with pin-point accuracy, as to submit sufficient proof to give credibility to our claim that the

payments were made on this account with respect to the issues we raised on pages 20-22
and 49-51 of our Cross Motion.

# OTHER EFFORTS TO COME TO TERMS WITH A LOOMING

# $69,000.00 BALLOON PAYMENT

Also, on page 23 (Paragraphs 5 and 6), of the original CROSS MOTION

DEFENDANTS STATED:

"Another bewildering issue with respect to this loan was that there was a big "balloon payment" hovering over DEFENDANT Springer, in connection with this loan. She was so concerned about this looming "balloon payment" until [and the record will also shows that] on June 7, 2008, Jeanetta Springer and Jacob C. Springer, went to what was by this time, Wachovia Bank, in an attempt to come to terms with this mortgage. They attempted to re-finance it by applying to Wachovia Bank for a new loan that would essentially consolidate all the mortgages. (DEFENDANTS' EXHIBIT C)"

DEFENDANTS, however, offer a second exhibit (DEFENDANTS' EXHIBIT W), that shows other efforts in which they were engaged, in an effort to satisfy PLAINTIFF *in spite of all the payments they knew* they had made on this account, and in spite of being almost certain that they could not be that far behind on this obligation.

(DEFENDANTS' EXHIBIT W), is a loan application DEFENDANTS made to BB&T in July of 2011, in the amount of $136,710.72, WITH THIS FORECLOSURE ACTION LOOMING OVER THEM, which was proposed amount needed to consolidate DEFENDANT'S INDEBTEDNESS, (including the subject property). The only comment DEFENDANTS will offer with respect to this obligation, is that *"we tried every way we could to satisfy the obligation demanded by this transaction, and simply cannot understand why PLAINTIFF want's to put us out on the street when they have conducted themselves in such a surreptitious and underhanded way."*

## ADDITIONAL EVIDENCE OF EFFORTS TO DISCUSS, MODIFY

## AND OTHERWISE MANAGE THE LOAN

On Page 18 of DEFENDANT'S Cross Motion we have discussed how DEFENDANT

Jeanetta Springer began to make regular visits to the Local Branch of PLAINTIFF'S bank:

Quoting from the Cross Motion:

> "During the process of Administration of the Minnifield Estate — and
> even beyond — DEFENDANT Jeanetta Springer began making periodic
> visits to SouthTrust Bank — not so much to try to learn about the status of
> her father's various indebtednesses — but more in an effort to try to
> **understand** what had become of them. Fortunately, during most of these
> visits or during phone calls DEFENDANT Jeanetta Springer would take
> notes, some of which are appended hereto as Exhibits. There is evidence
> of other visits which were documented by the bank using a "visit
> confirmation number."

DEFENDANTS offered evidence of such visits in their Cross Motion.

Yet in further support of these facts, **DEFENDANTS' EXHIBIT 3** further substantiates

the numerous anecdotal records, notations and memos that DEFENDANT Jeanetta

Springer took as she attempted to contend with this loan.

**DEFENDANTS' EXHIBIT 3** consists of seven documents, **3-A, 3-B, 3-C, 3-D,**

**3-E, 3-F, and 3-G**.  The first **EXHIBIT (3-A)** in this set, is a fax-cover sheet which

DEFENDANT Springer faxed to a representative named "Laura" to request a loan

modification.   The cover sheet indicates that 13 pages were faxed.  These faxes which

consisted of numerous documents verifying the contract, the death of the primary

borrower, and DEFENDANT Jeanetta Springer's appointment as Executrix of Dr.

Warren Minnifield's Estate, were sent from the local branch of PLAINTIFF's bank in

Roanoke, Alabama.  DEFENDANT Springer has stated in the Cross Motion, that the

representative promised that upon receipt of the documentation, Wells Fargo would send paperwork to complete application for a Loan Modification. DEFENDANT SPRINGER went home and waited on this paperwork, however the promised paperwork never arrived.

The second **EXHIBIT (3-B)** in this set, is a fax-cover sheet which DEFENDANT Springer faxed to a representative named "Heather Johnson" in the "Deceased Department." The cover sheet indicates that 10 pages were faxed. These faxes *also* were sent from the local branch of PLAINTIFF's bank in Roanoke, Alabama. DEFENDANT does not recall precisely what documents were sent, however, she believes that it was a copy of the contract.

The third **EXHIBIT (3-C)** in this set, is a fax-cover sheet dated December 1, 2009, which evidences a facsimile sent to Ms. Rhonda Walker from Sherry Gonzalez, Extension Specialist, in Philadelphia. The cover sheet indicates that 6 pages were faxed to Rhonda Walker. This fax was *also* received at the local branch of PLAINTIFF's bank in Roanoke, Alabama. DEFENDANT does recall that this communication was for the purpose of applying for an Extension for Ms. Rhonda Walker.

The fourth and fifth **EXHIBIT (3-D and 3-E)** in this set, consist of fax-covers dated October 22nd and December 19th, 2011, which evidences two additional transmissions with respect to the subject loan.

The sixth **EXHIBIT (3-F)** in this set, is a fax-cover sheet dated December 1, 2009, which evidences a facsimile sent from Joe Johnson to Sherry Gonzalez, Extension Specialist, in Philadelphia. The cover sheet indicates that 3 pages and one of which was

a death certificate and one was an extension. This fax appears to have been sent from one of the Atlanta branches of PLAINTIFF's bank.

Specifically these documents simply represent the multiplicity of evidence of DEFENDANTS many efforts to remain in communication with PLAINTIFF and to manage the subject transaction. The document identified as **DEFENDANTS' EXHIBIT 3-A** evidences numerous handwritten notations, which give credence to her claims of bewilderment and a drive to understand and determine the true status with respect to the loan.

With respect to **DEFENDANTS' EXHIBIT 3-A** DEFENDANTS are further *alarmed* by the discovery of **DEFENDANTS' EXHIBIT 5**, which was retrieved from our former attorney, which is a *bogus* HAMP Certification, dated October 18, 2011, just one (1) day prior to the alleged foreclosure sale, wherein they FALSELY certify that they have extended a modification to Warren Minnifield (WHO THEY KNEW WAS DEAD), and that the borrower is not interested in modifying the loan. ALL FABRICATIONS!!!! ALL FABRICATIONS!! First of all, how could a dead man qualify for HAMP under any circumstances? Secondly, if DEFENDANTS failed to qualify for a HAMP Modification, What was the reason? Moreover PLAINTIFF in this *Bogus* document, have certified that all available loss mitigation efforts had been exhausted. ALL FABRICATIONS!!! DEFENDANTS were **NEVER** offered a trial modification. DEFENDANTS were NEVER told that they were ineligible for a modification as required under the HAMP program. DEFENDANTS were never extended any benefits of the HAMP program that we have evidence of at any time material to these

proceedings.    The truth is, PLAINTIFF WANTED to foreclose — PERIOD.

