# EXHIBIT A

## NOTE, SECURITY AGREEMENT AND DISCLOSURE STATEMENT

Installment - Pre-Computed ___ X Installment - Simple ___ Single Payment

SouthTrust Bank, National Association
P.O. Box 83837
Birmingham, AL 35283-0837
Birmingham, Alabama, AUGUST 10, 1998

WARREN MINNIFIELD
Borrower's Name
Borrower's Name
619 LAFAYETTE WAY
Street Address of Residence and Mailing Address
ROANOKE RANDOLPH AL 36274
City County State Zip

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid when you have made all payments as scheduled. |
|---|---|---|---|
| 8.63 % | $ 104,804.41 | $ 88,896.70 | $ 193,701.11 |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 179 | $695.00 | MONTHLY beginning 09/10/98 |
| 1 | $69,296.11 | Final payment due 08/10/13 |

Insurance
Credit life insurance and credit disability insurance are not required to obtain credit and will not be provided unless you sign below and agree to pay the additional cost.

| Type | Premium | | |
|---|---|---|---|
| Credit Life-one insured | $ ____ Term: ____ months | I want credit life insurance. | Signature 1 |
| Credit Life-two insureds | $ ____ Term: ____ months | I want credit life insurance. | Signature 2 |
| Credit Disability | $ ____ Term: ____ months | I want credit disability insurance. | Signature |
| Credit Life and Disability | $ ____ Term: ____ months | I want credit life and disability insurance. | Signature |

You may obtain property insurance from anyone you want that is acceptable to SouthTrust Bank. If you get the insurance from SouthTrust Bank, you will pay $ n/a for ____ months' coverage.

Demand Feature: (Check if applicable)

☐ This obligation is payable on demand and all disclosures are based on an assumed maturity of one year. ☐ This obligation has a demand feature.

Security: You are giving a security interest in:

☐ The goods or property being purchased. ☒ Other Property (Brief Description): REAL ESTATE

Your deposit accounts and other rights to payment of money from SouthTrust Bank, other than Individual Retirement Accounts, also secure this loan. Collateral securing other loans with SouthTrust Bank may also secure this loan. Filing Fee: $ 151.20

Late Charge: (Check if Applicable)

☒ If payment is late 10 days or more, you will be charged 5 % of the amount which is late, but not less than $ .50 or more than $ 100.00.

Prepayment: If you pay off early, you:

☐ may ☒ will not have to pay a penalty.
☐ may ☐ will not be entitled to a refund of part of the finance charge.

Assumption: (Check if applicable) Someone buying your house

☐ may, subject to conditions, assume the remainder of the mortgage on the original terms.
☐ cannot assume the remainder of the mortgage on the original terms.

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

0102770160605

Itemization of the Amount Financed of ........ $ 88,896.70

$ 50,849.53 Amount given directly to you
$ 37,150.47 Amount paid on your account
Amount paid to others on your behalf:
$ ____ to insurance company for credit life insurance
$ ____ to insurance company for credit disability insurance
$ ____ to insurance company for property insurance

Amount paid to others on your behalf (cont'd)
$ 151.20 filing fees and taxes
$ ____ certificate of title fee
$ ____ to credit reporting agencies
$ 300.00 to appraisers
$ 439.00 to ATTORNEY FEES-OLIVER KITCHENS
$ 6.50 to Initial Flood Certification Fee
$ 890.00 Prepaid Finance Charge

BA 31462 SouthTrust Corporation (Rev. 1/92)

Page 1 of 4 WM Initials

Minnifield 0029

1. **Meaning of Terms; Parties.** As used in th[illegible]te, Security Agreement and Disclosure Statement, except [illegible] the context clearly requires a different meaning, the words you and your mean the Borrower, and [illegible] there is more than one Borrower, they mean each of the[illegible] and also all of them; we, our and us refer to SouthTrust Bank, National Association [illegible]ors and assigns, and also to any subsequent holder of this Note; and this Note means this Note, Security Agreement and Disclosure Statement.

2. **Payment Schedule.** The subparagraph (A, B, or C) marked below applies to this Note:

☐ A. You promise to pay to us or our order the sum of ______________ Dollars ($__________) in __________ payments of $__________ each and 1 final payment of $__________. The first payment is due on __________, and another such payment is due on the same day of each __________ thereafter until __________ at which time the final payment and all other sums then owed under this Note will be due. If any scheduled payment is late ______ days or more, you agree to pay a Late Charge of ______% of the amount of the payment which is late, but not less than $______ or more than $______.

☒ B. You promise to pay to us or our order the principal sum of EIGHTY-NINE THOUSAND SEVEN HUNDRED EIGHTY-SIX AND 70/100 Dollars ($ 89,786.70 ) together with interest on the unpaid balance of said sum at the rate of 8.50 % per annum until maturity. You agree to pay said sum, the interest thereon, and credit life insurance premiums which are not a part of the Amount Financed, if any, in 179 monthly payments of $ 695.00 each and 1 final payment of the unpaid balance of the principal sum, all accrued but unpaid interest thereon, and all other sums, if any, then owed under this Note. The first payment is due on SEPTEMBER 10, 1998, and another payment is due on the same day of each month thereafter until AUGUST 10, 2013 at which time the final payment will be due. If a Late Charge is shown to be applicable to this Note in the Late Charge section of the Disclosure Statement above, and if any scheduled payment is late 10 days or more, you agree to pay a Late Charge of 5 % of the amount of the payment which is late, but not less than $ 10 or more than $ 100.00. We will apply your payments first to accrued interest; then to credit life insurance premiums which are not a part of the Amount Financed, if any, and then to other sums owed under this Note in such order as we elect or as is required by law. Interest continues to accrue on the unpaid balance of the principal sum until we actually receive your payment.

