IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| JEANETTA SPRINGER and JACOB SPRINGER, | ) ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:17-cv-693-WHA-WC |
| | ) | |
| WELLS FARGO BANK, N.A., *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

On October 13, 2017, *pro se* Plaintiffs filed a complaint in the above-styled case.
*See* Doc. 1. Although not a model of clarity, it appears that Plaintiffs are alleging that their
due process rights were violated when Plaintiff Jeanetta Springer's property was
wrongfully foreclosed. *Id*. at 4. Plaintiffs further assert that the property was seized based
upon a state tax lien against Defendant Jacob Springer, who was not a party to the mortgage
on the property. *Id*. Based upon these allegations, Plaintiffs sue (1) Defendant Wells Fargo,
N.A. ("Wells Fargo"), the entity that held the foreclosure sale of Plaintiff Jeanetta
Springer's property, purchased the property at said foreclosure sale, and later filed a state-
court eviction action against both Plaintiffs to remove them from the property, *see* Doc.
11-1; (2) Defendant Sirote & Permutt ("S&P"), the entity that represented Defendant Wells
Fargo in state court when Defendant Wells Fargo pursued eviction of Plaintiffs,[1] *see* Doc.

---

[1] The undersigned notes that Plaintiffs' complaint, other than naming S&P as a Defendant, does not allege
the role Defendant S&P played in their harm alleged. *See* Doc. 1. However, after review of Defendant
S&P's motion to dismiss and the state-court record of the eviction proceeding regarding the property, it

7 at 7; and  (3) Defendant Vernon Barnett ("Barnett"), Commissioner of the Alabama Department of Revenue, because he purportedly seized Plaintiff Jeanetta Springer's property to satisfy Plaintiff Jacob Springer's personal tax liability, *see* Doc. 1; Doc. 13 at 1-2; Doc. 21-2; Doc. 21-3. Defendant S&P filed a Motion to Dismiss (Doc. 7) Plaintiffs' Complaint, as did Defendant Wells Fargo and Defendant Barnett (Docs. 11, 13). Plaintiffs responded in opposition to the motions (Doc. 21), and Defendants S&P and Wells Fargo replied (Docs. 23, 24). As the matter is fully briefed, it is ripe for recommendation to the District Judge.[2]

## I.   The Parties' Filings

### a.  *Plaintiffs' Complaint*

In Plaintiffs' form complaint, Plaintiffs provide the following statement of their claim:

> A foreclosure proceeding was held at Circuit Court of Randolph County, Alabama in order to pressure me, Jacob C. Springer, into signing a check issued by the Circuit Court of Randolph County, Alabama in another civil action. The first time this was attempted it was on 'deceased property[.]' The second time was because of the 'late payments[.]' The Evidence clearly showed the house had not reached foreclosure status[;] however, this evidence was not presented due to violation of due process. The house was unlawfully seized by the State of Alabama Department of Revenue by issuing a writ to seize the property for $998.69, even though I (Jacob Springer) never had an account with Wells Fargo Bank or had any dealings with them.

---

appears that Defendant S&P is named as a Defendant because it was hired by Defendant Wells Fargo to represent Defendant Wells Fargo during the eviction proceeding.

[2] The case was referred to the undersigned Magistrate Judge by the United States District Judge "for consideration and disposition or recommendation on all pretrial matters as may be appropriate." Doc. 4.

Doc. 1 at 4. Based upon these facts, Plaintiffs request that the court return the property to their possession and provide compensation for any damage or destruction that has occurred to the property since its foreclosure. *Id*. Plaintiffs also seek compensatory damages "for the violation of [their] Constitutional Rights and abuses by the state actors under color of law[,]" as well as punitive damages "to prevent this from happening again[.]" *Id*.

### b. *Defendants' Motions to Dismiss*

Defendant S&P argues that Plaintiffs' complaint should be dismissed because the court is without subject matter jurisdiction to entertain Plaintiffs' requested relief pursuant to the *Rooker-Feldman* abstention doctrine. Doc. 7 at 1, 7-8. Further, Defendant S&P argues that Plaintiffs fail to state any legally cognizable claim against it because Plaintiffs have failed to assert any wrongdoing by Defendant S&P other than naming it as a Defendant. *Id*. at 1, 4-7.

Defendant Wells Fargo argues that Plaintiffs' complaint should be dismissed because Plaintiffs have not alleged that Defendant Wells Fargo is a state actor subject to a due process violation, Doc. 11-1 at 4-6; because Plaintiffs' claims are barred by *res judicata*, *id*. at 6-8; and because the *Rooker-Feldman* doctrine bars this court's reconsideration of the judgment entered in the state-court eviction action, *id*. at 8-11.

Defendant Barnett, in his capacity as the Commissioner of the Alabama Department of Revenue, argues that Plaintiffs' complaint should be dismissed because Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine, Doc. 13 at 2-3; because the claims are barred by the Tax Injunction Act ("TIA"), 28 U.S.C. § 1341, and principles of comity, *id*. at 3-4; because of official capacity immunity under the Eleventh Amendment, *id*. at 4; and

because Plaintiffs have failed to state a claim for relief under Federal Rule of Civil Procedure 12(b)(6), *id*.

### c.   *Plaintiffs' Response in Opposition to the Motions*

Plaintiffs argue that Defendants' motions to dismiss should not be granted because (1) *res judicata* does not apply; (2) the *Rooker-Feldman* doctrine does not apply; and (3) a cause of action has been sufficiently alleged within the complaint. Doc. 21.

As to the doctrine of *res judicata*, Plaintiffs argue that "it does not apply in this case because the issues in this case and the case defendant refer[s] to are not identical." *Id*. at 2. Specifically, Plaintiffs assert that the previous state-court case was based upon whether "there was a lawful ejectment from the property owned by plaintiff Jeanetta Springer based on failure to her condition of payment of the mortgage of the house foreclosed upon" and whether "plaintiffs Jeanetta and Jacob Springer breached the contract/mortgage." *Id*. In the case before this court, Plaintiffs assert that the issue is "whether defendant Wells Fargo committed fraud by intentionally using a writ of garnishment aimed at Plaintiff Jacob Springer for Alabama State Taxes owed, knowing that Plaintiff Jacob Springer was NOT listed as a party to the mortgage" on the property. *Id*. Thus, Plaintiffs assert that, even though both cases involve ejectment, the issues are not the same to warrant application of *res judicata* because "one was based on the theory of mortgage foreclosure while the case at bar [is] based on garnishment." *Id*. at 2-3. Finally, Plaintiffs argue that, even if the issues are the same, *res judicata* would not apply because this case "involve[s] fraud on the part of the defendant." *Id*. at 3.