## PLAINTIFF VIOLATED IT'S OWN POLICY WITH RESPECT

## TO ACCELERATION AND DEFAULT

DEFENDANTS herewith submit for this honorable court's consideration

**DEFENDANT'S EXHIBIT 4** which consists of a page from PLAINTIFF'S own

website, (***https://www.wellsfargo.com/mortgage/manage-account/payment-***

***help/foreclosure***) which proportedly summarizes PLAINTIFF'S foreclosure procedure.

One of the very first statements on this webpage reads as follows:

> "Foreclosure is the legal process that allows your lender to take ownership
> of your property if you don't pay your mortgage. The process usually
> begins after you miss 4 payments (when your account is 120 days past
> due). If we can't find another solution — such as a loan modification or
> short sale — the process ends with your home being sold in a foreclosure
> sale."

DEFENDANTS point to this specific statement on PLAINTIFF'S website,

as self-evidence that in foreclosing DEFENDANTS' property, they violated their

own stated policy because, based on their payment history, DEFENDANTS

WERE NEVER 120 days in arrears during the lifetime of this mortgage loan

account.

# PLAINTIFF'S CONTINUED INTENTIONAL INFLICTION

# EMOTIONAL DISTRESS VIA THE CONDUCT OF

# THEIR ATTORNEYS

Given DEFENDANTS' payment record, which has been presented herein, DEFENDANTS' believe that they were perfectly within their rights to remain in their home and challenge PLAINTIFF'S foreclosure and eviction action. However, as if all of the other breaches described herein that have been heaped upon DEFENDANTS were not enough, PLAINTIFF has continued to harass and subject DEFENDANTS to abuse and oppression, by continuing to try to threaten and intimidate them with eviction as evidenced by the email message contained in **DEFENDANTS' EXHIBIT 14** wherein Attorney Jacob Kaiser states the following: (Please note that PLAINTIFF'S attorney's email message is dated May 14, 2014, one day after PLAINTIFF Attorneys had filed with Randolph County Circuit Court, and the court had sent DEFENDANTS the order granting the continuation, and a Scheduling Order for a Trial By A Jury in September, 2014).

> "Mr. Springer: I think you would agree that my client was very generous in offering you an opportunity to make your own offer to purchase the property back last week after you stated in your letter that you believed the offered amount of $33,000.00 to be too high. However, we received no other offer from you on or before the deadline that was provided to you.
> As a last effort to facilitate a resolution to this matter, my client is willing to offer you relocation assistance to vacate the property within 30 days from the Court's entry of a judgment in Wells Fargo's favor. Should you nand all occupants timely vacate by the deadline and timely return of all necessary tax forms that we will provide, Wells Fargo will provide you with the $4,250.00 to assist in your relocation. Should you consent to this

agreement, understand that the property must be vacated within 30 days of the Court's Order and that it must be left in clean broom swept condition, free of all debris, or their will be no payment of the $4,250.00. However, my client will still be entitled to immediate possession of the property. Please let me know your response by 5:00 PM Friday, May 16th. Kindest Regards? Jacob A. Kiser "

DEFENDANTS merely want to know, why they would receive such a

"threatening" letter, in light of having just the day before, received a Scheduling order

from this court as well as an order granting a motion for continuation?

If not for the mere infliction of additional distress, then why?

DEFENDANTS believe this conduct to be malicious, wanton, and meant for the purpose

of intimidating and oppressing toward DEFENDANTS,

## MITIGATING CIRCUMSTANCES

Page 18 beginning with the third (3rd) Paragraph, and continuing on page 19 of

DEFENDANT'S CROSS MOTION, DEFENDANT Jeanetta Springer, has attempted to

explain to the court, how PLAINTIFF'S predecessor institution explained the "cross-

collateralization" of the Minnifield accounts, and the mysterious explanations that arose

following Dr. Minnifield's death.

DEFENDANTS offer for this honorable court's consideration.

**(DEFENDANTS' EXHIBIT T)** is offered as evidence of the representations made

to her by various banking personnel with respect to these assertions.

**(DEFENDANTS' EXHIBIT T)** consists of a letter written November 12,

2002, to DEFENDANT Jeanetta Springer (at that time Jeanetta Stevens) the subject of

which is "The Warren Minnifield Estate".

Throughout DEFENDANTS' CROSS MOTION, we have attempted to remain

true to the cause of our defense, and adhere to principles of courtesy and refrain from

anything that might serve to prejudice the court, or jeapordize our claims. However,

DEFENDANTS believe that said letter from Oliver Kitchens, who at that time was

DEFENDANT Jeanetta Springer's personal Attorney, serves as evidence of **YET**

**ANOTHER** offense perpetrated by PLAINTIFF'S predecessor institution, for which

PLAINTIFF *must be* held accountable. DEFENDANTS are righteously indignant with

respect to these matters, and rightly so — and in light of EVERYTHING that has

transpired over the past eleven years, DEFENDANT'S do not consider any of these

events a mere mis-hap, or mistake. DEFENDANTS consider it one of the worse forms of ABUSE they have ever experienced in their lives.

DEFENDANTS view said letter from Attorney Oliver Kitchens,

**(DEFENDANTS' EXHIBIT T)**, as validation of the fact no sooner than Dr. Warren Minnifield was dead, there were those who, by virtue of their positions, or associations with SouthTrust bank, who knew of his death, and who were operating in the background by conspiring to undermine his estate. The way to do that was to undermine his daughter, DEFENDANT JEANETTA SPRINGER. Many of these individuals have served and are still serving as officers of this court, and include local lawyers and judges who have influenced in one way or another the situation DEFENDANTS NOW FIND THEMSELVES IN.

By November 12, 2002, Dr. Warren Minnifield had barely been dead and buried a good four (4) WHOLE months. For verification look at the payment record for 2002 (the year Warren Minnifield died). Dr. Minnifield made three (3) $695.00 payments [January, February and March]. Nothing in April, but a partial payment of $495.00 in May. So, at that point in time, he wasn't even 2 WHOLE payments behind. In June, July and August payments were made. By then Dr. Minnifield had passed away.

Knowing full well that the Minnifield family was in mourning, and that there was a possibility that the Minnifield estate would have to go through the probate process, who, but Attorney John Tinny sends word to DEFENDANT Jeanetta Springer through her attorney, Oliver Kitchens, that he's going to foreclose THE ENTIRE MINNIFIELD ESTATE!!!! (Including the subject property at 619 Lafayette Highway. At this point in time, DEFENDANT does not recall the precise status of all the other accounts Dr.