☐ C. __________, you promise to pay to us or our order the principal sum of __________ Dollars ($__________) together with interest on said sum at the rate of ______% per annum until maturity. Accrued interest on the principal sum shall be paid at maturity and as follows: __________

If the Amount Financed shown in the Disclosure Statement above is $__________ or more, and if payment of the principal sum is late ______ days or more, you agree to pay a Late Charge of __________ of the principal amount which is late, but not less than $______ or more than $______.

3. **Interest Surcharge; Loan Fee; Interest Accrual; Interest After Maturity; Late Charge Assessment.** An interest surcharge of $ N/A ☐ has been included in the amount of this Note and paid from the loan proceeds. ☐ was paid by cash or check at closing. If subparagraph B or C of paragraph 2 is checked, interest begins to accrue on the principal sum on the date of this Note unless a different accrual date is shown here: __________ and shall accrue after maturity on the entire unpaid sum due under this Note (principal and, to the extent permitted by law, unpaid interest at final maturity of this Note) at the rate provided above for interest to maturity, or the maximum rate allowed by law, whichever is less. If subparagraph A of paragraph 2 is checked, you agree to pay interest on the unpaid balance of this Note after scheduled maturity of the final payment at the per annum rate of 2% in excess of the average of the prime rates of the three largest banks in New York City as of the close of business on the third business day before the date of this Note, or the maximum rate allowed by law, whichever is less. We will not levy or collect a Late Charge on any payment when the only delinquency is attributable to Late Charges assessed on earlier installments if the payment is otherwise a full payment for the applicable period and is paid on or before the tenth day after its due date.

4. **Security Interest.** If any property is described under the heading "Description of Property" below, the following provisions of this paragraph and all of the provisions of paragraphs 18 through 29 on the following pages also apply to this transaction. As security for the payment and performance of all of your obligations under this Note, including payment of all sums set forth above, costs of collection after default, and all sums hereafter advanced or paid and all obligations incurred by us under any provision of this Note, you hereby assign and transfer to us, and grant to us a security interest in, the property described below, all accessories and optional equipment now or within 20 days hereafter installed in or affixed to that property, and all accessions at any time hereafter installed in or affixed to that property. (All of the property, accessories, and accessions described above and below are sometimes referred to in this Note as "the Collateral"):

| Description of Property | New or Used | Year | Make | Model | Vehicle License No. | Serial No. or VIN | Primary Use of Collateral |
|---|---|---|---|---|---|---|---|
| REAL ESTATE IN RANDOLPH COUNTY CONSISTING OF HOUSE AND 1.5 ACRES AS BETTER DESCRIBED IN MORTGAGE TO SOUTHTRUST BANK, N.A. DATED 08-10-98. | | | | | | | ☒ Personal, Family or Household<br>☐ Business<br>☐ Agriculture |

together with all proceeds of the Collateral, including the proceeds of all insurance on the Collateral, and all rebates of unearned premiums on any insurance you may have on the Collateral at any time and on any insurance purchased under Paragraph 18 of this Note. You agree that our security interest in all personal property which is a part of the Collateral also secures any other obligation you now or hereafter have to us, including any loans we make to you in the future. The preceding sentence does not apply, however, to the extent that the Collateral consists of "household goods" as that term is defined in 12 C.F.R., Section 227.12(d).

CO-OWNER'S SECURITY AGREEMENT

I am the owner or part-owner of the Collateral described in paragraph 4, above. In consideration of the loan to the Borrower or the renewal of a previous loan to the Borrower evidenced by this Note, I hereby grant to the above-named bank a security interest in the Collateral in accordance with the terms of paragraph 4, above, and I agree to all of the terms and conditions of this Note, Security Agreement, and Disclosure Statement, except that I will not be obligated to make any payment of money or perform any obligation provided for in this Note. I agree that this Security Agreement will also apply to any extension or renewal of this Note without requirement that I sign a separate security agreement at the time the extension or renewal is made or consent to the extension or renewal.

X ______________________

FOR BANK USE ONLY

ACCT. NO. 1022737605

NOTE NO. ______

DUE DATE AUGUST 10, 2013

BY SIGNING BELOW YOU AGREE TO ALL OF THE TERMS AND CONDITIONS HEREIN AND ON THE FOLLOWING PAGES, ACKNOWLEDGE THAT YOU HAVE RECEIVED A COMPLETED COPY OF THIS NOTE ON THE DATE SHOWN ABOVE, AND ACKNOWLEDGE THAT THIS NOTE IS INTENDED TO BE A CONTRACT UNDER SEAL.

CAUTION: IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.