4

As to the *Rooker-Feldman* doctrine, Plaintiffs argue that it does not apply because "this is not an attempt to appeal whether or not the foreclosure and resulting ejectment due to the foreclosure was proper which was the issue in state court." *Id*. Instead, Plaintiffs assert that the alleged fraud forming the basis of this complaint "occurred on or about October 15, 2015," which is "well after the events that took place and was complained of in the cause of action the Defendant references." *Id*.

Finally, as to whether Plaintiffs have stated a claim for relief, Plaintiffs argue that they have stated the "material facts," which were that "the writ of garnishment against petitioner Jacob Springer did NOT authorize them to seize property owned only by petitioner Jeanetta Springer." *Id*. at 3-4. Plaintiffs continue that the

> Sheriff of Randolph County, Alabama relied on this misrepresentation and/or omission and seized Plaintiff Jeanetta Springer's Property. Additionally, [b]oth plaintiffs relied on the misrepresentation of defendant that they had authority to seize plaintiff Jeanetta Springer's Property based on Plaintiff Jacob Springer's debt, or in the alternative, both plaintiffs relied on the defendants['] intentional or reckless omission of the material fact they did not have the authority to seize plaintiff Jeanetta Springer's House to satisfy a tax debt owed by Jacob Springer when his name was NOT on the mortgage.

*Id*. at 4.

## II.    Motion to Dismiss Standard—Federal Rule of Civil Procedure 12(b)(6)

The purpose of a Rule 12(b)(6) motion is to test the facial sufficiency of a claimant's statement for relief. *Vernon v. Med. Mgmt. Assocs. of Margate, Inc.*, 912 F. Supp. 1549, 1553 (S.D. Fla. 1996). It is read alongside Fed. R. Civ. P. 8(a), which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." The rule is not designed to strike inartistic pleadings or to provide a more definite statement to answer

5

an apparent ambiguity, and the analysis of a 12(b)(6) motion is limited primarily to the face of the complaint and attachments thereto. *See* 5 Charles A. Wright & Arthur Miller, *Federal Practice and Procedure* § 1356 at 590–92 (1969) (Wright & Miller). While a complaint need not provide detailed factual allegations, the standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 958 (11th Cir. 2009); *Cobb v. State of Fla.*, 293 F. App'x 708, 709 (11th Cir. 2008). "[N]aked assertion[s]" bereft of "further factual enhancement" do not suffice. *Twombly*, 550 U.S. at 557. Indeed, a complaint's "factual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "Moreover, the facts supporting the claim must be 'consistent with the allegations in the complaint.'" *Wilchombe*, 555 F.3d at 958 (quoting *Twombly*, 550 U.S. at 562). On a motion to dismiss, a court should accept the non-conclusory allegations in the complaint as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Hughes v. Lott*, 350 F.3d 1157, 1159–60 (11th Cir. 2003) (internal citation omitted); *see also Cobb*, 293 F. App'x at 709; *Brown v. Budget Rent-A-Car Syst., Inc.*, 119 F.3d 922, 923 (11th Cir. 1997).

Courts therefore conduct a "two-pronged approach" when considering a motion to dismiss under Rule 12(b)(6). *Iqbal*, 556 U.S. at 679. A court should first ask whether the pleading properly asserts "well-pleaded factual allegations" or whether, instead, it merely asserts "'legal conclusions' [that are] not entitled to the assumption of truth." *Id.* at 679-680 (quoting *Twombly*, 550 U.S. at 555). If the complaint contains factual allegations that

6

are well pled, the court should assume their veracity and then move to the next step, asking whether the factual allegations "plausibly give rise to an entitlement to relief." *Id.* at 679. Thus, where the pleading asserts non-conclusory, factual allegations that, if true, would push the claim "across the line from conceivable to plausible," the motion to dismiss should be denied. *Id.* at 680 (quoting *Twombly*, 550 U.S. at 570) (quotation marks omitted).

## III.   Factual Background[3]

On August 10, 1998, Plaintiff Jeanetta Springer, along with her mother and father, executed a mortgage in favor of SouthTrust Bank ("SouthTrust") for property located at 619 Lafayette Highway, Roanoke, Alabama. *See* Doc. 21-1 at 1. Plaintiff Jacob Springer was not a party to that mortgage. *See id*. Defendant Wells Fargo is the successor-by-merger to SouthTrust.[4]

---

[3] The undersigned takes judicial notice of the documents filed in the eviction action before the state circuit court pertaining to the property at issue in this action. These documents include the original mortgage on the property, documents pertaining to the non-judicial foreclosure of the property, and documents pertaining to the eviction of Plaintiffs from the property. The undersigned also takes judicial notice of the documents filed by Plaintiffs regarding Plaintiff Jacob Springer's tax liability that were issued by the Alabama Department of Revenue. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). In the present case, accuracy of previous documents filed in the circuit court and from the Alabama Department of Revenue cannot be reasonably questioned; thus, judicial notice of such documents is proper. *See e.g.*, *Jones v. Alabama*, No. 14-0059-WS-C, 2015 WL 4104607, at *n.1 (S.D. Ala. July 8, 2015) ("At its discretion, the Court may take judicial notice of documents filed in other judicial proceedings, because they are public documents."); *Newcomb v. Brennan*, 558 F. 2d 825, 829 (7th Cir. 1977), *cert. denied*, (noting that "[a] court may take judicial notice of facts . . . in ruling on a motion to dismiss"); *Nila v. City of Aurora*, No. 89-C-4183, 1990 WL 16256, at *4 (N.D. Ill. 1990) (district court taking notice of adjudicative fact to determine motion to dismiss).