Minnifield had at SouthTrust Bank, at that time. BUT what DEFENDANT *does know* is

that she had a joint and survivorship deed in full force and effect and the subject property

at 619 LaFayette Highway and for that reason, was not even a part of the Minnifield

estate. Yet, here was Attorney John Tinney threatening to foreclose the property.

The real truth of this matter is that Attorney John Tinney, and God only knows

who else were conspiring to get their hands on Dr. Minnifield's property, because he

owned some coveted prime real estate in Wedowee, Alabama, that they wanted. They

(John Tinney and his cohorts — whoever they are) had attempted to induce Dr.

Minnifield to sell the property at well below market value and he had refused before his

death. However, after Dr. Minnifield's death, Attorney John Tinney, on his own behalf

somehow mysteriously came up with some kind of bogus papers with Dr. Warren

Minnifield's signature on them, proporting to agree to sell the real estate and even sued

DEFENDANT Jeanetta Springer, to force her to honor the alleged agreement to sell the

property to him at well below market value.

In the final analysis, an Attorney who PLAINTIFF's predecessor institution hired,

used information that he gained via his relationship with PLAINTIFF'S predecessor

institution, for personal gain. Totally unethical conduct, which has caused

DEFENDANTS to suffer in ways that we will not attempt to enumerate herein. Yet, the

court records will bear out the truth. Officers of this court, as well as judges encouraged,

and promoted discord within the family as a result of much of the unethical conduct

within the legal system because of instigating dissent within the Minnifield family.

It is not the least bit surprising to us that Attorney John Tinney has been the common denominator in most if not all of the court drama that has been heaped upon DEFENDANTS AND their family.

FOR DEFENDANTS it has turned into a complete nightmare, and DEFENDANTS do not appreciate being brought to the point wherein they are about to lose the very roof over their heads, because of petty controversies within the Minnifield family, that have were instigated AND orchestrated by folks connected with SouthTrust Bank and the Randolph County Court System. DEFENDANTS Jeanetta and Jacob Springer believe that much of the court drama that they have experienced over the past eleven (11) years, was the result of conspiracies instigated by corrupt lawyers and other outsiders who wanted to see the Minnifield siblings at odds with each other, so that they could personally profit by grabbing the Minnifield property. Much of it has been played out right here in Randolph County Circuit Court.

Yet, in the face of **YEARS OF CIVIL LITIGATION** right here in the court, DEFENDANT Jeanetta Springer managed to hold on to her family home, and continue to make these $695.00 payments on her property.

**While PLAINTIFF may not be liable for every consequence that DEFENDANTS have suffered, PLAINTIFF is certainly liable for who they hired, and how their agents/attorneys conducted themselves and how their conduct has come to bear upon our present situation.**

# ASIDES

Judging from various notations that have been made and information exchanged between and among the Attorneys, throughout this litigation, DEFENDANTS are left with the impression that WE were the ones being scrutinized for merely standing up in defense of our property rights. DEFENDANTS do not appreciate insinuations that we were just looking for a way out of the indebtedness by using the housing crisis as a way out. And we feel that our payment record certainly serves as proof of this. This can hardly be the case when DEFENDANT Springer moved out of the home she was already paying on — her beautiful home of 25 years **(DEFENDANTS' EXHIBIT U)**, that she was within three years of having paid in full, and that offered her far better living conditions than she presently has in the property at 619 LaFayette Highway.

*Why* would she vacate her own home to take on a $90,000.00 mortgage note left by her father if not for reasons other than those stated in DEFENDANT'S Cross Motion?

DEFENDANTS are interested in telling the NAKED truth *as it is* and in obtaining justice through this or any higher court has the competent jurisdiction to rule FAIRLY according to the laws of this land with respect to our property. We don't care about the politics of this. We are not interested in what political party happens to be the ruling party at this time. We don't need to lie, or discuss our position with respect to this foreclosure with any embellishments, or fabrications whatsoever. As far as we are concerned it is what it is. And as we have stated elsewhere herein, the documents themselves tell the story.

# FINAL THOUGHTS

In the final analysis, DEFENDANTS conclude this Supplement with one final consideration. That of RACE. Throughout this presentation, DEFENDANTS have attempted to raise the relevant and material issues with respect to this eviction action that has been brought against them. And in light of all that has been discussed, DEFENDANTS have attempted to focus on the elements of the loan, it's servicing, and the foreclosure and eviction process, that they believe to be fraudulent, illegal, and patently unfair to them as any consumer would believe. DEFENDANTS believe that they have raised sufficient issues and presented sufficient evidence to give credence to their claims against said eviction.

However, the one issue that DEFENDANTS have not raised — but that nevertheless looms largest in their minds — is that of RACE. For, merely by virtue of having lived a lifetime in The Great State Of Alabama as African American citizens, it has been our experience, and is a well fact accepted within our culture, that most if not all banks have at one time or another been held liable for differential treatment between their African American and Latino loan applicants, and their Non-African-American applicants. This is a fact of life and well-documented. Thus, DEFENDANTS have within themselves raised the following question?

How is it that in 1998, a man of the professional tenure, and stature and social standing of Dr. Warren Minnifield, with a long history of borrowing and repaying loans at various institutions, would merit being placed in a loan that first was upside-down based on the collateral, and that carried with it a 8.58% interest rate and a $69,000.00 balloon payment, which by all definitions amounts to a sub-prime loan?

DEFENDANTS are well aware that PLAINTIFF themselves, did not originate the subject loan. However, though PLAINTIFF did not originate the subject loan, PLAINTIFF, in July of 2012 was compelled to answer allegations leveled by The United States Department of Justice in the second largest fair lending settlement in the department's history to resolve allegations that Wells Fargo Bank, the largest residential home mortgage originator in the United States, "engaged in a pattern or practice of discrimination against qualified African-American and Hispanic borrowers in its mortgage lending from 2004 through 2009." **(DEFENDANTS' EXHIBIT 7, 8 and 9)**

But, as African Americans, DEFENDANTS are well aware that the practice of discriminating in lending did not just come about a few years ago. And DEFENDANTS have wondered if PLAINTIFF'S predecessor institutions were required to open their books, what would the make-up of its borrowers look like? Those with similar incomes and credit histories, who were offered sub-prime loans with usurious interest rates versus those offered low cost loans based on prime lending rates?

This question may never be answered. But, DEFENDANTS believe it important for the Court as well as PLAINTIFF to understand that we are DISTURBED to say the very least over the way our father was treated, and now by the way we have been treated by PLAINTIFF. And we cannot help but to question whether the issue of race in any way enters into this matter as a factor.

# **CONCLUSION**

DEFENDANTS Jacob C. Springer, Pro Se and Jeanetta Springer, Pro Se, reaffirm and re-allege all defenses and allegations set forth in their original MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DEFENDANTS' CROSS-MOTION AND MEMORANDUM IN SUPPORT OF SUMMARY JUDGMENT FOR DEFENDANT(S) submitted to this court on April 17, 2014.