X [signature] (L.S.)
Borrower's Signature:
WARREN MINNIFIELD

X ______________________ (L.S.)
Borrower's Signature (If signing as Cosigner, see Notice to Cosigner on Page 4)

X ______________________ (L.S.)
Payment Guaranteed (See Guaranty Agreement and Notice to Cosigner on Page 4)

NOTICE: SEE PAGES 3 AND 4 FOR ADDITIONAL TERMS.

LOG #

VOL 357 PAGE 97

**REAL ESTATE MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT**

| Mortgagors (last name first): | Mortgagee: |
|---|---|
| MINNIFIELD, WARREN | SouthTrust Bank, National Association |
| MINNIFIELD, EMMA L. | |
| Stevens, Jeanetta Minnifield | |
| 619 LAFAYETTE HWY (Mailing Address) | P.O. Box 83837 (Mailing Address) |
| ROANOKE, AL 36274 (City, State, Zip) | Birmingham, AL 35283-0837 (City, State, Zip) |

14.50
3.00
134.70
152.20

*This instrument was prepared by:*

SOUTHTRUST BANK, N.A.,
P. O. BOX 1265
ROANOKE, AL 36274

THE STATE OF ALABAMA

RANDOLPH County

**KNOW ALL MEN BY THESE PRESENTS:** That whereas

WARREN MINNIFIELD, AND WIFE, EMMA L. MINNIFIELD and Jeanetta Minnifield Stevens

have become justly indebted to SouthTrust Bank, National Association

with offices in Birmingham, Alabama, (together with its successors and assigns, hereinafter called "Mortgagee" in the sum of EIGHTY-NINE THOUSAND SEVEN HUNDRED EIGHTY-SIX AND 70/100 Dollars ($ 89,786.70 )

together with interest thereon, as evidenced by a promissory note or notes of even date herewith.

[Complete the following if term of note(s) is more than 20 years] The final scheduled maturity date of such note(s) is ____________, ____________.

NOW, THEREFORE, in consideration of the indebtedness described above and other valuable consideration to the undersigned, the receipt and sufficiency of which are hereby acknowledged, and in order to secure the payment and performance of the indebtedness described above, any extensions, renewals, modifications and increases thereof and substitutions therefor and all interest thereon, all sums advanced by Mortgagee pursuant to the terms of this mortgage, and all other indebtedness (including future loans and advances) now or hereafter owed to Mortgagee by any of the above-named or by any of the undersigned, whether such indebtedness is primary or secondary, direct or indirect, contingent or absolute, matured or unmatured, joint or several, and otherwise secured or not (all of the foregoing being sometimes referred to collectively in this mortgage as the "secured indebtedness"), and to secure compliance with all the covenants and stipulations hereinafter contained, the undersigned

WARREN MINNIFIELD, AND WIFE, EMMA L. MINNIFIELD and Jeanetta Minnifield Stevens

(whether one or more, hereinafter called "Mortgagors") do hereby grant, bargain, sell, convey, assign, grant a security interest in, transfer and warrant unto Mortgagee the following described real property situated in RANDOLPH County, State of Alabama, viz:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION

together with all present and future leases and subleases thereof and of any part thereof, all rents, profits, royalties, and other income and revenues thereof and all rights, privileges, easements, tenements, interests, improvements and appurtenances thereunto belonging or in anywise appertaining thereto, including any after-acquired title and easements and all rights, title and interest now or hereafter owned by Mortgagors in and to all buildings and improvements, storm and screen windows and doors, gas, steam, electric, solar and other heating, lighting, ventilating, air-conditioning, refrigerating and cooking apparatus, elevators, plumbing, sprinklers, smoke, fire and intrusion detection devices, trees, shrubs and flowers, and other equipment and fixtures now or hereafter attached or appertaining to said premises, all of which shall be deemed to be real property and conveyed by this mortgage (all of the foregoing real property, equipment, and fixtures being sometimes hereinafter called the "mortgaged property");

And together will all building materials, household appliances, equipment, fixtures and fittings of every kind or character now owned or hereafter acquired by Mortgagors, or any of them, located, whether permanently or temporarily, on the mortgaged property or on any other real property, which are or shall be purchased by Mortgagors, or any of them, for the purpose, or with the intention, of making improvements on the mortgaged property or to the premises located on said property. The personal property herein transferred includes, without limitation, all lumber, bricks, building stones, building blocks, sand, cement, steel, roofing materials, paint, doors, windows, storm doors, storm windows, glass, nails, wires and wiring, hardware, plumbing and plumbing fixtures, heating, ventilating and air conditioning equipment and appliances, electrical and gas equipment and appliances, pipes and piping, ornamental and decorative fixtures, trees, shrubs and flowers, and in general all building materials, equipment, appliances and plants of every kind and character used or useful in connection with improvements to real property, provided, that to the extent the personal property described above consists of "household goods", as that term is defined in 12 C.F.R. Section 227.12 (d), Mortgagee's security interest in those household goods is limited to a purchase money security interest; and provided further, that if the mortgaged property includes the principal dwelling of any Mortgagor who is an individual, and if the securing by this mortgage of any particular other or future indebtedness would give rise to a right of rescission under 15 U.S.C. Section 1635 or the regulations promulgated thereunder, such other or future indebtedness will be secured by this mortgage only if all required notices of the right of rescission were timely and properly given.