[4] The undersigned takes judicial notice of the merger between Wachovia and SouthTrust and the merger between Wells Fargo and Wachovia. *See, e.g., Wells Fargo Bank, Nat'l Ass'n v. KT Mech. Contractors, Inc.,* Civil Action No. 11-cv-850-AW, 2011 WL 5005994, at *1 (D. Md. Oct. 18, 2011).

On October 19, 2011, Defendant Wells Fargo held a non-judicial foreclosure sale of the aforementioned property and purchased the property at the sale. *See* Doc. 1 at 4; Doc. 11-3 at 2. On April 25, 2012, Defendant Wells Fargo filed a state-court eviction action against both Plaintiffs, who were occupants of the property at that time. *See* Doc. 11-3 at 2. Plaintiffs argued in that state-court eviction action that the foreclosure of the property was wrongful, but the Circuit Court of Randolph County entered judgment in favor of Defendant Wells Fargo, finding that the foreclosure sale was proper and that Defendant Wells Fargo was entitled to immediate possession of the property. *See* Doc. 11-3 at 7-11. Plaintiff appealed that judgment to the Alabama Court of Civil Appeals, which affirmed the trial court's decision without opinion on April 17, 2015. Doc. 7-1 at 5. Plaintiffs' petition for writ of certiorari to the Alabama Supreme Court was denied on June 12, 2015. *Id*.

In this case, Plaintiffs assert that the October 19th non-judicial foreclosure sale was conducted "in order to pressure" Plaintiff Jacob Springer "into signing a check issued by the Circuit Court of Randolph County [ ] in another civil action." Doc. 1 at 4. Plaintiffs also assert that the foreclosure was wrongful because, although the property "had not reached foreclosure status[,]" that evidence was "not presented [prior to the foreclosure] due to violation of due process." *Id*. Plaintiffs continue that the property was then seized by the State of Alabama Department of Revenue based upon a writ issued against Plaintiff Jacob Springer for his failure to pay individual liability taxes. *See id*. Plaintiffs provide two documents from the Alabama Department of Revenue ("ADR"): (1) a certificate of lien for taxes issued against Plaintiff Jacob Springer on February 3, 2015, and (2) a writ of

garnishment issued against Plaintiff Jacob Springer on September 25, 2015.[5] Doc. 21-2 at 1-2.

For purposes of the motion to dismiss, Plaintiffs' well-pleaded factual assertions that appear within Plaintiffs' complaint will be assumed true. The undersigned is not required to consider the mere legal conclusions asserted by Plaintiffs for purposes of this recommendation.

## IV.     Plaintiffs' Claims

Before wading into the analysis of the arguments presented by Defendants within their motions to dismiss Plaintiffs' complaint, the undersigned will first define the scope of the claims Plaintiffs present in their complaint. Clearly, Plaintiffs attempt to allege a due process claim. *See* Doc. 1 at 3 (noting that the complaint's basis for jurisdiction is "Due Process Guarantee in Amendment V; . . . Amendment XIV"). Plaintiffs also state that they are bringing a claim pursuant to "Amendment VII (Jury Trial in Civil Cases)." *See id*. However, the undersigned finds no factual predicate for such a claim. *See infra* Section III. Thus, as far as the claims explicitly alleged by Plaintiffs in the complaint, the undersigned concludes that Plaintiffs are asserting a claim for a violation of due process only.

---

[5] For the purpose of providing background information only regarding lien and garnishment procedures in Alabama, the undersigned supplies the following information. According to the Alabama Department of Revenue website, the Department issues an assessment when a taxpayer files a tax return without payment or when an audit resulting in a tax liability is not paid. *Alabama Department of Revenue,* https://revenue.alabama.gov/services/collections/ (last visited June 15, 2018). After the assessment becomes final and the appeal period expires, the assessment is transferred to the Department's collection services division. *Id*. If a final assessment is not paid in full or appealed, a lien will be recorded to protect the State's interest. *Id*. The lien encumbers property and places competing creditors on notice that the state claims an interest in the property. *Id*. The taxpayer is then unable to sell or transfer his property until the tax lien has been satisfied. *Id*. The Department may then proceed to issue a garnishment in order to satisfy the debt. *Id*.

As to claims which may be construed from Plaintiffs' complaint, the undersigned finds that a liberal construction of the pleading suggests that Plaintiffs may be attempting to assert (1) a claim for wrongful foreclosure; (2) a claim for wrongful ejectment; and (3) a state-law fraud claim. *See generally* Doc. 1 at 4.

There are two bases for construing a wrongful foreclosure claim from Plaintiffs' factual assertions. First, Plaintiffs' complaint states that "[a] foreclosure proceeding was held at Circuit Court of Randolph County, Alabama in order to pressure me, Jacob C. Springer, into signing a check issued by the Circuit Court of Randolph County, Alabama in another civil action." *Id*. This statement suggests that Plaintiffs may be attempting to assert that the foreclosure of Plaintiff Jeanetta Springer's property was wrongful due to coercion or fraud. Second, Plaintiffs' complaint states that, despite the fact that Plaintiff Jeanetta Springer's property "had not reached foreclosure status," the property was foreclosed because evidence showing that the property was not in delinquent status was not presented because of a violation of due process. *Id*. This statement suggests that Plaintiffs may be attempting to assert that the foreclosure of the property was wrongful due to a violation of due process. Accordingly, the undersigned recommends that a liberal construction of Plaintiffs' complaint suggests that Plaintiffs are attempting to assert a claim for wrongful foreclosure.