DEFENDANTS turn to this Court for refuge from the sheer financial and emotional abuse and economic oppression they have encountered in the effort to preserve ownership of their home. DEFENDANTS re-affirm and re-alleges that all of the acts and omissions committed against them have been negligent, wanton, and malicious and have caused DEFENDANTS excessive and unnecessary suffering. And as a result, DEFENDANTS have suffered irreparable harm, physically, psychologically, emotionally and above all financially.

Therefore, we conclude this Supplement by re-affirming, re-alleging, and re-stating all of those matters previous mentioned in our original CROSS MOTION.

*Done this 23rd Day of May, 2014*

Respectfully Submitted,

T. Jeanetta Minnifield Stevens Springer, PRO SE

*Jacob C. & T. Jeanetta Minnifield Stevens Springer, Pro Se | 619 LaFayette Highway, Roanoke, AL 36274 | 334.863.2667*

334.863.2667

_[signature]_

Jacob C. Springer, PRO SE
334.863.2667

## CERTFICATE OF SERVICE

I, **T. Jeanetta Minnifield Stevens Springer**, PRO SE and **Jacob C. Springer**, PRO SE the DEFENDANTS in this case, hereby certify that I/we served an electronic copy on a CD Rom, of the foregoing pleading on all counsel of record on this 23rd Day of May, 2014 by U.S. Mail to:

Greggory M. Deitsch (DE1001)
Jacob Andrew Kiser (KIS004)
Joshua Hornady (HOR055)
Attorneys for PLAINTIFF,
Wells Fargo Bank, N.A. successor by merger to
Wachovia Bank, N.A. f/k/a SouthTrust Bank, N.A.
2311 Highland Avenue South
Birmingham, Alabama 35205
Direct: 205.930.5324
Fax: 205.930.5101

# SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2002 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented? | ACCOUNT #APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/10/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 2/4/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 3/13/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| *4/22/2002 | $ 24.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 5/1/2002 | $ 495.00 | W-F Payment Record | 549010228 | Regular Payment |
| 5/1/2002 | $ 200.00 | W-F Payment Record | 549010228 | Regular Payment |
| 5/20/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 6/28/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 6/28/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 7/2/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 7/2/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 7/22/2002 | DR. WARREN MINNIFIELD DIED | | | |
| 8/13/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 8/26/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 8/30/2002 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 9/20/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 10/12/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 11/20/2002 | $ 2,318.25 | W-F Payment Record | 549010228 | MULTIPLE PAYMENT |
| 11/29/2002 | $ 135.00 | W-F Payment Record | 549010228 | Exp debit |
| 12/20/2002 | $ 34.75 | W-F Payment Record | 549010228 | Lt ch Assess |
| 12/24/2002 | $ 695.00 | W-F Payment Record/Ck #1504 | 549010228 | Regular Payment |
| 12/30/2002 | $ 695.00 | W-F Payment Record/Ck #1505 | 549010228 | Regular Payment |
| TOTAL PAYMENTS TENDERED IN YEAR 2002 | $ 9,035.00 | | | $ 9,035.00 |

During 2002, Mrs. Springer paid a total of $9,035.00 in payments. This translates to 13 payments of $695.00. She was assessed a late charge of $24.75 in April of 2002. For the remainder of this year, she was assessed late charges of $34.75 seven times, (May, June, July, August, September, October, and December). On November 29, Mrs. Springer's account shows some kind of unexplained debit in the amount of $135.00, which we do not pretend to understand. However, we do not understand her being assessed with another $34.75 late charge in lights of a huge payment made in on November 20th, and two additional payments made in the month of December. In addition to the $9,035.00, Mrs. Springer paid 268.00 in late charges, plus an additional $135.00 unexplained fee giving rise to a total of $403.00 in fees and charges. At any rate, by the end of the year 2002, she exceeded in actual payments the amount of money that would have been due Plaintiff during the year 2002. Added to the $9,035.00 paid in that year that is a total of $9,438.00 for the year in regular payments plus late fees.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2003 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented" | ACCOUNT #APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/1/2003 | The payment for January had been made in December. Springer made two payments in the month of December, obviously representing the payment for December of 2002 and January of 2003. | | | |
| 2/10/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 3/5/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 4/8/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 5/5/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 6/6/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 7/7/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 8/12/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 9/5/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 10/8/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 11/05/2003 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 12/2/2003 | $ 864.00 | W-F Payment Record | 549010228 | Regular Payment |
| DEFENDANT QUESTIONS why is it that in the above month, why was a payment in the amount of $864.00 necessary, in light of a full year of on-time payments. | | | | |
| TOTAL PAYMENTS TENDERED IN YEAR 2003 | | | | $ 7,814.00 |

By the end of 2003, this account was current, because no late fees or charges appear anywhere on this (Wells Fargo) report.  DEFENDANT also does not have an explanation as to why it was necessary to pay $ 864.00 in December of 2003.  The next time late fees are assessed to this account occur in May of the following year.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2004 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented? | ACCOUNT # APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/7/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 1/30/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 3/2/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 4/7/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| *5/4/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| *5/4/2004 | $ - 695.00 | W-F Payment Record | 549010225 | NSF Chargeback |
| 5/20/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 6/1/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 6/21/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 7/2/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 7/20/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 7/30/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 8/20/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 9/1/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 9/20/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 9/30/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 10/20/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 11/16/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 11/22/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 12/3/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| 12/20/2004 | $ 28.00 | W-F Payment Record | 549010225 | Late Assess |
| 12/31/2004 | $ 695.00 | W-F Payment Record | 549010225 | Regular Payment |
| **TOTAL PAYMENTS TENDERED IN YEAR 2004** | | | | **$ 8,340.00** |

A regular payment in the amount of $695.00 payment was submitted on May 4, 2004, however, the record reflects that this payment was returned for NSF. Despite the NSF, there were still a total of 12 regular payments in the amount of $695.00 totaling $8,340.00 submitted in this year. Eight (8) Late fees were assessed in the amount of 224.00 despite the fact that ten (10) of the twelve (12) payments due were timely submitted payments.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2005 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented? | ACCOUNT #APPLIED | NOTATIONS |
|---|---|---|---|---|
| *1/20/2005 | $ 28.00 | W-F Payment Record | 549010223 | Lt.ch Assess |
| 2/4/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 2/22/2005 | $ 28.00 | W-F Payment Record | 549010223 | Lt.ch Assess |
| 2/28/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 3/21/2005 | $ 28.00 | W-F Payment Record | 549010223 | Regular Payment |
| 4/26/2005 | $ 34.75 | W-F Payment Record | 549010223 | Lt.ch Assess |
| 4/29/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 5/18/2005 | $ 1,255.00 | W-F Payment Record | 549010223 | Two (2) Payment |
| 6/7/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| *7/5/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| *7/5/2005 | $ -695.00 | W-F Payment Record | 549010223 | NSF Chargeback |
| 7/20/2005 | $ 34.75 | W-F Payment Record | 549010223 | Lt.ch Assess |
| 8/1/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 8/4/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 9/06/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 10/5/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| 11/1/2005 | $ 695.00 | W-F Payment Record | 549010223 | Regular Payment |
| *12/20/2005 | $ 34.75 | W-F Payment Record | 549010223 | Lt.ch Assess |
| **TOTAL PAYMENTS TENDERED IN YEAR 2005** | **$ 7,645.00** | | | |