SA24922 5/92

For the purpose of further securing the payment of all of the secured indebtedness Mortgagors represent, warrant, covenant and agree with Mortgagee, its successors and assigns, as follows:

1. That they are lawfully seized in fee and possessed of the mortgaged property except as otherwise expressly stated herein, they have a good right to convey the same as aforesaid, they will warrant and forever defend the title of Mortgagee to the mortgaged premises against the lawful claims of all persons whomsoever, and the mortgaged property is free and clear of all encumbrances, easements and restrictions not herein specifically mentioned.

2. That they will pay when due all taxes, assessments, and other liens or mortgages taking priority over this mortgage. If Mortgagors' interest in the mortgaged property or any part thereof is other than a freehold estate, Mortgagors agree to pay all rents and perform all covenants due to be paid and performed under the lease or other agreement whereby such interest is created exactly when due, to maintain such lease or agreement in full force and effect in accordance with its terms, and not to attempt to amend or terminate the lease or agreement without Mortgagee's prior written consent. If the mortgaged property or any part thereof is a unit in a condominium or a planned unit development, Mortgagors shall pay and perform all of Mortgagors' obligations under the declaration or covenants creating or covering the condominium or planned unit development, the bylaws and regulations of the condominium or planned unit development, and all constituent documents.

3. That they will keep the buildings and other improvements now or hereafter located on the mortgaged property and all building materials, appliances, equipment, fixtures and fittings now or hereafter located on the mortgaged property and the other personal property described above continuously insured against loss or damage, including loss by fire (including so-called extended coverage), wind and such other hazards (including flood and water damage) as Mortgagee may specify from time to time, and including builder's risk coverage if this is a construction mortgage, with loss, if any, payable to Mortgagee under a standard mortgagee's clause providing at least 30 days notice to Mortgagee before cancellation or lapse of such insurance, and will deposit with Mortgagee policies of such insurance or, at Mortgagee's election, certificates thereof, and will pay the premiums therefor as the same become due. Mortgagors may provide such insurance through an existing policy or a policy or policies independently obtained and paid for by Mortgagors. Mortgagee may, for reasonable cause, refuse to accept any policy of insurance offered or obtained by Mortgagors. Mortgagors shall give immediate notice in writing to Mortgagee of any loss or damage to the mortgaged property from any cause whatever. If Mortgagors fail to keep said property insured as above specified, Mortgagee may insure said property for its insurable value or the unpaid balance of the secured indebtedness against loss by fire, wind and other hazards for the benefit of Mortgagors and Mortgagee or for the benefit of Mortgagee alone, at Mortgagee's election. The proceeds of all insurance on the mortgaged property and the other personal property described above shall be paid by the insurer to Mortgagee, which is hereby granted full power to settle and compromise claims under all policies, to endorse in the name of Mortgagors any check or draft representing the proceeds of any such insurance, and to demand, receive and give receipt for all sums becoming due thereunder. Insurance proceeds collected by or paid to Mortgagee may be credited on the indebtedness secured by this mortgage, less costs of collection, or may be used in repairing or reconstructing the improvements on the mortgaged property, at Mortgagee's election. No crediting of insurance proceeds to the secured indebtedness and no application of insurance proceeds to repairing or reconstructing improvements on the mortgaged property shall extend or postpone the due date of any scheduled payments of the secured indebtedness or reduce the amount of such payments. In the event of a dispute with any insurer regarding coverage, the amount of any loss, or the like, Mortgagee may bring an action or join in any action against the insurer, at Mortgagee's election. If Mortgagee elects not to bring an action or to join in any action and Mortgagors elect to pursue any claim or action against the insurer, Mortgagors agree to do so solely at their expense, and Mortgagors waive any right to require Mortgagee to join in the claim or action or to charge Mortgagee with any part of the expenses of the claim or action even if Mortgagee benefits from it.

4. That commencing upon written request by Mortgagee and continuing until the secured indebtedness is paid in full, Mortgagors will pay to Mortgagee concurrently with, and on the due dates of, payments on the secured indebtedness a sum equal to the ground rents, if any, next due on the mortgaged property, plus the premiums that will next become due and payable on policies of fire and other hazard insurance covering the mortgaged property, plus water rents, fire district charges, taxes and assessments next due on the mortgaged property (all as estimated by Mortgagee), less any sums already paid to Mortgagee therefor, divided by the number of months or other payment periods to elapse before one month or payment period prior to the date when such ground rents, premiums, water rents, fire district charges, taxes and assessments will become due, such sums to be held by Mortgagee to pay said ground rents, premiums, water rents, fire district charges, taxes and assessments. All amounts mentioned in the preceding sentence and the amounts scheduled to be paid on the secured indebtedness shall be added together and the aggregate amount thereof shall be paid by Mortgagors each month or other payment period in a single payment to be applied by Mortgagee to the following items in the order set forth: (a) ground rents, taxes, water rents, fire district charges, assessments, fire and other hazard insurance premiums; (b) interest on the secured indebtedness; and (c) the balance, if any, shall be applied toward the payment of the principal sum of the secured indebtedness. Any excess funds accumulated under this paragraph after payment of the items herein mentioned shall be credited in calculating the monthly or other periodic payments of the same nature required hereunder in the subsequent year; but if the actual amount of any such item shall exceed the estimate therefor, Mortgagors shall forthwith pay the deficiency upon demand. If the mortgaged property is sold under foreclosure or is otherwise acquired by Mortgagee after default, any remaining balance of the accumulations under this paragraph shall be credited to the principal of the secured indebtedness as of the date of the foreclosure sale or as of the date the property is otherwise acquired.