As to a claim for wrongful ejectment, Plaintiffs' complaint states that the property "was siezed [sic] by the State of Alabama Department of Revenue by issuing a writ to seize the property for $998.69, even though I (Jacob Springer) never had an account with Wells Fargo Bank or had any dealings with them." *Id*. The undersigned concludes that this

statement is insufficient, even under liberal standards, to assert a claim for wrongful ejectment. This is especially so considering there is no factual support for the claim within the complaint, nor do the judicially-noticed facts appearing outside of the complaint establish such support. As set out further below, Plaintiffs' argument that the property was seized because of a personal tax lien against Plaintiff Jacob Springer, who was not a party to the mortgage of the property makes little logical sense considering the timeline of events regarding the foreclosure sale and state-court eviction proceeding. Nonetheless, in response to Defendants' motions to dismiss, Plaintiffs attempt to advance the argument by stating:

> In this case, the issue is whether defendant Wells Fargo committed fraud by intentionally using a writ of garnishment aimed at Plaintiff Jacob Springer for Alabama State Taxes owed, knowing that Plaintiff Jacob Springer was NOT listed as a party to the mortgage[.] Defendant was only entitled to hold in trust for the Alabama Department of Revenue property Defendant held that belonged to plaintiff Jacob Springer ONLY[.] In an attempt to gain possession of Plaintiff Jeanetta Springer's House, Defendant treated the mortgage as one that was taken out by both plaintiffs knowing that was not the case. Therefore, while both cases involved ejectment, one was based on the theory of mortgage foreclosure while the case at bar was based on garnishment.

*See* Doc. 21 at 2-3.

From the documents provided by Plaintiffs regarding the supposed tax lien against Plaintiff Jacob Springer, a writ of garnishment was issued by ADR on September 25, 2015—*almost four years after the foreclosure sale of Plaintiff Jeanetta Springer's property occurred* and *approximately one year after the state circuit court entered judgment on the eviction action* against Plaintiffs.[6] *See* Doc. 11-6 at 33-34; Doc. 21-2 at 1. Thus, it is clear

---

[6] The state circuit court decision evicting Plaintiffs was affirmed by the Alabama Court of Civil Appeals on April 17, 2015—approximately five months prior to the September 25th writ of garnishment against Plaintiff Jacob Springer.

that Plaintiffs' argument basing their eviction from Plaintiff Jeanetta Springer's property on a garnishment issued against Plaintiff Jacob Springer for his failure to pay personal income taxes is incongruent with the timeline established by the asserted and/or judicially-noticed facts in the case. Accordingly, the undersigned recommends that this court should not construe Plaintiffs' complaint as asserting a claim for wrongful ejectment.[7]

Finally, as to a claim for fraud, Plaintiffs' complaint asserts generally that ADR issued a "writ to seize" the property mortgaged by Plaintiff Jeanetta Springer based upon $998.69 (which appears to be the personal tax liability of Plaintiff Jacob Springer that formed the basis of the garnishment against him) even though Plaintiff Jacob Springer was not a party to the mortgage of the property. The undersigned concludes that this statement is insufficient, even under liberal standards, to assert a claim for fraud. In Alabama, a claim for fraud requires: (1) the misrepresentation of a material fact; (2) that is made willfully to deceive, or recklessly without knowledge; (3) which was justifiably relied upon by the plaintiff under the circumstances; and (4) which caused damage as a proximate consequence. *McCullough v. Allstate Prop. & Casualty Ins. Co*., 2160497, 2018 WL 387844, at *5-6 (Ala. Civ. App. Jan. 12, 2018). In no way have Plaintiffs alleged these essential elements within their complaint. Indeed, the face of Plaintiffs' complaint does not suggest that *any* Defendant misrepresented a material fact willfully or recklessly. Nor does the complaint suggest that Plaintiffs—or anyone else—relied upon such a

---

[7] If this court were to determine that a claim for wrongful ejectment should be construed from Plaintiffs' complaint, the undersigned would note that the claim would be barred by the *Rooker-Feldman* doctrine because a determination that Plaintiffs were wrongfully evicted from the property would clearly overturn the state-court's judgment of eviction against Plaintiffs.

misrepresentation. Accordingly, the undersigned recommends that—even under a liberal construction of Plaintiffs' complaint—this court should not construe Plaintiffs' complaint as asserting a claim for fraud. [8]

## V.   Discussion

### a.   Federal Court Jurisdiction

Plaintiffs' complaint alleges that this court has jurisdiction based upon federal question jurisdiction. *See* Doc. 1 at 3 (noting that Plaintiffs checked the box for "Federal question" jurisdiction as the basis for this court's jurisdiction over their claims). Specifically, Plaintiffs' complaint states that the federal question raised is whether their due process rights were violated. *Id*. Plaintiffs also appear to assert that this court has jurisdiction based upon diversity of citizenship. *See id*. at 3-4 (noting that Plaintiffs also completed the section of the form complaint that asks for information about the parties if the court's jurisdiction is based upon diversity of citizenship). Plaintiffs reassert this basis

---

[8] Notably, Plaintiffs' response to Defendants' motions to dismiss attempts to allege the elements of fraud. The response states:

> Plaintiffs alleged the Defendant misrepresented the material facts which were that the writ of garnishment against petitioner Jacob Springer did NOT authorize them to seize property owned only by petitioner Jeanetta Springer. That the Sheriff of Randolph County, Alabama relied on this misrepresentation and/or omission and seized Plaintiff Jeanetta Springer's Property. Additionally, Both plaintiffs relied on the misrepresentation of defendant that they had authority to seize plaintiff Jeanetta Springer's Property based on Plaintiff Jacob Springer's debt, or in the alternative, both plaintiffs relied on the defendants intentional or reckless omission of the material fact they did not have the authority to seize plaintiff Jeanetta Springer's House to satisfy a tax debt owed by Jacob Springer when his name was NOT on the mortgage.

Doc. 21 at 3-4. Even if the undersigned could consider these outside-of-the-complaint "facts" in review of Defendants' motion to dismiss, the undersigned would note that they do little more than allege conclusions of law. Accordingly, the undersigned is not otherwise persuaded that Plaintiffs' complaint asserts a claim for fraud.

for jurisdiction within their response in opposition to Defendants' motions to dismiss. *See* Doc. 21 at 1 (asserting that this court has jurisdiction "because the parties are citizens of two different states" and "the damages exceed $100,000.00").