In 2005, eleven payments in the amount of $695.00 were tendered. Late fees were accessed totaling 125.50. By the end of year 2005, one month behind.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2006 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented? | ACCOUNT #APPLIED | NOTATIONS |
|---|---|---|---|---|
| *1/20/2006 | $ 34.75 | W-F Payment Record Illegible | 54901022: | Ltch Assess |
| 2/6/2006 | $ 695.00 | W-F Payment Record | 54901022: | Regular Payment |
| 2/21/2006 | $ 34.75 | W-F Payment Record | 54901022: | Ltch Assess |
| *3/16/2006 | $ 695.00 | W-F Payment Record/CH#38 | 54901022: | Regular Payment |
| *3/16/2006 | $ -695.00 | W-F Payment Record | 54901022: | NSF Charge-Back |
| 3/16/2006 | $ 695.00 | Checkbook Register/ Paid Cash | 54901022: | March Payment |
| 3/22/2006 | $ 695.00 | W-F Payment Record | 54901022: | April Payment |
| 3/31/2006 | $ 695.00 | W-F Payment Record | 54901022: | May Payment |
| 4/20/2006 | $ 34.75 | W-F Payment Record | 54901022: | Ltch Assess |
| 5/12/2006 | $ 695.00 | W-F Payment Record | 54901022: | Regular Payment |
| 5/22/2006 | $ 34.75 | W-F Payment Record | 54901022: | Ltch Assess |
| 6/12/2006 | $ 695.00 | W-F Payment Record | 54901022: | Regular Payment |
| 7/20/2006 | $ 34.75 | W-F Payment Record | 54901022: | Regular Payment |
| 8/1/2006 | $1,390.00 | Teller Receipt/Check # 379 | 54901022: | Two (2) Payments |
| 8/4/2006 | Extension? | | | |
| 9/12/2006 | $1,400.00 | Teller Receipt | 54901022: | Two (2) Payments |
| 10/2/2006 | $ 695.00 | W-F Payment Record | 54901022: | Regular Payment |
| 11/13/2006 | $ 695.00 | W-F Payment Record | 54901022: | Regular Payment |
| 12/27/2006 | $ 695.00 | W-F Payment Record | 54901022: | Regular Payment |
| TOTAL PAYMENTS TENDERED IN YEAR 2006 | | | | $ 9,035.00 |

There were 13 payments made to PLAINTIFF in the year 2006; totaling $9,035.00... There were a total of 5 late charges assessed to this account, totaling $173.75 which do not appear to be warranted. DEFENDANT made multiple payments twice during this year and her CASH payment tendered March 16, 2006 was not credited to the account. The year should have ended with DEFENDANT being completely current on the account, if not ahead.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2007 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented? | ACCOUNT APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/24/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment Plus Late Charge |
| 2/5/2007 | $ 991.00 | Teller Receipt | 549010228 | Regular Payment |
| 3/6/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 4/3/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 5/4/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 6/12/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 7/9/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| *8/13/2007 | Jeanetta made a withdrawal from her checking account in the amount of $700.00, which was previously paid to W-F in cash, but she does not have a receipt for this payment. This would have put her a month ahead on her payment. | | | |
| 8/21/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| *9/3/2007 | $ 695.00 | Defendant's Bank Statement Check #259 | 549010228 | Regular Payment |
| 10/22/2007 | $ 34.75 | W-F Payment Record | 549010228 | Lich Assess |
| 10/31/2007 | $ 729.75 | Teller Receipt | 549010228 | Regular Payment Plus Late Charge |
| Because of the unapplied payment made on September 3, 2007, the additional charges and late fees paid above were unwarranted | | | | |
| 11/7/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| 11/20/2007 | $ 33.01 | W-F Payment Record | 549010228 | Lich Assess |
| 11/20/2007 | $ 695.00 | W-F Payment Record | 549010228 | Lich Assess |
| The Above late charge appears to be unwarranted due to fact that the DEFENDANT is current on the payment | | | | |
| 11/27/2007 | $ 695.00 | W-F Payment Record | 549010228 | Regular Payment |
| *12/20/2007 | $ 34.75 | W-F Payment Record | 549010228 | Lich Assess |
| TOTAL PAYMENTS TENDERED IN YEAR 2007 | | | | $ 9,035.00 |

DEFENDANT made a total of thirteen (13) payments in this year totaling $9,035.00. Late Charges Assessed to this account: 2/5/2007: $ 296.00; 10/20/2007: $34.75; 10/31/2007: $34.75; 11/20/2007 $34.75 FOR A TOTAL OF $ 400.25 in late charges. From all appearances, the year ended with the account ahead. PLAINTIFF'S Payment record reflects no payment made in September of 2007, however, DEFENDANT'S September bank Statement shows the $695.00 payment cleared from her bank account on September 3, 2007. This year DEFENDANT ended this year completely current if not one possibly two (2) months in advance considering the fact that there is a 700.00 withdrawal shown on her bank statement, but no receipt that proves the August 13, payment.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2008 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented | ACCOUNT # APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/6/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 1/22/2008 | 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 2/8/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 2/20/2008 | 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 3/7/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 3/20/2008 | 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 4/4/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 4/21/2008 | 34.75 | W-F Payment Records | 54901023S | Regular Payment |
| 5/13/2008 | $ 695.00 | W-F Payment Records/Ck# 1415 | 54901023S | Regular Payment |
| 6/6/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 6/20/2008 | 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 7/08/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 7/21/2008 | $ 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 8/5/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 8/20/2598 | $ 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 9/5/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 9/22/2008 | $ 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 9/27/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 10/20/2008 | $ 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 11/7/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 11/20/2008 | $ 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| 12/2/2008 | $ 695.00 | W-F Payment Records | 54901023S | Regular Payment |
| 12/22/2008 | $ 34.75 | W-F Payment Records | 54901023S | Lt.ch Assess |
| TOTAL PAYMENTS TENDERED IN YEAR 2008 | | | | $ 8,340.00 |