5. That they will take good care of the mortgaged property and the personal property described above and will not commit or permit any waste thereon or thereof, and they will keep the same repaired and at all times will maintain the same in as good condition as it now is, reasonable wear and tear alone excepted. If Mortgagors fail to make repairs to the mortgaged property, Mortgagee may make such repairs at Mortgagors' expense. Mortgagee, its agents and employees, may enter the mortgaged property and any improvements thereon at any reasonable time for the purpose of inspecting or repairing such improvements.

6. That upon failure of Mortgagors to perform any covenant herein made, Mortgagee shall have the right and power, at its election, to perform such act on behalf of Mortgagors, but Mortgagee shall have no duty to perform such act or to give notice of its intention not to perform, whether or not it has performed or given notice of its intention not to perform on one or more previous occasions. All amounts expended by Mortgagee for insurance or for the payment of taxes or assessments or to discharge liens or mortgages on the mortgaged property or other obligations of Mortgagors or to make repairs to the mortgaged property or any improvements thereon shall become a debt due Mortgagee, shall be payable at once without demand upon or notice to any person, shall bear interest at the rate of interest payable on the principal sum of the note described above, or if no such rate of interest is specified in the note or if the rate specified would be unlawful, at the rate of 8% per annum from the date of payment by Mortgagee until date paid by Mortgagors, and such debt and the interest thereon shall be secured by this mortgage. Upon failure of Mortgagors to reimburse Mortgagee for all amounts so expended, at the election of Mortgagee and with or without notice to any person, Mortgagee may declare the entire secured indebtedness to be due and payable and may foreclose this mortgage as hereinafter provided or as provided by law.

7. That no delay or failure of Mortgagee to exercise any option to declare the maturity of any debt secured by this mortgage shall be deemed a waiver of the right to exercise such option or to declare such forfeiture either as to past, present or future defaults on the part of Mortgagors, and that the procurement of insurance or payment of taxes or other liens or assessments or performance of other obligations of Mortgagors by Mortgagee shall not constitute or be deemed to be a waiver of the right to accelerate the maturity of the secured indebtedness by reason of the failure of Mortgagors to procure such insurance or to pay such taxes, liens, or assessments or perform such other obligations, it being agreed by Mortgagors that no terms or conditions contained in this mortgage can be waived, altered or changed except by a writing signed by Mortgagee.

8. That those Mortgagors who are obligated to pay the secured indebtedness will well and truly pay and discharge such indebtedness as it shall become due and payable, including the note or notes described above, and any extensions, renewals or increases thereof, and any other notes or obligations of such Mortgagors to Mortgagee, whether now or hereafter incurred, provided that, notwithstanding any provision of this mortgage to the contrary, those Mortgagors who are not obligors on any of the secured indebtedness make the conveyances, grants, representations and warranties herein made by Mortgagors, but are not personally obligated to pay any sum of money or perform any affirmative act under this mortgage.

9. That whether or not default has been made in the payment of any of the secured indebtedness or in the performance of any of the terms or conditions of this mortgage, Mortgagee may give notice of the assignment of rents, royalties, income and profits herein made and may proceed to collect the rents, royalties, income and profits from the mortgaged property, either with or without the appointment of a receiver, at Mortgagee's election (to which appointment Mortgagors hereby consent). Prior to any such notification by Mortgagee, Mortgagors shall have a limited license, terminable at will by Mortgagee, to collect such rents and other payments and to apply the same in whole or in part to the payment of the secured indebtedness as and when due. Any rents, royalties, income and profits collected by Mortgagee prior to foreclosure of this mortgage, less the costs of collecting the same, including any real estate or property management commissions and attorney's fees incurred, shall be credited first to advances made by Mortgagee pursuant to the terms of this mortgage and the interest thereon, then to interest due on the secured indebtedness, and the remainder, if any, shall be held as cash collateral for the secured indebtedness or applied toward the payment of the principal sum of the secured indebtedness, at Mortgagee's election.

10. That, unless Mortgagee's written consent has been obtained in advance, (a) they will not cause or allow possession of the mortgaged property to be in any other person or entity to the exclusion of Mortgagors, (b) they will not cut, remove, sell or contract to sell any standing timber from the mortgaged property, and (c) they will not sell, assign, transfer, convey, lease, or subject all or any part of the mortgaged property or any oil, gas or mineral rights or other interest therein, excluding only (i) the creation of a lien or encumbrance expressly subordinate to this mortgage, (ii) the creation of a purchase money security interest for household appliances, or (iii) a transfer by devise, descent or by operation of law upon the death of a joint tenant. Mortgagee may condition its consent to any such transfer of possession of, or an interest in, the mortgaged property upon the obligors' or transferee's agreeing to pay a greater rate of interest on all or any part of the secured indebtedness or to adjust the payment schedule of all or any part of the secured indebtedness, and upon Mortgagee's approval of the creditworthiness of the transferee and the transferee's payment to Mortgagee of a reasonable transfer or assumption fee.