The undersigned concludes that this court has jurisdiction based upon 28 U.S.C. § 1331 to hear Plaintiffs' due process claim. Although it does not appear that this court would have original jurisdiction to hear Plaintiffs' wrongful foreclosure claim, as construed, because the parties are not completely diverse, *see* Doc. 1 (alleging that Plaintiffs are citizens of Alabama along with Defendant S&P and Defendant Barnett), this court would have jurisdiction to hear the claim because of supplemental jurisdiction. Twenty-eight U.S.C. § 1367(a) confers district courts with supplemental jurisdiction over "claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." However, the exercise of supplemental jurisdiction is discretionary, and a district court may decline to exercise such jurisdiction over a claim if:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). Here, the undersigned finds that Plaintiffs' wrongful foreclosure claim, as construed, is "so related" to Plaintiffs' due process claim that it "forms the same case or controversy." Thus, this court *could* exercise supplemental jurisdiction over that

claim. For purposes of this recommendation, then, the undersigned will presume supplemental jurisdiction over Plaintiffs' wrongful foreclosure claim, as construed.[9]

### b. The Rooker-Feldman Doctrine.

All Defendants assert that Plaintiffs' claims are by the *Rooker-Feldman* doctrine. If the doctrine applies, this court would lack jurisdiction to hear Plaintiffs' dispute. Accordingly, the undersigned will address this argument first.

Under the *Rooker-Feldman* doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994) (citing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923)). The *Rooker-Feldman* doctrine is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005). To determine which claims invite rejection of a state-court decision, courts consider whether a claim was either (1) one actually adjudicated by a state court; or (2) one "inextricably intertwined" with a state court judgment. *See Casale v. Tillman*, 558 F.3d 1258, 1260 (11th Cir. 2009) (per

---

[9] However, the undersigned would also note that if this court agrees with the undersigned's recommendation set forth below that Plaintiffs' due process claim, upon which this court has original jurisdiction, be dismissed, the court could then decline to assert supplemental jurisdiction over Plaintiffs' wrongful foreclosure claim based upon the dismissal of "all [Plaintiffs'] claims over which [this court] has original jurisdiction." *See id.*

curiam). The Eleventh Circuit has "advanced two scenarios where a federal claim is considered inextricably intertwined with the state-court judgment: (1) where the success of the federal claim would 'effectively nullify' the state court judgment; and (2) where the federal claim 'succeeds only to the extent that the state wrongly decided the issues.'" *Springer v. Perryman*, 401 F. App'x 457, 458 (11th Cir. 2010). Notably, however, a federal claim is not "inextricably intertwined" with a state-court judgment when there was no "reasonable opportunity to raise" that particular claim during the relevant state court proceeding. *Casale*, 558 F.3d at 1260 (quoting *Powell v. Powell*, 80 F.3d 464, 467 (11th Cir. 1996)).

In making a recommendation as to whether Plaintiffs' claims survive application of the *Rooker-Feldman* doctrine, the undersigned first reviews the claims asserted by Plaintiffs. As discussed previously in Section IV, Plaintiffs explicitly allege a claim for violation of due process and a claim for wrongful foreclosure, as construed. Indeed, Plaintiffs allege that Plaintiff Jeanetta Springer's property was foreclosed—even though the property had not reached "foreclosure status"—and that evidence that the foreclosure was premature was not presented because of a due process violation. Doc. 1 at 4. Plaintiffs also assert that the foreclosure occurred "in order to pressure" Plaintiff Jacob Springer "into signing a check" issued by the state circuit court in another civil action. *Id*. Based upon these and other allegations, Plaintiffs request the following relief:

> The House, located on 619 Lafayette Highway, Roanoak, AL 36274, needs to be returned to us and compensation for any damage and destruction to the house with the present state it is in. Compensatory damages are also being sought for the violation of our Constitutional Rights and abuses by the state

> actors under color of law. Punitive damages are also being sought to prevent
> this from happening again, and a jury trial is being sought.

*Id.* Having reviewed Plaintiffs' claims, then undersigned turns to address whether the claims were actually adjudicated in state court or whether they may be considered inextricably intertwined with that state court judgment. If the answer is yes to either, then *Rooker-Feldman* would bar the claims.

To the extent this court construes Plaintiffs' complaint as asserting a claim for wrongful foreclosure, the *Rooker-Feldman* doctrine bars that claim. Indeed, to the extent Plaintiffs are claiming that they were injured by the state court's order evicting them from the property and are seeking return of the property because of that order—along with compensation "for any damage and destruction to the house"—the undersigned concludes that those claims, and the relief sought for those wrongs, are at least inextricably intertwined with the state court's eviction judgment if not previously adjudicated. *See Kohler v. Gartlets*, 578 F. App'x 862, 864 (11th Cir. 2014) (holding that, to the extent the plaintiff claimed that he was injured by the state court's foreclosure order, the district court properly ruled that his claims were barred by the *Rooker-Feldman* doctrine). Certainly, any success Plaintiffs could achieve here by having the property returned to them and by receiving compensation for damages to the property occurring after foreclosure would effectively nullify the state court's finding that the underlying non-judicial foreclosure was valid and that possession of the property belonged to Defendant Wells Fargo. *See Wells Fargo Bank, N.A. v. Jeanetta Springer and Jacob Springer*, Case No. 12-900047, Circuit Court of Randolph County, Doc. 11-6 at 33 (state-court order granting summary judgment

in favor of Wells Fargo and awarding possession of the property to same). Because the *Rooker-Feldman* doctrine prohibits this court from engaging in that type of review of a state-court decision, the undersigned concludes that, to the extent Plaintiffs are attempting to circumvent the state-court judgment awarding possession of the property to Defendant Wells Fargo by asserting in this court a claim for wrongful foreclosure, or by requesting relief that would undo the state-court judgment, the *Rooker-Feldman* doctrine bars this court from entertaining Plaintiffs' claim.

To the extent Plaintiffs are claiming that their constitutional rights were violated because of the *manner* in which the property was foreclosed—i.e., that foreclosure occurred without due process—that claim would not *necessarily* be inextricably intertwined with the state court's eviction judgment. *Kohler,* 578 F. App'x at 864 (noting that a challenge to the defendants' conduct in state proceedings does not necessarily seek appellate review and reversal of the state-court judgment and holding that the district court improperly concluded that *Rooker-Feldman* barred those claims)[10]; *Christophe v. Morris*, 198 F. App'x 818, 825-26 (11th Cir. 2006) (holding that *Rooker-Feldman* doctrine did not apply to *pro se* complaint that asserted that constitutional rights were violated—not by the eviction ruling itself, but by the manner in which the eviction itself was carried out).