This entire year, DEFENDANT tendered twelve (12) timely payments in this year. Thus, there should not have been any late fees assessed since the year began with DEFENDANT being paid ahead. In spite of twelve timely payments, there was $312.75 charged in late fees during this year and adding insult to injury, the balance never decreased from $81,384.00 at the beginning of the year to $81,384.00 at the end of year. The last two months are missing. (This is based on W-F) Payment History

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2009 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented | ACCOUNT # APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/6/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 1/20/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 2/6/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 2/20/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 3/6/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 3/20/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 4/3/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 4/20/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 5/6/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 5/20/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 6/3/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 6/22/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 6/24/2009 | $ 2,050.25 | W-F Payment Records | 549010228 | Paid almost 3 payments |
| 8/20/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 9/21/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| 9/25/2009 | $ 695.00 | W-F Payment Records | 549010228 | Payment was being tendered for October |
| 10/05/2009 | NO PAYMENT | | 549010228 | Regular Payment |
| 11/09/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 11/13/2009 | $ 1,390.00 | W-F Payment Records | 549010228 | Do not understand why this amount was tendered??? |
| 12/10/2009 | $ 695.00 | W-F Payment Records | 549010228 | Regular Payment |
| 12/14/2009 | $ 695.00 | W-F Payment Records | 549010228 | This December payment was being made in advance for January, 2010 |
| 12/21/2009 | $ 34.75 | W-F Payment Records | 549010228 | Late Assess |
| **TOTAL PAYMENTS TENDERED IN YEAR 2009** | | | | **$ 9,695.00** |

There were 14 monthly payments made in the year 2009. $34.75 in late fees were charged on the following dates: 1/20/2009, 2/20/2009, 3/20/2009, 4/20/2009, 5/20/2009, 6/22/2009, 8/20/2009, 9/21/2009, 10/20/2009, 12/21/2009 totaling $347.50 in Late Fees Assessed. By the end of this year, DEFENDANT was 2 months ahead on the payments.

## SUMMARY OF SPRINGER FOR THE YEAR 2010 PAYMENTS ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented | ACCOUNT #APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/20/2010 | $ 34.75 | W-F Payment Record | 5490102■ | Lien Assess |
| 1/27/2010 | $ 555.45 | Land Taxes | N/A | Heather Johnson |
| Reference is made to Heather Johnson in Cross Motion (p. 24) Paragraph 2 (highlighted in yellow) | | | | |
| 2/5/2010 | $ 695.00 | Teller Receipt/Ck#1747 | 54901022■ | **Regular Payment** |
| The above payment does not appear anywhere on PLAINTIFF'S Payment History | | | | |
| 2/15/2010 | $1,031.79 | W-F Payment Record | 549010228 | Flood Insurance Cr. |
| 2/15/2010 | $1,031.79 | W-F Payment Record | 549010228 | Princ CR |
| 2/15/2010 | $1,031.79 | W-F Payment Record | 549010228 | Exp Debit |
| 2/22/2010 | $ 34.75 | W-F Payment Records | 549010228 | **Lien Assess** |
| 3/8/2010 | $ 695.00 | Teller Receipt | 549010228 | Regular Payment |
| 4/7/2010 (cash) | $ 695.00 | Teller Receipt | 549010228 | Regular Payment made in cash |
| 4/20/2010 | $ 34.75 | W-F Payment Records | 549010228 | **Lien Assess** |
| 5/6/2010 | $ 695.00 | Teller Receipt | 549010228 | **Regular Payment** |
| 5/20/2010 | $ 695.00 | Teller from W-Bank Check by phone | 549010228 | **Regular Payment** |
| The above payment does not appear on PLAINTIFF'S Payment History | | | | |
| 5/20/2010 | $ 34.75 | W-F Payment Records | 549010228 | **Lien Assess** |
| 5/28/2010 | $ 695.00 | Check #1487 | 549010228 | Documented in letter to Ginny Rutledge |
| 7/7/2010 | $ 695.00 | Check #1811 | 549010228 | Documented in letter to Ginny Rutledge Cleared7/13/2010 |
| 7/27/2010 | $ -695.00 | Payment Returned by Wells Fargo by Cashier's Check #07254■ | 680057257 | |
| 8/05/2010 | $ 695.00 | Teller Receipt/Ck#1811 | 680057257 | Credited to the WRONG ACCOUNT |
| 9/03/2010 | $ 695.00 | Teller Receipt/Ck#1830 | 680577692 | Credited to the WRONG ACCOUNT |
| 10/04/2010 | $ 695.00 | Teller Receipt/Ck#1847 | XXXXXXXX0001 | Do Not Understand how this was credited |
| 10/25/2010 | $ -695.00 | Payment Returned by Wells Fargo by Cashier's Check | XXXXXXXX0001 | |
| 11/08/2010 | $ 695.00 | Teller Receipt/Ck#1856 | XXXXXXXX0001 | Do Not Understand how this was credited |
| 12/10/2010 | $ 695.00 | Teller Receipt/Ck#151 | XXXXXXXX0001 | Do Not Understand how this was credited |
| 12/14/2010 | $ 695.00 | Bank Statement Showing cleared check for 695.00 | XXXXXXXX0001 | Do Not Understand how this was credited |
| **TOTAL PAYMENTS TENDERED IN YEAR 2010** | | | | **$ 9,035.00** |

# SUMMARY OF SPRINGER FOR THE YEAR 2010 PAYMENTS ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO
### (Continued From Previous Page)

DEFENDANT tendered 13 payments in the amount of $695.00 to PLAINTIFF during the year 2010 for a total of $9,035.00. Moreover, there were two payments made in this year, on February 30, 2010, and May 20, 2010, that do not appear anywhere on PLAINTIFF Wells Fargo's Payment History for this account. The February 3. Payment is documented via both Teller Receipt/Ck#1747 (which is included in **DEFENDANT'S EXHIBIT R-J** which is a collection of proofs of payment produced by DEFENDANT Springer including teller receipts and other proof.' The May 20, 2010 payment is documented via a letter from PLAINTIFF, dated May 20, 2010, acknowledging a check by phone payment in the amount of $695.00. Said letter is included in **DEFENDANT'S EXHIBIT R-1** (page 8). And is also produced as a stand-alone document **DEFENDANT'S EXHIBIT 11.** PLAINTIFF'S letter purported to credit said payment to the proper account ending in -6605, and promised that the payment would be credited to the account on June 1, 2010, yet, the letter is addressed to Rhonda Walker at Post Office Box 437 Tuskegee, Alabama. In addition to not being credited to the DEFENDANTS' account, this acknowledgment of payment was directed to the WRONG person, and sent to the WRONG address.