11. That, except as otherwise expressly disclosed by Mortgagors to Mortgagee in writing on the date of this mortgage, no Hazardous Substance (as defined below) has been spilled, released, discharged, or disposed of on or under the mortgaged property by Mortgagors or, to the best of Mortgagors' knowledge, by any third party or any predecessor in interest or title to Mortgagors; no underground storage tanks, whether in use or not in use, are located in, on or under any part of the mortgaged property; Mortgagors and the mortgaged property are in compliance with all applicable local, state and federal environmental laws and regulations, and Mortgagors will at all times cause the mortgaged property to continue to be in compliance therewith; no notice has been received by Mortgagors from any governmental authority or any individual or entity claiming violation of any environmental protection law or regulation, or demanding compliance with any environmental protection law or regulation, or demanding payment, indemnity, or contribution for any environmental damage or injury to natural resources relating in any way to the mortgaged property, and Mortgagors will notify Mortgagee promptly in writing if any such notice is hereafter received by Mortgagors; and any Hazardous Substance used or produced in Mortgagors' business will be used, produced, stored, and disposed of in strict compliance with all applicable environmental laws and regulations. Mortgagors will notify Mortgagee immediately if any Hazardous Substance is spilled, released or discovered on or under the mortgaged property, and Mortgagors will take or cause to be taken such remedial action and work as may be necessary to be performed on the mortgaged property in order to remedy such spilled, released or discovered Hazardous Substance and to obtain a certificate of remediation or other certificate of compliance from all applicable governmental authorities. Upon Mortgagee's request, Mortgagors will promptly obtain, at Mortgagors' expense, and deliver to Mortgagee an environmental inspection report or update of a previous report, in form acceptable to Mortgagee, prepared by a competent and reputable environmental engineer reasonably satisfactory to Mortgagee. As used herein, the term "Hazardous Substance" includes, without limitation, any asbestos, urea formaldehyde foam insulation, explosive, radioactive material, hazardous material, hazardous waste, hazardous or toxic substance, or related or unrelated substance or material which is defined, regulated, controlled, limited or prohibited in or by the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA) (42 U.S.C. Sections 9601 et. seq.), the Hazardous Materials Transportation Act (49 U.S.C. Sections 1801 et. seq.), the Resource Conservation and Recovery Act (RCRA) (42 U.S.C. Sections 6901 et. seq.), the Clean Water Act (33 U.S.C. Sections 1251 et. seq.), the Clean Air Act (42 U.S.C. Section 7401 et. seq.), the Toxic Substances Control Act (15 U.S.C. Section 2641 et. seq.), as any of the foregoing is now or hereafter amended, or in any other federal, state or local environmental law, ordinance, rule or regulation now or hereafter in effect.

12. That Mortgagors will indemnify and hold Mortgagee harmless from and against any and all loss, cost, damage, claim, liability and expense (including attorneys' fees and litigation expenses) incurred by Mortgagee on account of breach by Mortgagors of any representation, warranty or covenant set forth in paragraph 11, above, or Mortgagors' failure to perform any covenant or obligation under paragraph 11, or Mortgagors' or the mortgaged property's failure to comply fully with all environmental laws and regulations, or any other matter related to environmental conditions on, under or affecting the mortgaged property. This paragraph 12 shall survive payment of the secured indebtedness, termination of the other provisions hereof, and exercise by Mortgagee of the power of sale herein contained.

13. That if the "Construction Mortgage" box is marked on Page 1, this mortgage is a construction mortgage which secures an obligation incurred for the acquisition costs of the mortgaged property and/or the construction of an improvement on such property, and Mortgagors will perform and comply with the terms of any construction loan agreement made with Mortgagee with regard to such improvement.

14. That all of the covenants and agreements of Mortgagors herein contained shall extend to and bind their respective heirs, executors, administrators, successors and assigns, and that such covenants and agreements and all options, rights, privileges and powers herein given, granted or secured to Mortgagee shall inure to the benefit of Mortgagee and its successors and assigns. As used in this mortgage, the term "Mortgagors" also means "Mortgagors, or any of them;" the singular includes the plural, and vice versa; and the use of one gender includes all other genders. The obligations of Mortgagors hereunder are joint and several. The provisions of this mortgage and of the note or notes secured hereby are severable, and the invalidity or unenforceability of any provision of this mortgage or of any such note or notes shall not affect the validity and enforceability of the other provisions of this mortgage or of such note or notes. The remedies provided to Mortgagee herein are cumulative with the rights and remedies of Mortgagee under any other agreement, at law and in equity, and such rights and remedies may be exercised concurrently or consecutively. Time is of the essence with respect to every covenant contained in this mortgage. This mortgage also constitutes a financing statement, and a carbon or photostatic copy of this mortgage may be filed as a financing statement in any public office.