---

[10] The *Kohler* court cited the following sister circuits in determining that the *Rooker-Feldman* doctrine did not bar the plaintiff's claim: *Truong v. Bank of Am., N.A.*, 717 F.3d 377, 383 (5th Cir. 2013) (finding that the *Rooker-Feldman* doctrine did not bar a challenge to foreclosure when "the damages [the Appellant] requested were for injuries caused by the bank's actions, not injuries arising from the foreclosure judgment); *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006) (holding that the *Rooker-Feldman* doctrine does not bar "independent claims that . . . state court judgments were procured by certain Defendants through fraud, misrepresentation, or other improper means").

Here, Plaintiffs seek separate compensatory damages for a constitutional violation that is not inextricably intertwined with the state-court eviction action. *See* Doc. 1 ("Compensatory damages are also being sought for the violation of our Constitutional Rights and abuses by the state actors under color of law."). Concluding that Plaintiffs' due process rights were violated by the *manner* in which Plaintiff Jeanetta Springer's property was foreclosed and awarding compensatory damages based upon such a violation would not require this court to nullify the state-court eviction judgment. Thus, the undersigned recommends that the *Rooker-Feldman* doctrine should bar Plaintiffs' due process claim in this court.

### c. Res Judicata.

Defendant Wells Fargo argues that Plaintiffs' claims are barred by the doctrine of *res judicata*.[11] Like the *Rooker-Feldman* doctrine, if *res judicata* bars Plaintiffs' claims against Defendant Wells Fargo, this court would lack jurisdiction to hear Plaintiffs' claims. Therefore, the undersigned will address whether *res judicata* applies to Plaintiffs' claims against Defendant Wells Fargo prior to turning to the merits of Plaintiffs' claims.

The doctrine of *res judicata* "bars the filing of claims which were raised *or could have been raised* in an earlier proceeding." *Maldonado v. U.S. Attorney Gen.*, 664 F.3d 1369,

---

[11] Despite the fact that it was not a party to the underlying state court eviction proceeding, Defendant S&P also asserts *res judicata* as a reason to dismiss Plaintiffs' claims against it in its reply to Plaintiffs' response to its motion to dismiss. *See* Doc. 23 at 2-3. While there are times when *res judicata* is applicable to parties in privity, *Whisman v. Ala. Power Co.*, 512 So. 2d 78, 82 (Ala. 1987) ("[T]he party identity criterion of *res judicata* does not require complete identity, but only that the party against who *res judicata* is asserted was either a party or in privity with a party to the prior action[.]"), Defendant S&P does not attempt to show that it was in privity with Defendant Wells Fargo. The undersigned declines to flesh out such an argument—if there is one—on behalf of Defendant S&P. Therefore, the undersigned will not consider whether *res judicata* should apply to Plaintiffs' claims against Defendant S&P and will proceed to analyze the argument only as to Defendant Wells Fargo.

1375 (11th Cir. 2011) (quoting *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th

Cir. 1999)) (emphasis added); *Equity Res. Mgmt., Inc. v. Vinson,* 723 So. 2d 634, 636 (Ala.

1998) ("If [the] four elements [of *res judicata*] are present, then any claim that was, or that

could have been, adjudicated in the prior action is barred from further litigation.").

. In considering whether to give preclusive effect to state-court judgments under *res

judicata*, the federal court must apply the rendering state's law of preclusion. *Comm. State

Bank v. Strong*, 651 F.3d 1241, 1263 (11th Cir. 2011); *Kizzire v. Baptist Health Sys., Inc.*,

441 F.3d 1306, 1308 (11th Cir. 2006). In Alabama, for *res judicata* to bar a subsequent

case, four elements must be present: "(1) a final judgment on the merits, (2) rendered by a

court of competent jurisdiction, (3) with substantial identity of parties, and (4) with the

same cause of action presented in both suits." *Manning v. City of Auburn*, 953 F.2d 1355,

1358 (11th Cir. 1992) (quoting *Hughes v. Allenstein*, 514 So. 2d 858 (Ala. 1987)). Stated

differently,

> [t]he traditional *res judicata* case . . . involves prior litigation between a
> plaintiff and a defendant, which is decided on the merits by a court of
> competent jurisdiction, and then a subsequent attempt by the prior plaintiff
> to relitigate the same cause of action against the same defendant, or perhaps
> to relitigate a different claim not previously litigated but which arises out of
> the same evidence. Alabama law is well settled that this will not be allowed.
> A valid, final judgment on the merits of the claim extinguishes the claim. If
> the plaintiff won, the claim is merged into the judgment; if the defendant
> won, the plaintiff is barred from relitigating any matter which could have
> been litigated in the prior action.

*Whisman v. Ala. Power Co.,* 512 So. 2d 78, 81 (Ala. 1987) (internal citations omitted).

As to the fourth element, *res judicata* is met not only when the exact legal theories are

advanced in the prior case, but also "when the same evidence is applicable in both actions."

*Chapman Nursing Home, Inc. v. McDonald,* 985 So. 2d 914, 921 (Ala. 2007). "[T]he principal test for comparing causes of action [for application of *res judicata*] is whether the primary right and duty or wrong are the same in each action." *Id.* (internal quotes omitted). Also, "two causes of action are the same for *res judicata* purposes when the same evidence is applicable in both actions." *Id.* (internal quotes omitted). This "clearly definable and pragmatic rule" has been expressed as follows:

> The application of the doctrine of *res judicata* to identical causes of action is not dependent on the identity or differences in the forms of the two actions, although such differences may be considered. If a claim, which arises out of a single wrongful act or dispute, is brought to a final conclusion on the merits, then all other claims arising out of that same wrongful act or dispute are barred, even if those claims are based on different legal theories or seek a different form of damages, unless the evidence necessary to establish the elements of the alternative theories varies materially from the evidence necessary for a recovery in the first action.

*Vinson,* 723 So. 2d at 638.