## SUMMARY OF SPRINGER PAYMENTS FOR THE YEAR 2011 ON
## SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| Payment Date | Payment Amount | How Documented | ACCOUNT #APPLIED | NOTATIONS |
|---|---|---|---|---|
| 1/6/2011 | $ 695.00 | Teller Receipt/Ck#1904 | XXXXXXXXXXX0001 | Credited on the 7th |
| 1/28/2011 | $ - 695.00 | Copy of Cashiers Received from W-F | | |
| 2/4/2011 | $ 695.00 | Teller Receipt/Ck#1928 | XXXXXXXXXXX0001 | Credited on the 6th |
| 3/3/2011 | $ 695.00 | Teller Receipt/Ck#1940 | XXXXXXXXXXX0001 | Credited on the 4th |
| 3/9/2011 | $ 200.00 | Copy Of Cashiers Check    Received from W-F 4/4/2011 | | |
| 4/4/2011 | $ 695.00 | Teller Receipt/Ck#422 | XXXXXXXXXXX0001 | Credited on the 5th |
| 5/2/2011 | $ 695.00 | Copy of Cashier's Check #000004735 dated 4/25/2011 Rec'd from W-F | XXXXXXXXXXX0001 | |
| 5/10/2011 | $ 695.00 | Check # #422 | It is not known how this payment was accounted | Was never credited |
| 5/31/2011 | $ -695.00 | Copy of Cashier's Check #00000008540 dated 5/9/2011 Rec-d from W-F | | |
| **TOTAL PAYMENTS TENDERED IN YEAR 2011** | | | | $ 3,475.00 |

There were a total of five (5) timely submitted payments to PLAINTIFF in 2011. The Plaintiff has produced NO RECORDS of any of the payments submitted in 2011. Items highlighted in light blue represent Payments that PLAINTIFF purportedly returned to the DEFENDANTS. However, the item highlighted in light green represents a totally odd payment, that PLAINTIFF sent to DEFENDANTS, that could not possibly represent the return of any payment that DEFENDANT may have made. The payment tendered on May 10, 2011, is not documented anywhere. There is no teller receipt that documents this payment, NOR is this payment documented on PLAINTIFF'S Payment Record. However, the payment is documented in the 2011 Proof of Payments shown in **DEFENDANT'S EXHIBIT R-2 (Page 1)** which is an account history print-out of the DEFENDANT'S CHECKING ACCOUNT held at Fort McClellan Credit Union.

## SUMMARY OF SPRINGER PAYMENTS FOR YEARS 2002-2011
### TO SOUTHTRUST BANK/WACHOVIA/WELLS FARGO

| YEAR | TOTAL OF PAYMENTS | TOTAL OF LATE FEES ASSESSED/PAID | TOTAL |
|---|---|---|---|
| 1998-2001 | 25,020.00 | | 27,105.00 |
| 2002 | 9,035.00 | 198.50 | 9,035.00 |
| In 2002, there is a mysterious debit in the amount of $135.00 that is just unexplained. | | | |
| 2003 | 7,814.00 | 0 | 7,814.00 |
| 2004 | 8,340.00 | 224.00 | 8,564.00 |
| 2005 | 7,645.00 | 125.50 | 7,770.00 |
| 2006 | 9,035.00 | 173.75 | 9,208.75 |
| 2007 | 9,035.00 | 400.25 | 9,425.35 |
| 2008 | 8,340.00 | 312.75 | 8,652.75 |
| 12 timely payments were made, and the balance on this loan NEVER decreased from $81,384.00 at the beginning of the year to $81,384.00 at the end of year. WHY? | | | |
| 2009 | 9,695.00 | 347.50 | 10,042.50 |
| There were 14 monthly payments made in the year 2009. Despite all these payments made during this year, there was $34.75 in late fees charged on the following dates: 1/20/2009, 2/20/2009, 3/20/2009, 4/20/2009, 5/20/2009, 6/22/2009, 8/20/2009, 9/21/2009, 10/20/2009, 12/21/2009 totaling $347.50 in Late Fees Assessed. | | | |
| 2010 | 9,035.00 | 139.00 | 9,174.00 |
| It is during 2010, that beginning in July, many payments are mis-applied to the wrong account and many unwarranted late fees. | | | |
| 2011 | 3,475.00 | 0.00 | 3,474.00 |
| In 2011, Mrs. Springer made four (4) payments the first 4 months of the year, in the amount of $695.00 all within the due date. | | | |
| TOTALS | | | 10,435.00 |

| TOTAL PAYMENTS MADE BY JEANETTA SPRINGER NOT INCLUDING PAYMENTS MADE BY DR. MINNIFIELD | 120,700.00 |
|---|---|

Defendants Exhibit Q ②

*1998*

*1999*

| Date | Rate | Type | Amount | | | | | | | | Balance | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/1?/199 8 | 8.63 | Loan DR | $84,119.69 | | | | | | | | $84,1?0.? 9 | | | |
| 09/21/199 8 | 8.63 | Ltch Assess | $34.75 | $34.75 | | | | | | | $89,786.7 0 | | | |
| 09/22/199 8 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $89,786.7 0 | | | |
| 09/22/199 8 | 8.63 | Payment | $200.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $200.00 | $89,786.7 0 | | | |
| 09/28/199 8 | 8.63 | Ltch Waive | $34.75 | ($34.75 ) | | | | | | | $89,786.7 0 | | | |
| 10/13/199 8 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $251.81 | $443.19 | $89,534.8 | | | |
| 11/10/199 8 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $111.19 | $583.81 | $89,423.7 0 | | | |
| 12/07/199 8 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $132.73 | $562.27 | $89,290.9 7 | | | |
| 01/08/199 9 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $29.60 | $665.40 | $89,261.3 7 | | | |
| 02/05/199 9 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $112.97 | $582.03 | $89,148.4 0 | | | |
| 03/11/199 9 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $89,148.4 0 | | | |
| 04/15/199 9 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $89,148.4 0 | | | |
| 06/11/199 9 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $112.74 | $582.26 | $89,035.6 6 | | | |

**Minnifield 0096**

③

| | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | 0 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/13/1999 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $88,827.20 | | | |
| 10/08/1999 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $161.22 | $533.78 | $88,665.98 | | | |
| 11/08/1999 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $54.91 | $640.09 | $88,611.07 | | | |
| 12/09/1999 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $55.30 | $639.70 | $88,555.77 | | | |
| 01/10/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $35.58 | $659.42 | $88,520.19 | | | |
| 02/08/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $98.82 | $596.18 | $88,421.37 | | | |
| 03/10/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $58.42 | $636.58 | $88,362.95 | | | |
| 04/11/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $38.31 | $656.69 | $88,324.64 | | | |
| 05/11/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $79.62 | $615.38 | $88,245.02 | | | |
| 06/09/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $121.17 | $573.83 | $88,123.85 | | | |
| 07/10/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $40.09 | $654.91 | $88,083.76 | | | |
| 08/11/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $40.39 | $654.61 | $88,043.37 | | | |