Minnifield 0025
Minnifield 0025

UPON CONDITION, HOWEVER, that if Mortgagors shall well and truly pay and discharge all the secured indebtedness (including, without limitation, all extensions, renewals and increases of the original indebtedness and all future advances) as the same shall become due and payable and shall in all things do and perform all acts and covenants by them herein agreed to be done or performed in strict accordance with the tenor and effect thereof, and if there is no outstanding commitment or agreement by Mortgagee to make advances, incur obligations or otherwise give value under any agreement, including, without limitation, agreements providing for future advances, open-end, revolving or other lines of credit, or letters of credit, then and in that event only this conveyance and the security interest herein granted shall be and become null and void (except the agreements of indemnity made in paragraph 12, on Page 2, which shall survive termination of this mortgage); but should default be made in the payment when due (whether as originally scheduled or upon acceleration of maturity) of the secured indebtedness or any part thereof or any renewals, extensions or increases thereof or any interest thereon or should default be made in the repayment of any sum expended by Mortgagee under the authority of any provision of this mortgage, or should the interest of Mortgagee in the mortgaged property or any of the personal property described above become endangered by reason of the enforcement of any lien or encumbrance thereon, or should a petition to condemn all or any part of the mortgaged property be filed by any authority, person or entity having power of eminent domain, or should any law, either state or federal, be passed imposing or authorizing the imposition of a specific tax upon this mortgage or the secured indebtedness or permitting or authorizing the deduction of any such tax from the principal or interest secured by this mortgage or by virtue of which any tax or assessment upon the mortgaged property shall be charged against the owner of this mortgage, or should at any time any of the covenants contained in this mortgage or in any note or other evidence of secured indebtedness be declared invalid or unenforceable by any court of competent jurisdiction, or if any of the Mortgagors is a corporation and should any owner of the voting stock of such corporation sell or otherwise transfer 5% or more of the outstanding voting stock of such corporation to any other person or entity, or if any of the Mortgagors is a partnership (general or limited) and should the partnership dissolve or should any general partner of such partnership withdraw, be replaced by the limited partners, die or become incompetent, or should Mortgagors fail to do and perform any other act or thing herein required or agreed to be done, then in any of said events the whole of the secured indebtedness, or any portion or part thereof which may at said date not have been paid, with interest thereon, shall at once become due and payable and this mortgage subject to foreclosure at the option of Mortgagee, notice of the exercise of such option being hereby expressly waived by Mortgagors, and Mortgagee shall have the right to enter upon and take possession of the mortgaged property and after or without taking such possession to sell the same (or such part or parts thereof as Mortgagee may from time to time elect to sell) at the front or main door of the courthouse of the County (or the division thereof) where said property, or any substantial and material part of said property, is located, at public outcry for cash, after first giving notice of the description of the property to be sold and the time, place and terms of such sale by publication once a week for three consecutive weeks prior to said sale in some newspaper published in the county or counties in which the property to be sold is located (or if no newspaper is published in any such county, then in a newspaper published in an adjoining county); and upon the payment of the purchase price, Mortgagee or the auctioneer at said sale is authorized to execute to the purchaser for and in the name of Mortgagors a good and sufficient deed to the property sold. Mortgagee shall apply the proceeds of any sale or sales under this mortgage as follows: First, to the expense of advertising, selling, preparing the property for sale, and conveying, including reasonable attorneys' fees (including attorneys' fees incurred by Mortgagee in connection with any proceeding seeking to enjoin the foreclosure of this mortgage or otherwise challenging the right of Mortgagee to foreclose this mortgage or sell any of the mortgaged property under this mortgage and attorneys' fees incurred in connection with any appeal); second, to the payment of any amounts that may have been expended or that may then be necessary to expend in paying insurance, taxes, assessments, and other liens and mortgages, and in making repairs, with interest thereon; third, to the payment of the secured indebtedness and interest thereon in such order as Mortgagee may elect, whether such debts shall or shall not have fully matured at the date of said sale; and fourth, the balance, if any, to be paid over to Mortgagors or to whomsoever then appears of record to be the owner of Mortgagors' interest in said property. Mortgagee may bid and become the purchaser of the mortgaged property at any sale hereunder. Mortgagors hereby waive any requirement that the mortgaged property be sold in separate tracts and agree that Mortgagee may, at its election, sell said property en masse regardless of the number of parcels hereby conveyed. The power of sale granted herein is a continuing power and shall not be fully exercised until all of the mortgaged property not previously sold shall have been sold or all of the indebtedness and other obligations secured hereby have been satisfied in full. And upon the occurrence of any such event described above, with respect to all of the mortgaged property which is personal property, Mortgagee shall have the rights and remedies of a secured party after default by its debtor under the Alabama Uniform Commercial Code, and shall have, without limitation, the right to take possession of any of the property herein transferred which is personal property and, with or without taking possession thereof, to sell the same at one or more public or private sales, or to proceed as to both the real property and personal property in accordance with Mortgagee's rights and remedies in respect of the real property, at the election of Mortgagee. At Mortgagee's request, Mortgagors agree to assemble such property and to make the same available to Mortgagee at such place as Mortgagee shall reasonably designate. Mortgagors hereby waive, to the extent permitted by law, any requirement of a judicial hearing and notice of the time and place of any public sale or of the time after which any private sale or other intended disposition of said property, or of any part thereof, will be held and agree that any required notice which cannot be waived shall be sufficient if delivered to Mortgagors or mailed to Mortgagors at the address set forth above, or such other address as Mortgagors shall have furnished to Mortgagee in writing for that purpose, not less than five days before the date of such sale or other intended disposition of said property.