Here, the underlying state-court judgment was one for eviction; the state circuit court was a court of competent jurisdiction to enter a judgment in that suit;[12] the state circuit court entered summary judgment, which is a final judgment on the merits of that action;[13] and Plaintiffs and Defendant Wells Fargo were parties to that state court action. *See Wells Fargo Bank, N.A. v. Jeanetta Springer and Jacob Springer*, Case No. 12-900047, Circuit

---

[12] Circuit courts in Alabama "have exclusive original jurisdiction of all civil actions in which the matter in controversy exceeds ten thousand dollars ($10,000), exclusive of interest and costs[.]" Ala. Code. § 12-11-30 (1975). The mortgage on the property was for $88,896.70, indicating that the matter in controversy before the state circuit court was for more than $10,000.00. *See* Doc. 21-1 at 1.

[13] A judgment rendered upon a motion for summary judgment is a final judgment on the merits and is entitled to the full preclusive effect of any final judgment. *See, e.g., Epuna v. MERS*, Civil Action No. 13-61369-Civ-Scola, 2015 WL 11181729, at *2 (S.D. Fla. Feb. 9, 2015) (concluding, as to the first requirement for *res judicata* to apply, that "a summary judgment constitutes a final judgment on the merits").

Court of Randolph County. Thus, all that remains for the undersigned to determine is whether the same cause of action is involved in both cases.

To the extent Plaintiffs are asserting a claim for wrongful foreclosure, the undersigned concludes that Plaintiffs' claim against Defendant Wells Fargo would be barred by *res judicata*, as the legal theory of wrongful foreclosure was presented to the state court as part of the eviction action. *See id*; *Pleming*, 142 F.3d at 1356. Further, in determining that possession of the property was to be awarded to Defendant Wells Fargo, the state court examined whether the underlying non-judicial foreclosure was proper, and considered the same evidence and legal theories that would be considered for a wrongful foreclosure action. Accordingly, the undersigned concludes that this court is jurisdictionally barred from hearing such a claim by the doctrine of *res judicata*.

As to Plaintiffs' due process claim, Plaintiffs' complaint alleges that Plaintiffs' due process rights were violated during the non-judicial foreclosure of Plaintiff Jeanetta Springer's property. Again, this claim would fall within the same cause of action involved in the state-court eviction proceeding. Whether Plaintiffs *actually raised* due process violations during the state court proceeding is of no consequence because they *could have raised* those claims—either as a compulsory counterclaim or as a defense to the eviction—when asserting that the foreclosure itself was wrongful. Thus, the undersigned concludes that *res judicata* would also bar Plaintiffs' due process claim against Defendant Wells Fargo. *See Duke v. Nationstar Mortg., LLC*, 893 F. Supp. 2d 1238 (N.D. Ala. 2012) (barring claims against the state-court plaintiff because the claims were considered compulsory counterclaims in state court); *Beepot v. J.P. Morgan Chase Nat'l Corp. Serv.*,

*Inc.*, 57 F. Supp. 3d 1358 (M.D. Fla. 2014) (noting that federal claims asserted were based on the conduct of the bank which was at issue in a state court foreclosure action and barring those claims because of the doctrine of *res judicata*).

In their response to Defendants' motions to dismiss, Plaintiffs assert that, even if the same issues are involved, *res judicata* does not apply in this case "because it involved fraud on the part of the defendant." Doc. 21 at 3. Plaintiffs cite "Rule 60(b)(3)" of the Federal Rules of Civil Procedure and state that "[t]he fraud was outlined above and evidenced" in their exhibits. *Id.*

Courts have expressed hostility to the "proposition that fraud on the court is an authority to allow a *collateral* attack on a judgment—i.e., defeating the defense of *res judicata*." *Plotner v. AT&T Corp.*, 224 F.3d 1161, 1170 (10th Cir. 2000). But here, Plaintiffs state, within their response to Defendants' motions to dismiss, that the fraud *occurred* "on or about October 15, 2015." Doc. 21 at 3. Clearly, if true, the alleged fraud would not at all be tied to the state-court eviction proceeding, which concluded with an affirmation of the Alabama Court of Civil Appeals on April 17, 2015. Nor would the alleged fraud be tied to Plaintiffs' due process claim, which occurred prior to the foreclosure sale of the property on October 19, 2011. Thus, even if fraudulent activity occurred, it would not bar application of the doctrine of *res judicata* as to Plaintiffs' claims because the fraud was not attached to the underlying state-court proceeding or Plaintiffs' due process claim. Accordingly, the undersigned recommends that Plaintiffs' due process claim be dismissed against Defendant Wells Fargo because the doctrine of *res judicata* bars this court from hearing such a claim.

23

### d.  Plaintiffs' due process claim fails as a matter of law.

Defendant Wells Fargo and Defendant S&P move to dismiss Plaintiffs' complaint against them based upon the argument that Plaintiffs' due process claim fails as a matter of law. In order to assert a due process violation under the Fourteenth Amendment, Plaintiffs must allege that Defendants are state actors.[14] Mere references to the Constitution are not sufficient to state a claim for relief on constitutional grounds. *Malally v. BAC Home Loan Serv., LLC*, Civil Action File No. 3:10-CV-0074-JTC-JFK, 2010 WL 5140626, at *10 (N.D. Ga. Oct. 8, 2010).

The Eleventh Circuit has held that due process claims based upon non-judicial foreclosure are meritless because "a foreclosure sale by a private mortgagee does not involve state action." *Crooked Creek Props., Inc. v. Hutchinson*, 432 F. App'x 948, 949 (11th Cir. 2011) (citing *Roberts v. Cameron-Brown Co*., 556 F.2d 356, 358-60 (5th Cir. 1977) (finding no due process violation in private foreclosure sale because there was no state action nexus)[15] and *Faith Cathedral Church of God in Christ v. Booker T. Washington Ins. Co.,* 481 So. 2d 369, 370 (Ala. 1985) (holding that a foreclosure sale by a private party with notice published pursuant to Alabama statute did not violate due process)); *Bryant v.*

---

[14] Plaintiffs list "Amendment V" and "Amendment XIV" as the portions of the Constitution at issue here. For purposes of clarification, the Fifth Amendment restrains the federal government and the conduct of federal actors, not state actors. *See, e.g., Burrell v. Cty. Gov't of Madison Cty., Ala*., Case No.: 5:15-cv-251-MHH, 2016 WL 1086029, at *9 (N.D. Ala. March 21, 2016). Clearly, none of the Defendants are federal actors. Thus, the undersigned will analyze Plaintiffs' due process claim under the Fourteenth Amendment, which restrains states, and thereby state actors, from depriving any person of life, liberty, or property without due process of law. *See Buxton v. City of Plant City, Fla*., 871 F.2d 1037, 1041 (11th Cir. 1989).