2000

**Minnifield 0097**

④

| | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 0 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $62.31 | $632.69 | 8 |
| 12/11/2000 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $62.76 | $632.24 | $87,754.72 |
| 01/10/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $83.09 | $611.91 | $87,671.63 |
| 02/12/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $21.25 | $873.75 | $87,650.38 |
| 03/09/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $184.71 | $510.29 | $87,465.67 |
| 04/11/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $22.83 | $672.17 | $87,442.64 |
| 05/11/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $84.10 | $610.90 | $87,358.74 |
| 06/11/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $64.34 | $630.66 | $87,284.40 |
| 07/10/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $105.47 | $589.53 | $87,188.93 |
| 08/10/2001 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $65.56 | $629.44 | $87,123.37 |
| 08/10/2001 | 8.63 | Pay Rev | $695.00 | $0.00 | | $0.00 | $0.00 | $0.00 | ($65.56) | ($629.44) | $87,188.93 |
| 08/20/2001 | 8.63 | Ltch Assess | $24.75 | $24.75 | | | | | | | $87,188.93 |
| 08/21/2001 | 8.63 | Ltch Waive | $24.74 | ($24.74) | | | | | | | $87,188.93 |

2001

Minnifield 0098

(5)

2002

| | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $90.52 | $804.48 | 1 | | |
| 10/12/2001 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $86.51 | $808.49 | $97,011.90 | | |
| 11/13/2001 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $46.58 | $848.42 | $86,965.32 | | |
| 12/11/2001 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $127.94 | $567.06 | $86,837.38 | | |
| 01/10/2002 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $88.32 | $806.68 | $86,749.06 | | |
| 02/04/2002 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $189.96 | $505.04 | $86,559.10 | | |
| 03/13/2002 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $896.00 | $86,559.10 | | |
| 04/22/2002 | 8.63 | Ltch Assess | $24.75 | $24.75 | | | | | | | $86,559.10 | | |
| 05/01/2002 | 8.63 | Payment | $495.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $495.00 | $86,559.10 | | |
| 05/20/2002 | 8.63 | Ltch Assess | $34.75 | $34.75 | | | | | | | $86,559.10 | | |
| 06/20/2002 | 8.63 | Ltch Assess | $34.75 | $34.75 | | | | | | | $86,559.10 | | |
| 06/28/2002 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $895.00 | $86,559.10 | | |
| 07/02/2002 | 8.63 | Payment | $895.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $895.00 | $86,559.10 | | |

**Minnifield 0099**

⑥

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2 | 8.63 | Lich Assess | $34.75 | $34.75 | | | | | | | 0 | | | |
| 08/30/200 2 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $86,559.1 0 | | | |
| 09/20/200 2 | 8.63 | Lich Assess | $34.75 | $34.75 | | | | | | | $86,559.1 0 | | | |
| 10/21/200 2 | 8.63 | Lich Assess | $34.75 | $34.75 | | | | | | | $86,559.1 0 | | | |
| 11/20/200 2 | 8.63 | Payment | $2,318.25 | | $233.2 6 | $0.00 | $0.00 | $0.00 | $228.45 | $1,856.5 5 | $86,329.6 5 | | | |
| 11/20/200 2 | 8.63 | Exp Debit | $135.00 | | | | | | $135.00 | | $86,329.6 5 | | | |
| 12/20/200 2 | 8.63 | Lich Assess | $34.75 | $34.75 | | | | | | | $86,329.6 5 | | | |
| 12/24/200 2 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $11.46 | $683.54 | $86,318.1 9 | | | |
| 12/30/200 2 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $574.39 | $120.61 | $85,743.8 0 | | | |
| 02/10/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $85,743.8 0 | | | |
| 03/03/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $132.04 | $562.96 | $85,611.7 6 | | | |
| 04/08/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $85,611.7 6 | | | |
| 06/05/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $133.97 | $561.03 | $85,477.7 9 | | | |

.2003

**Minnifield 0100**



2004

| | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ...........3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $198.15 | $496.85 | .....9 | |
| 09/05/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $1.02 | $693.98 | $85,142.2 7 | |
| 10/08/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $40.69 | $654.31 | $85,101.5 8 | |
| 11/05/200 3 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $140.09 | $554.91 | $84,961.4 9 | |
| 12/02/200 3 | 8.63 | Payment | $664.75 | | $34.75 | $0.00 | $0.00 | $0.00 | $295.79 | $534.21 | $84,665.7 0 | |
| 01/07/200 4 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $84,666.7 0 | |
| 01/30/200 4 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $228.28 | $466.72 | $84,437.4 2 | |
| 03/02/200 4 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $67.49 | $627.51 | $84,369.9 3 | |
| 04/07/200 4 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $84,369.9 3 | |
| 05/04/200 4 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $155.57 | $539.43 | $84,214.3 6 | |
| 05/04/200 4 | 8.63 | Pay Rev | $695.00 | $0.00 | | $0.00 | $0.00 | $0.00 | ($155.57) | ($539.43) | $84,369.9 3 | |
| 06/20/200 4 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,369.9 3 | |
| 08/01/200 4 | 8.63 | Payment | $695.00 | | $28.00 | $0.00 | $0.00 | $0.00 | $0.00 | $667.00 | $84,369.9 3 | |

Minnifield 0101

⑧

| Date | | Type | | | | | | | | | | Balance | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 4 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | | 3 | | |
| 07/30/2004 | 8.63 | Payment | $695.00 | | $28.00 | $0.00 | $0.00 | $0.00 | $0.00 | $667.00 | $84,369.93 | | | |
| 08/20/2004 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,369.93 | | | |
| 09/01/2004 | 8.63 | Payment | $695.00 | | $28.00 | $0.00 | $0.00 | $0.00 | $0.00 | $667.00 | $84,369.93 | | | |
| 09/20/2004 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,369.93 | | | |
| 09/30/2004 | 8.63 | Payment | $695.00 | | $28.00 | $0.00 | $0.00 | $0.00 | $0.00 | $667.00 | $84,369.93 | | | |
| 10/20/2004 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,369.93 | | | |
| 11/16/2004 | 8.63 | Payment | $695.00 | | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $695.00 | $84,369.93 | | | |
| 11/22/2004 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,369.93 | | | |
| 12/03/2004 | 8.63 | Payment | $695.00 | | $56.00 | $0.00 | $0.00 | $0.00 | $0.00 | $639.00 | $84,369.93 | | | |
| 12/20/2004 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,369.93 | | | |
| 12/31/2004 | 8.63 | Payment | $695.00 | | $28.00 | $0.00 | $0.00 | $0.00 | $74.39 | $592.61 | $84,295.54 | | | |
| 01/20/2005 | 8.63 | Ltch Assess | $28.00 | $28.00 | | | | | | | $84,295.54 | | | |

2005

**Minnifield 0102**