☐ Construction mortgage. If this box is marked, this mortgage is a construction mortgage.

IN WITNESS WHEREOF, each of the undersigned has hereunto set his or her signature and seal or has caused this instrument to be executed (and its seal to be affixed hereto) by its officer(s) or partner(s) thereunto duly authorized, this 10TH day of AUGUST, 1998.

[signature] (L.S.)
Warren Minnifield

[signature] (L.S.)
EMMA L. MINNIFIELD

[signature] (L.S.)
Jeanetta Minnifield Stevens

_______________ (L.S.)

ATTEST: _______________ _______________

Its _______________ By _______________
(Corporate Seal)

Its _______________

(If recording privilege tax is not being paid at time of recording on the maximum sum which might be drawn under the secured indebtedness, complete the following pursuant to Ala. Code Section 40-22-2(2)b.)

I certify the amount of indebtedness presently incurred is $ 89,786.70. _______________
Authorized agent for Mortgagee

SA21922 5/92

Page 3 of 4 _______ Initials

Minnifield 0026

VOL 367 PAGE 10

THE STATE OF ALABAMA,

RANDOLPH COUNTY

INDIVIDUAL ACKNOWLEDGMENT

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that Warren Minnifield and wife, Emma L. Minnifield and Jeanetta Minnifield Stevens whose name are signed to the foregoing conveyance and who are known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, t he y executed the same voluntarily on the day the same bears date.

Given under my hand and official seal this 10th day of August, 1998.

(Notarial Seal)

Brenda Bellew
Notary Public
My Commission expires: 10-04-2000

THE STATE OF ALABAMA,

_______ COUNTY

INDIVIDUAL ACKNOWLEDGMENT

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _______ whose name _______ signed to the foregoing conveyance and who _______ known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, ___ he ___ executed the same voluntarily on the day the same bears date.

Given under my hand and offical seal this _______ day of _______, _______.

(Notarial Seal)

_______ Notary Public

THE STATE OF ALABAMA,

_______ COUNTY

CORPORATE ACKNOWLEDGMENT

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _______ whose name as _______ President of the _______, a corporation, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, ___ he, as such officer and with full authority, executed the same voluntarily for and as the act of said corporation.

Given under my hand and offical seal this _______ day of _______, _______.

(Notarial Seal)

_______ Notary Public

THE STATE OF ALABAMA,

_______ COUNTY

PARTNERSHIP ACKNOWLEDGMENT

I, the undersigned, a Notary Public in and for said County, in said State, hereby certify that _______ whose name as general partner of _______, a (general) (limited) partnership, is signed to the foregoing conveyance, and who is known to me, acknowledged before me on this day that, being informed of the contents of the conveyance, ___ he, as such general partner and with full authority, executed the same voluntarily for and as the act of said partnership.

Given under my hand and offical seal this _______ day of _______, _______.

(Notarial Seal)

_______ Notary Public

AFTER RECORDING PLEASE RETURN TO:

SouthTrust Bank, N.A.
P. O. Box 1265
Roanoke, AL 36274

STATE OF ALABAMA
RANDOLPH COUNTY
I hereby certify $124.90 has been paid on the within instrument as required by law.
Mack Diamond
Judge of Probate

REAL ESTATE MORTGAGE, SECURITY AGREEMENT AND FINANCING STATEMENT

THE STATE OF ALABAMA

Randolph COUNTY, Office of the Judge of Probate.

I hereby certify that the within mortgage was filed in this office for record on the August day of 31, 1998 at 11:30 o'clock A. M., and duly recorded in Mortgage 2 Volume 367, at page 07-11, and examined.

14.50
3.00

Mack Diamond
Judge of Probate

SA24922 5/92

Page 4 of 4 [initials] Initials

VOL 367 PAGE 11

EXHIBIT "A"

Begin at an iron stake that marks the NE corner of Section 2, Township 22 South, Range 12 East, of the Huntsville Meridian and run S 2 degrees 30' E along the section line between Sections 1 and 2 a distance of 197 feet to a stake on the southerly side of a blacktop street known as South Street at the point of beginning; thence N 49 degrees 01' W along the southerly side of South Street a distance of 455.6 feet to point of on the easterly right-of-way line of Old Highway 431; thence S 11 degrees 33' W along said right-of-way line a distance of 400 feet to a point; thence N 87 degrees 30' E a distance of 68 feet to a point; thence N 2 degrees 30' W a distance of 16.5 feet to a point; thence N 87 degrees 30' E a distance of 360 feet to the section line between Sections 1 and 2 a distance of 63 feet to the point of beginning. Together with all improvements located thereon.

Warren Minnifield

Warren Minnifield

Emma L. Minnifield

Emma L. Minnifield

Jeanetta Minnifield Stevens

Jeanetta Minnifield Stevens

Minnifield 0028