[15] In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

*Selene Fin., LP*, Civil Action No. 1:15-CV-4493-TWT-JSA, 2016 WL 4522681, at *6 (N.D. Ga. Aug. 1, 2016) ("The Eleventh Circuit has held that non-judicial foreclosure sales do not involve state action."); *see also Apao v. Bank of N.Y.*, 324 F.3d 1091, 1094-95 (9th Cir. 2003) (holding that private foreclosure sale of mortgagor's property was not state action that implicated the due process clause); *Malally*, 2010 WL 5140626, at * 10 (noting that "any non-judicial foreclosure action by Defendant does not call into play federal constitutional due process rights"); *Russell v. Standard Fed. Bank*, No. 00-CV-74811-DT, 2000 WL 1923513, at *2 (E.D. Mich. Nov. 27, 2000) (granting motion to dismiss Fifth Amendment due process claim because "foreclosure by advertised sale . . . does not involve the requisite state action to bring a *prima facie* constitutional claim"). Importantly, Plaintiffs assert that their due process rights were violated during foreclosure of the property, which, in this case, was a non-judicial foreclosure conducted by a private mortgagee.[16] *See* Doc 1 at 4; Doc. 11-3 at 4-6. Therefore, Plaintiffs may not assert a due process claim based upon the non-judicial foreclosure sale because they have not—and cannot—assert that Defendants are state actors.[17] Accordingly, the undersigned recommends that Plaintiffs' due process claim, which is based upon wrongs committed during a non-judicial foreclosure proceeding, be dismissed.

---

[16] Notably, Plaintiffs are not asserting that their due process rights were violated during the state-court eviction proceeding. The eviction proceeding was a judicial proceeding which could conceivably generate defendants who are state actors.

[17] Although Defendant Barnett has not moved to dismiss Plaintiffs' complaint against him based upon the argument that he is not a state actor under these circumstances, the undersigned notes that the same reasoning—i.e., that a due process claim asserted against him based upon any actions or inactions he took related to a non-judicial foreclosure would fail as a matter of law—applies with equal force.

### *e. Plaintiff has failed to state a claim against Defendant S&P.*

Although the discussion provided in the previous sections provides, in the undersigned's opinion, the most efficient reasons to dismiss Plaintiffs' complaint against all Defendants, the undersigned would make an additional comment as to the viability of Plaintiffs' claims against Defendant S&P.

As to Defendant S&P, Plaintiffs' complaint alleges no wrongdoing on part of that Defendant. Indeed, there is no indication in the complaint as to why Defendant S&P is named as a Defendant. The undersigned concludes that such a failure to specify any wrongdoing committed by Defendant S&P could be sufficient, in and of itself, to recommend dismissal of the complaint against Defendant S&P for failure to meet the pleading standards set forth in Rule 8(a) of the Federal Rules of Civil Procedure.

### *f. Summary.*

In summary, the undersigned recommends that Plaintiffs' complaint should be dismissed in its entirety. Regarding jurisdictional arguments, to the extent Plaintiffs' complaint is construed to assert a claim for wrongful foreclosure, the undersigned concludes that this court is prohibited under the *Rooker-Feldman* doctrine from considering that claim against all Defendants and from granting the Plaintiffs' requested relief. Additionally, the undersigned concludes that *res judicata* would bar Plaintiffs' wrongful foreclosure claim and due process claim against Defendant Wells Fargo and, therefore, this court is prohibited from hearing those claims and granting Plaintiffs' requested relief against Defendant Wells Fargo.

Regarding non-jurisdictional arguments, the undersigned concludes that Plaintiffs' due process claim is meritless against all Defendants because Defendants are not state actors subject to a due process claim based upon a non-judicial foreclosure proceeding. Further, the undersigned concludes that Plaintiffs' complaint fails to state a claim upon which relief may be granted against Defendant S&P because the complaint does not allege any specific act of wrongdoing committed by Defendant S&P.

As the undersigned has addressed Plaintiffs' stated claim (due process) and has addressed any reasonable claim construed in Plaintiffs' complaint (wrongful foreclosure) and found neither viable, the undersigned recommends that Plaintiffs' complaint should be dismissed in its entirety.[18]

## VI.   Conclusion

Accordingly, for all of the reasons stated above, it is the RECOMMENDATION of the Magistrate Judge that Defendant S&P's Motion to Dismiss for Failure to State a Claim (Doc. 7) be GRANTED; that Defendant Wells Fargo's Motion to Dismiss for Failure to

---

[18] The undersigned is recommending dismissal of Plaintiffs' complaint without specifically asking Plaintiffs to amend their complaint. The undersigned believes requesting such amendment would be futile because Plaintiffs' complaint asserts claims for that are jurisdictionally barred or otherwise not viable. The undersigned further believes that Plaintiffs' claims are incapable of being crafted into viable claims for those reasons.  Accordingly, leave to amend Plaintiffs' complaint need not be afforded in this instance.  *See, e.g., Cornelius v. Bank of Am., NA*, 585 F. App'x 996, 1000 (11th Cir. 2014) ("While a pro se litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile.").

Furthermore, the opportunity to amend ordinarily contemplated by governing case law, *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002), is not inconsistent with the undersigned's recommendation of dismissal.  Plaintiffs will be permitted to file objections to the findings set forth in this Recommendation, and thus are afforded the requisite opportunity to be heard about the deficiencies of their complaint prior to any dismissal of the complaint.

State a Claim (Doc. 11) be GRANTED; that Defendant Barnett's Motion to Dismiss (Doc. 13) be GRANTED; and that Plaintiff's Complaint (Doc. 1) be DISMISSED.

Further, it is

ORDERED that Plaintiff is DIRECTED to file any objections to the said Recommendation **on or before July 30, 2018.** A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered. Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*). Plaintiff is advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 16th day of July, 2018.


/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE